**FILED**

DEC 3 0 2005

Z. Kent Sullivan
Daniel G. Bruce
Baxter Bruce & Sullivan P.C.
P.O. Box 32819
Juneau, Alaska 99803
ph: (907) 789-3166
fax: (907) 789-1913
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MOHAN BATHIJA, VINOD BATHIJA, RAJESH BATHIJA, and SHIVALAY, INC., an Alaska corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>PANOFF PUBLISHING, INC., a Florida corporation, PPI FLEET SERVICES, INC., a Florida Corporation, PORT PROMOTIONS, INC., a Florida corporation, DIAMONDS INTERNATIONAL OF ALASKA, LTD., an Alaska corporation, DIAMONDS INTERNATIONAL, L.L.C., a New York limited liability company and DOES 1-10,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

PLAINTIFF'S MOTION FOR
APPOINTMENT OF DISCOVERY
MASTER

Case No. J04-0011 CV (RRB)

Plaintiff Shivalay, Inc. ("Celebrity"), by and through its attorneys of record, hereby files the present motion for appointment of a discovery master in this case pursuant to Fed. R. Civ. P. 53 and D. Ak. LR 53.1. This motion is supported by the memorandum in support filed contemporaneously herewith.

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Motion for Appointment of Discovery Master
Page 1 of 3

DATED this 30ᵗʰ day of December, 2005.

BAXTER BRUCE & SULLIVAN P.C.

By _____
Z. Kent Sullivan, ABA No. ABA No. 0105038
Attorneys for Plaintiff

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Motion for Appointment of Discovery Master
Page 2 of 3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of December, 2005, a true and correct copy of the foregoing was delivered to the party indicated below via:

William G. Ruddy, Esq.
Ruddy, Bradley & Kolkhorst
8800 Glacier Highway, Suite 223
P.O. Box 34338
Juneau, Alaska 99803
ph: (907) 789-0047
fax: (907) 789-0783
Attorneys for Defendants Panoff
Publishing, Inc., PPI Fleet Services,
Inc. and Port Promotions, Inc.
By:    ☒U.S. Mail
       ☒Fax
       ☐Court Box
       ☐Federal Express

Robert C. Gilbert, Esq.
Robert C. Gilbert, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, Florida 33134
ph: (305) 529-9100
fax: (305) 529-1612
Attorneys for Defendants Panoff
Publishing, Inc., PPI Fleet Services,
Inc. and Port Promotions, Inc.
By:    ☒U.S. Mail
       ☒Fax
       ☐Court Box
       ☐Federal Express

Kevin G. Clarkson, Esq.
Brena, Bell & Clarkson, P.C.
310 K Street, Suite 601
Anchorage, Alaska 99501
ph: (907) 258-2000
fax: (907) 258-2001
Attorneys for Defendants Diamonds
International of Alaska, Ltd.
By:    ☒U.S. Mail
       ☒Fax
       ☐Court Box
       ☐Federal Express

Peter M. Hockman, Esq.
550 Biltmore Way, Suite 780
Coral Gables, Florida 33134-5779
ph: (305) 447-9129
fax: (305) 443-0279
Attorneys for Defendants Diamonds
International of Alaska, Ltd.
By:    ☒U.S. Mail
       ☒Fax
       ☐Court Box
       ☐Federal Express

By _____
    Amber Niebuhr

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Motion for Appointment of Discovery Master
Page 3 of 3


Z. Kent Sullivan
Daniel G. Bruce
Baxter Bruce & Sullivan P.C.
P.O. Box 32819
Juneau, Alaska 99803
ph: (907) 789-3166
fax: (907) 789-1913
Attorneys for Plaintiff


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MOHAN BATHIJA, VINOD BATHIJA, RAJESH BATHIJA, and SHIVALAY, INC., an Alaska corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> PANOFF PUBLISHING, INC., a Florida corporation, PPI FLEET SERVICES, INC., a Florida Corporation, PORT PROMOTIONS, INC., a Florida corporation, DIAMONDS INTERNATIONAL OF ALASKA, LTD., an Alaska corporation, DIAMONDS INTERNATIONAL, L.L.C., a New York limited liability company and DOES 1-10, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF DISCOVERY MASTER

Case No. J04-0011 CV (RRB)

Plaintiff Shivalay, Inc. ("Celebrity"), by and through its attorneys of record, hereby files this memorandum in support of its motion for appointment of a discovery master in this case. This motion is made pursuant to Fed. R. Civ. P. 53 and D. Ak. LR 53.1. The facts and authority supporting Celebrity's motion are set forth below.

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 1 of 10

## INTRODUCTION

As this Court is aware, this case involves a dispute between various businesses related to the cruise ship industry in Southeast Alaska. *See generally, Plaintiffs' First Amended Complaint and Demand for Jury Trial,* dated April 29, 2005. Plaintiff Celebrity is the owner of a jewelry store, specializing in fine jewelry, and which caters to Southeast Alaska's cruise ship passengers. *Id.* at ¶ 2.

Defendants Panoff Publishing, Inc., PPI Fleet Services, Inc., and Port Promotions, Inc. ("PPI"), among other things, market, advertise and promote the goods and services of Alaska merchants to cruise ship passengers in Southeast Alaska. In doing so, PPI contracts with Alaska merchants, like Celebrity, for the services it provides within the State. *Id.* at ¶¶ 17-19.

Defendant Diamonds International of Alaska Ltd. ("DIAK") is one of Celebrity's primary competitors. DIAK owns and operates jewelry stores in at least five separate locations in Southeast Alaska, including two locations in Juneau.

As set forth in the complaint, Celebrity alleges that Defendants violated both state and federal laws by illegally organizing and creating a scheme to direct cruise ship passengers away from Celebrity and instead toward stores owned and operated by DIAK. *Plaintiffs' First Amended Complaint and Demand for Jury Trial,* at ¶ 1.

Initially, discovery was set to close in this case on March 3, 2006. *Case Scheduling and Planning Order,* dated February 3, 2005. However, due in part to the ongoing discovery disputes, the parties were required to seek extension of the discovery deadline in this case. *Joint Motion & Stipulation to Extend Certain Pretrial Deadlines,*

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 2 of 10

dated November 17, 2005, p. 3. Consequently, discovery has now been extended until June 2, 2006. *Amended Scheduling & Planning Order,* dated November 29, 2005, p. 2.

Unfortunately, despite the parties' good faith efforts, there continue to exist numerous discovery issues which threaten to bog down and delay the parties even further. *Infra.* It is recognized that this Court is more than capable of handling such disputes. Nevertheless, for purposes of promoting the quick and efficient resolution of such differences and in order to avoid further time, expense and delay, Plaintiff Celebrity respectfully submits that it would be in the best interests of both this Court and the parties for a discovery master to be appointed pursuant to Fed. R. Civ. P. 53 and D. Ak. LR 53.1.

## ARGUMENT

Fed. R. Civ. P. 53 expressly provides for the appointment of masters in a case where doing so will assist in complicated pretrial matters being addressed effectively and timely. Appointment of discovery masters are justified when the following factors are present: (1) numerous discovery motions, hearings and conferences between counsel and the Court have prevented discovery from progressing beyond its beginning stages; (2) emotions are high and suspicions are rife between the parties; (3) both parties requested voluminous, technical documents in the other's possession and in their responses objected to the requests, meaning the Court will most likely have to sift through thousands of pages of documents; (4) the cost factor involved in appointing a discovery master would be far outweighed by the benefit derived therefrom. *Omnium Lyonnais D'Etancheite Et Revetement Asphalte v. Dow Chemical Co.*, 73 F.R.D. 114,

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 3 of 10

117 (D.C. Cal. 1977). A party may suggest candidates for the Court's consideration. Fed R. Civ. P. 53(b)(1). In doing so, "and especially in complex cases involving numerous, significant disputes, the court may require the parties to pay the fees of the discovery master. D. Ak. LR 53.1(a)(1). Absent anything contrary in the order of appointment, a discovery master is authorized to:

    A.    resolve all discovery disputes between the parties;

    B.    respond to all discovery requests and motions of the parties;

    C.    call discovery conferences under Rule 16, Federal Rules of Civil Procedure, at the request of a party on or on the master's own motion;

    D.    recommend to the court, but not impose, sanctions; and

    E.    set procedures for the timing and orderly presentation of discovery disputes for resolution, including facsimile filing of motions with the discovery master, provided all motions to the discovery master are to be filed under D. Ak. LR 7.1, with a copy served on the discovery master.

D. Ak. LR 53.1(c)(2).

As set forth in recent letters by and between counsel for the parties, there exist a variety of outstanding discovery issues which need to be quickly resolved either with the assistance of this Court or by the appointment of a discovery master. *Letter from Kevin G. Clarkson to Z. Kent Sullivan,* dated December 21, 2005, and attached hereto as Exhibit "1;" *Letter from Z. Kent Sullivan to all Defense Counsel,* dated December 30, 2005, and attached hereto as Exhibit "2." Below is a partial list summarizing a few of the issues involved.

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 4 of 10

1.    Initially, both Defendants failed to produce or make available for inspection in Juneau a single document in this case. Instead, Defendant PPI offered to produce at the offices of its out-of-state attorney in Coral Gables, Florida and at its corporate offices in Fort Lauderdale, Florida, documents referenced in its initial disclosures and in response to Plaintiff's requests for production. Likewise, Defendant DIAK suggested that documents contained in its initial disclosures would be available for inspection at the offices of its Florida attorney in Coral Gables, Florida. DIAK also suggested that documents responsive to Celebrity's first set of requests for production would be made available at 592 Fifth Avenue, 9th Floor, New York, New York.

Initially, both Defendants failed to produce or make available for inspection in Juneau a single document in this case. Instead, Defendant PPI offered to produce at the offices of its out-of-state attorney in Coral Gables, Florida and at its corporate offices in Fort Lauderdale, Florida, documents referenced in its initial disclosures and in response to Plaintiff's requests for production. Likewise, Defendant DIAK suggested that documents contained in its initial disclosures would be available for inspection at the offices of its Florida attorney in Coral Gables, Florida. DIAK also suggested that documents responsive to Celebrity's first set of requests for production would be made available at 592 Fifth Avenue, 9th Floor, New York, New York.

DIAK has recently offered to ship to Celebrity's counsel at least a portion of the above-referenced documents (approximately 10 boxes) in exchange for Celebrity paying copying and shipping charges. Nevertheless, neither Celebrity nor its counsel has been given an opportunity to view and inspect these documents in Alaska prior to incurring such charges. Further, DIAK has failed to specifically identify the number of documents involved, or the approximate charges.

To date, PPI's initial position with regard to its documentation appears unchanged. It has not offered to make any of its documents available for viewing or inspection in Alaska and has not offered to copy or ship any such documents.

Celebrity submits that requiring its attorneys to travel to New York City, New York, two separate locations in Coral Gables, Florida and to Fort Lauderdale, Florida, in order to view discoverable documents in this case is unreasonable and is unsupported by the rules.

2.    Both PPI and DIAK claim to have voluminous documents which are responsive to Celebrity's discovery requests and are required to be disclosed as part of their initial disclosures. As set forth above, these documents have not yet been either produced or made available for inspection in Juneau. As an indication of the number of relevant documents Defendants may have in their possession, to date, Celebrity has either produced or made available for production over 29,000 Bates stamped documents in this case. Nevertheless, thus far, Defendants have failed to Bates stamp a single document offered for production. As such, while Defendants claim to have numerous documents responsive to Celebrity's discovery requests, they have failed to identify by either Bates stamp number or description any specific documents. Due to the complex nature of this case and the number of documents at issue, Celebrity

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 5 of 10

submits that Defendants should be required to Bates stamp all documents made available for production in this case and should be required to separately identify by Bates stamp number or description which documents are responsive to which discovery requests.

3.  DIAK operates stores at five separate locations in Southeast Alaska, including two locations each in Juneau and Skagway, and one location in Ketchikan. To date, both DIAK and PPI have attempted to limit their responses to Celebrity's discovery requests to only one of DIAK's stores in Juneau, Alaska. However, Celebrity's expert witness has indicated that information from all of DIAK's locations in Southeast Alaska is necessary in order to calculate Celebrity's damages. As such, Celebrity will be seeking to have both Defendants produce information and documentation related to all of DIAK's locations in Southeast Alaska.

4.  Defendant PPI has solicited information regarding Celebrity's business relations with PPI's two main competitors, Onboard Media and Norwegian Cruise Lines. For the most part, all such information has been provided to PPI. However, PPI has also sought production of copies of contracts by and between Celebrity and Onboard Media and Norwegian Cruise Lines. Both Onboard Media and Norwegian Cruise Lines have objected to their primary competitor, PPI, being given such sensitive materials. As such, Celebrity has separately Bates stamped and identified such contracts in a privilege log. It has also offered to make such documents available for an in camera inspection. Finally, Celebrity has indicated that it will produce such documentation if ordered by the Court and after representatives from both Onboard Media and Norwegian Cruise Lines have been given an opportunity to object to such production.

Now, despite the fact that it was not the party originally requesting such documentation, Defendant DIAK has threatened to file a motion to compel if such contracts are not physically produced. It is noteworthy that neither the Rules of Civil Procedure nor case law interpreting those rules allow a non-requesting party to compel production of documents. Fed. R. Civ. P. 37(a)(2)(B); *Payve v. Exxon Corp.*, 121 F.3d 503,509-510 (9th Cir. 1997).

5.  In their responses to Celebrity's discovery requests, both Defendants have refused to produce certain unidentified documents on the basis of privilege. However, to date, neither Defendant has produced a privilege log separately identifying which documents are being claimed as privileged and as required by Fed. R. Civ. P. 26(b)(5).

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 6 of 10

6.  Celebrity propounded its initial discovery requests to Defendants PPI and DIAK on or about July 12, 2005. Although Defendants initially answered these requests, their initial responses were deficient in many, many, respects. Both Defendants subsequently supplemented and amended their responses to Celebrity's requests. However, even these supplemented and amended responses continue to be inadequate. Despite Celebrity's continuing efforts to seek adequate and sufficient responses to its original discovery requests, nearly six months after their initial service, it is anticipated that short of a motion to compel, Defendants will not do so.

7.  DIAK has offered to produce "redacted" copies of "master contracts" between DIAK and PPI. DIAK has suggested that its basis for providing redacted copies is that the master contracts govern PPI's work for not only DIAK, but also for other companies tangentially related to DIAK through common ownership. There is no legal basis for providing redacted copies in this instance. First, a protective order exists in this case adequately protecting DIAK's responses in this regard. Second, this case originally named not only DIAK but also DIAK's franchisor or parent entity. It is possible that the wrongdoing which occurred as set forth in the complaint was partially or wholly attributable to the actions of entities related to DIAK. It is not appropriate for DIAK to attempt to avoid such potential liability to its parent or related entities by redacting such references from the relevant contract documentation.

In this instance, if a discovery master is appointed, the discovery master will be able to promptly schedule hearings and resolve disputes because the master will not be burdened with the workload of the Court. A discovery master can also implement shorter schedules for the bringing of motions, can conduct discovery conferences when needed, and will have time to conduct in camera reviews of any withheld documents. All parties in this case would benefit from an abbreviated resolution of discovery disputes.

Appointment of a discovery master will also allow issues such as those set forth above be quickly addressed. Further, appointment of a discovery master will serve as an incentive to the parties to avoid such disputes in the future and to fulfill their discovery

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 7 of 10

obligations without delay.  Such an appointment will also reduce the incentive for use of

delaying tactics because the parties will be able to promptly gain access to the discovery

master and have such issues quickly resolved.

In this instance, there are a variety of individuals who would likely be suitable to

serve as discovery masters in this case, including:

William M. Bankston, Esq.
Bankston Gronning O'Hara, P.C.
601 West 5th Avenue, Suite 900
Anchorage, Alaska 99501
Ph: (907) 269-6300

Leroy J. Barker, Esq.
210 Pacific View Drive
Anchorage, Alaska 99511-2367
Ph: (907) 345-3329

Bruce A. Bookman, Esq.
Bookman & Helm, LLP
810 N Street, Suite 200
Anchorage, Alaska 99501
Ph: (907) 265-5793

Dave W. Oesting, Esq.
Davis Wright Tremaine, LLP
701 West 8th Avenue, Suite 800
Anchorage, Alaska 99501
Ph: (907) 257-5300

Jeffrey M. Feldman, Esq.
Feldman Orlansky & Sanders
500 L Street, Suite 400
Anchorage, Alaska 99501
Ph: (907) 272-3538

The Honorable Mark C. Rowland
600 West 76th Avenue, Suite 507
Anchorage, Alaska 99518
Ph: (907) 522-5285

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 8 of 10

Terrance A. Turner, Esq.
Turner & Mede, P.C.
1500 West 33rd Avenue, Suite 200
Anchorage, Alaska 99503-3502
Ph: (907) 276-3963

Finally, Celebrity recognizes that pursuant to the rules, it will be responsible for payment of a portion of the discovery master's fees and costs and it is agreeable to the same.

## CONCLUSION

It is within this Court's discretion to appoint a discovery master in this case. Here, there exist a number of pending discovery disputes that will need quick and efficient resolution before this case can effectively move forward. Since discovery now extends into June, it is also unlikely that the present discovery issues will be the last requiring resolution. Accordingly, Celebrity believes that appointing a discovery master in this case will help to reduce such disputes and will serve to expedite the quick and efficient completion of discovery in this case.

DATED this **30th** day of December, 2005.

BAXTER BRUCE & SULLIVAN P.C.

By _____
Z. Kent Sullivan, ABA No. ABA No. 0105038
Attorneys for Plaintiff

*Bathija, et al. v. Panoff Publishing, Inc., et al.;* Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 9 of 10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of December, 2005, a true and correct copy of the foregoing was delivered to the party indicated below via:

William G. Ruddy, Esq.
Ruddy, Bradley & Kolkhorst
8800 Glacier Highway, Suite 223
P.O. Box 34338
Juneau, Alaska 99803
ph: (907) 789-0047
fax: (907) 789-0783
Attorneys for Defendants Panoff
Publishing, Inc., PPI Fleet Services,
Inc. and Port Promotions, Inc.
By:    ☒ U.S. Mail
       ☒ Fax
       ☐ Court Box
       ☐ Federal Express

Robert C. Gilbert, Esq.
Robert C. Gilbert, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, Florida 33134
ph: (305) 529-9100
fax: (305) 529-1612
Attorneys for Defendants Panoff
Publishing, Inc., PPI Fleet Services,
Inc. and Port Promotions, Inc.
By:    ☒ U.S. Mail
       ☒ Fax
       ☐ Court Box
       ☐ Federal Express

Kevin G. Clarkson, Esq.
Brena, Bell & Clarkson, P.C.
310 K Street, Suite 601
Anchorage, Alaska 99501
ph: (907) 258-2000
fax: (907) 258-2001
Attorneys for Defendants Diamonds
International of Alaska, Ltd.
By:    ☒ U.S. Mail
       ☒ Fax
       ☐ Court Box
       ☐ Federal Express

Peter M. Hockman, Esq.
550 Biltmore Way, Suite 780
Coral Gables, Florida 33134-5779
ph: (305) 447-9129
fax: (305) 443-0279
Attorneys for Defendants Diamonds
International of Alaska, Ltd.
By:    ☒ U.S. Mail
       ☒ Fax
       ☐ Court Box
       ☐ Federal Express

By _____
Amber Niebuhr

*Bathija, et al. v. Panoff Publishing, Inc., et al.*; Case No. J04-0011 CV (RRB)
Plaintiff's Memorandum in Support of Motion for Appointment of Discovery Master
Page 10 of 10



# BRENA, BELL & CLARKSON, P.C.

ROBIN O. BRENA, OWNER
JESSE C. BELL, OF COUNSEL
KEVIN G. CLARKSON, OF COUNSEL
DAVID W. WENSEL, OF COUNSEL
ANTHONY S. GUERRIERO, OF COUNSEL
PAULA T. VRANA, OF COUNSEL

ATTORNEYS AT LAW

310 K STREET, SUITE 601
ANCHORAGE, AK 99501
TELEPHONE: (907) 258-2000
FACSIMILE: (907) 258-2001
WEB SITE: BRENALAW.COM
KCLARKSON@BRENALAW.COM

December 21, 2005

*By Fax No. (907) 789-1913*
Z. Kent Sullivan, Esq.
Baxtor Bruce & Sullivan, P.C.
P.O. Box 32819
Juneau, AK 99803

Re:    Bathija v. Panoff, et al., Case No. J04-011 Civil (RRB)
        Our File No. 867-005

Dear Mr. Sullivan:

Please produce to us copies of the contracts between Celebrity and Onboard Media, and Celebrity and Norwegian Cruise Lines (BAT 001665-BAT 001917; BAT 029478-BAT029488).

These documents are relevant to the subject matter of the litigation and they are not privileged. At most, Celebrity may be entitled to produce these documents subject to the outstanding protective order.

Unless the documents are produced to us by no later than Friday, December 30, 2005, we will file a motion to compel.

Very truly yours,

Kevin G. Clarkson

/eaf



EXHIBIT

ATTORNEYS AT LAW

## BAXTER BRUCE & SULLIVAN P.C.

PROFESSIONAL CORPORATION

P.O. BOX 32819
JUNEAU, ALASKA 99803
(907) 789-3166 (Telephone)
(907) 789-1913 (Facsimile)
www.baxterbrucelaw.com

FRED J. BAXTER
DANIEL G. BRUCE
KEVIN J. SULLIVAN
Z. KENT SULLIVAN
KATHLEEN A. FREDERICK
DAVID A. LAWRENCE
RICHARD L. NELSON

December 30, 2005

## SENT VIA FIRST CLASS MAIL &
## FACSIMILE TRANSMISSION

Robert C. Gilbert, Esq.
Robert C. Gilbert, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, Florida 33134
fax: (305) 529-1612

William G. Ruddy, Esq.
Ruddy, Bradley & Kolkhorst
P.O. Box 34338
Juneau, Alaska 99803
fax: (907) 789-0783

Peter M. Hockman, Esq.
550 Biltmore Way, Suite 780
Coral Gables, Florida 33134-5779
fax: (305) 246-0279

Kevin G. Clarkson, Esq.
Brena, Bell & Clarkson, P.C.
310 K Street, Suite 601
Anchorage, Alaska 99501
fax: (907) 258-2001

Re: *Celebrity v. PPI, et al.;* Discovery Issues
Our File No. 7500-001

Gentlemen:

I am in receipt of supplemental responses to Celebrity's original discovery requests from both Panoff Publishing, Inc., PPI Fleet Services, Inc. and Port Promotions, Inc. ("PPI") and Diamonds International of Alaska, Ltd.'s ("DIAK"). Thank you for those responses. I am also in receipt of Bobby's letter, dated November 22, 2005, addressing the deposition of Celebrity's officers as well as its Rule 30(b)(6) designee. As is clear

**EXHIBIT**
**2**

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 2

from this documentation, there exists a variety of pressing discovery issues which need to be addressed by the parties. Among these are: 1) designation of the parties' Rule 30(b)(6) designees; 2) continuing deficiencies in PPI and DIAK's supplemental responses to Celebrity's earlier discovery requests; 3) location of production of PPI and DIAK's documents responsive to Celebrity's requests for production; 4) Defendants' failure to Bates stamp documents responsive to Celebrity's requests and failure to specifically identify which documents are responsive to which requests; 5) Celebrity's second set of requests for production to both PPI and DIAK specifically requesting documentation sought by Celebrity's expert witness for determination of damages; and 6) Celebrity's filing of a motion for appointment of a discovery master. I will separately address each of these issues below.

## I.    Designation of the Parties' Rule 30(b)(6) Designees.

Previously, and in Bobby's most recent letter, it was requested that Celebrity designate a Rule 30(b)(6) designee with regard to the topics listed in the exhibit attached to PPI's notice of deposition. PPI also requested proposed dates for when such depositions would occur.

With regard to its Rule 30(b)(6) designees, Celebrity designates the following individuals:

> A.    Rajesh Bathija
> c/o Z. Kent Sullivan, Esq.
> Baxter Bruce & Sullivan P.C.
> P.O. Box 32819
> Juneau, Alaska 99803
> (907) 789-3166
>
> Rajesh is the Secretary and Treasurer of the corporation and an owner of 33% of the outstanding shares of the corporation. As to the topics designated by PPI in its notice of deposition to Shivalay, Inc., dated October 7, 2005, Rajesh is Plaintiff's Rule 30(b)(6) designee as to all matters identified save and except for facts, issues and topics pertaining to the corporation's existence and/or operations prior to January 2001.
>
> B.    Vinod Bathija
> c/o Z. Kent Sullivan, Esq.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 3

Baxter Bruce & Sullivan P.C.
P.O. Box 32819
Juneau, Alaska 99803
(907) 789-3166

Vinod Bathija is President of the corporation and an owner of 34% of the outstanding shares in the corporation. As to the topics identified by PPI in its notice of deposition to Shivalay, Inc., dated October 7, 2005, Vinod is Plaintiff's Rule 30(b)(6) designee as to all facts, issues and topics pertaining to the corporation's operations prior to January 2001.

With regard to the dates suggested by Bobby for the deposition of Plaintiff and its Rule 30(b)(6) designees, the above-referenced designees and their counsel are available in Juneau on the first two dates suggested, February 20-24 and/or February 27-March 3. The designees are currently unavailable on the other two proposed dates, both of which were later in March. Please let me know as soon as possible with regard to confirming the schedule of these depositions. Should Defendants desire, you are more than welcome to utilize one of the conference rooms in our offices for that purpose. Again, just let me know as soon as possible in this regard.

Celebrity will also soon be noticing the depositions of both PPI and DIAK. As to PPI, Celebrity will request it to designate Rule 30(b)(6) representatives regarding the following topics:

A.    The formation of Panoff Publishing, Inc., PPI Fleet Services, Inc. and Port Promotions, Inc., their corporate business structure, their ownership, business strategies, business plans, and services and products offered during the period beginning January 2000 through the present ("Relevant Period").

B.    For PPI's operations in Southeast Alaska, its total sales and/or commissions, costs, salaries, expenses, profits and losses during the Relevant Period.

C.    For PPI's operations in Southeast Alaska, a detailed description of the various products and/or services it purports to have provided merchants during the Relevant Period.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 4

D.   For PPI's operations in Southeast Alaska, PPI's payment of federal, state and local taxes during the Relevant Period.

E.   The origins of the business relationships between both PPI and DIAK, and PPI and Celebrity.

F.   All information exchanged and communications between PPI and DIAK and PPI and Celebrity during the Relevant Period and concerning PPI's promotion of both entities' products.

G.   PPI's negotiations, meetings, communications (verbal, written and/or electronic) with DIAK and Celebrity employees or independent contractors relating to any and all contracts and/or agreements made or entered with PPI pertaining to Southeast Alaska during the Relevant Period.

H.   All fees and commission paid by Celebrity and DIAK to PPI during the Relevant Period.

I.   All communications (verbal, written and/or electronic) during the Relevant Period between PPI and DIAK and PPI and Celebrity, their employees or independent contractors, regarding the facts alleged in Celebrity's complaint.

As to DIAK, Celebrity will request it to designate Rule 30(b)(6) representatives regarding the following topics:

A.   The formation of DIAK, its corporate business structure, its ownership, its business strategy, its business plan, and its product line during the period beginning January 2000 through the present ("Relevant Period").

B.   At each store it operates in Southeast Alaska, DIAK's operations, inventory, sales, costs, salaries, expenses, profits and losses during the Relevant Period.

C.   At each store it operates in Southeast Alaska, DIAK's marketing, advertising and promotions during the Relevant Period.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 5

D.   At each store it operates in Southeast Alaska, DIAK's purchase of merchandise/inventory and various product lines during the Relevant Period.

E.   At each store it operates in Southeast Alaska, DIAK's payment of federal, state and local taxes during the Relevant Period.

F.   The origins of the business relationship between DIAK and PPI.

G.   All information exchanged and communications between PPI and DIAK during the Relevant Period concerning PPI's promotion of DIAK's products.

H.   DIAK's negotiations, meetings, communications (verbal, written and/or electronic) with PPI employees or independent contractors relating to any and all contracts and/or agreements made or entered with PPI concerning any DIAK store in Southeast Alaska during the Relevant Period.

I.   All fees and commission paid by DIAK to PPI during the Relevant Period.

J.   The promotion of DIAK's products on cruise lines not represented by PPI during the relevant period.

K.   Any and all agreements entered into by DIAK during the Relevant Period concerning the promotion of its goods and products on cruise lines not represented by PPI.

L.   DIAK's sales to cruise passengers not affiliated with PPI-affiliated cruise lines during the relevant period.

M.   All communications (verbal, written and/or electronic) during the Relevant Period between DIAK and PPI, its employees or independent contractors, regarding the facts alleged in Celebrity's complaint.

While it is understood that neither PPI nor DIAK has any obligation to designate individuals until the depositions are actually noticed, I simply wanted to provide both



Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 6

parties as much advance notice as possible in this regard. Once again, we will issue the notices of depositions as soon as the discovery issues set forth below are adequately resolved.

## II.    Continuing Deficiencies in PPI and DIAK's Supplemental Responses to Celebrity's Earlier Discovery Requests.

PPI and DIAK's recent supplemental discovery responses continue to be inadequate for a variety of reasons in addition to the points specifically identified as issues III, IV, and V below. Celebrity addresses these continuing deficiencies as follows:

### A.    DIAK's Supplemental Responses

INTERROGATORY NO. 1: Please identify the name, title and position of all persons presently or formerly affiliated with DIAK having direct knowledge or information regarding the facts and circumstances set forth in the complaint or in DIAK's answer thereto. Also, please provide a complete summary of each person's knowledge.

DEFICIENCY: DIAK has only named persons affiliated with one of its two stores in Juneau, Alaska. DIAK has omitted any reference to persons or individuals presently or formerly affiliated with its second Juneau store (Tanzanite International) and/or with any of its other locations in Southeast Alaska. In addition to its one store in Juneau for which persons affiliated with DIAK have been listed, DIAK also operates stores in Southeast Alaska under the following names and in the following locations:

> Tanzanite International
> 455 S. Franklin St.
> Juneau, Alaska
> (907) 586-3550
>
> Diamonds International of Alaska Ltd.
> 305 Mill
> Ketchikan, Alaska
> (907) 247-3600
>
> Diamonds International
> 230 Second Avenue
> Skagway, Alaska
> (907) 983-3670

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 7


            Tanzanite International
            360 Broadway
            Skagway, Alaska
            (907) 983-3673

       Based upon the facts and allegations set forth in Celebrity's complaint, persons and employees affiliated with the above-referenced DIAK stores and locations likely possess information that is either relevant to this dispute or likely to lead to the discovery of admissible evidence. Accordingly, DIAK must further supplement its response to Interrogatory No. 1 by including persons and employees affiliated with its other stores and locations in Southeast Alaska.

       INTERROGATORY NO. 3: Please identify by name, job title, duties, address, telephone number and dates of employment, all persons who are current employees or independent contractors performing services for Defendant DIAK.

       DEFICIENCY: The above-referenced interrogatory seeks the identity of all persons who are *current* employees or independent contractors. Nevertheless, DIAK's response only identifies current and former employees at one of the two DIAK stores in Juneau from 2002 through 2004. Accordingly, this response is deficient in that it fails to identify persons affiliated with DIAK from its second Juneau location as well as from its other stores in Southeast Alaska. Again, this information is both relevant and likely to lead to the discovery of admissible evidence. Further, DIAK fails to identify any *current* employees or independent contractors. DIAK has only identified individuals through the 2004 season. DIAK must further supplement this response to include all employees and independent contractors through the 2005 season and also include individuals working at all DIAK locations in Southeast Alaska.

       INTERROGATORY NO. 4: Please identify by name, job title, duties, address, telephone number and dates of employment, all persons who were employed by, or performed services as independent contractors for, Defendant DIAK for the period from January 1, 2000 through March 24, 2004.

       DEFICIENCY: This interrogatory seeks the identity of all employees and/or independent contractors of DIAK from January 1, 2000 through March 24, 2004. Again, as with Interrogatory No. 3, DIAK's answer is not fully responsive. No information was provided regarding employees or independent contractors prior to 2002. Also, the

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 8

response only identifies former employees at one of the two DIAK stores in Juneau from 2002 through 2004. Accordingly, this response is deficient in that it fails to identify persons affiliated with DIAK from its second Juneau location as well as from its other stores operated in Southeast Alaska. Again, this information is both relevant and likely to lead to the discovery of admissible evidence. DIAK must further supplement this response to include all employees and independent contractors from 2000 and 2001 and also include individuals working at all DIAK locations in Southeast Alaska.

INTERROGATORY NO. 10: Please describe in detail all of the services DIAK was receiving from PPI during the period from January 1, 2000 through March 24, 2004.

DEFICIENCY: DIAK's answer to this interrogatory remains unresponsive as no details have been given as to the services provided. In its response, while DIAK admits that promotional and advertising services were provided by PPI from 2000 – 2004, DIAK provides no detail as to what those service were. DIAK further refers Celebrity to its responses to Celebrity's requests for admission. Other than acknowledging that "PPI's services to DIAK have varied during some of the years 2000 – 2004," DIAK's responses to Celebrity's requests for admission provide no further facts or details. Accordingly, DIAK must supplement this response to specifically describe, in detail, any and all services provided to it by PPI from 2000 – 2004.

INTERROGATORY NO. 13: Please specifically identify all records, documents and information relating to PPI and/or the cruise lines including, but not limited to, all contracts, on board sales records, fees and/or commissions paid by DIAK to PPI and/or the cruise lines, their agents, employees, representatives or subcontractors, accounts receivable ledgers, and all communications by and between DIAK, PPI and/or the cruise lines, for the period beginning January 1, 2000 and through March 24, 2004.

DEFICIENCY: DIAK has offered to produce redacted copies of "master contracts" between DIAK and PPI. DIAK has suggested that its basis for providing redacted copies is that the master contracts govern PPI's work for not only DIAK, but also for other companies tangentially related to DIAK through common ownership. As DIAK should recognize, there is no legal basis for providing redacted copies in this instance. First, as DIAK is aware, a protective order exists in this case adequately protecting DIAK's responses in this regard. Further, this case originally named not only DIAK but also DIAK's franchisor or parent entity. It is possible that the wrongdoing which occurred as set forth in the complaint was partially or wholly attributable to the actions of entities related to DIAK. It is not appropriate for DIAK to attempt to avoid

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 9

potential liability to its parent or related entities by redacting such references from the relevant contract documentation.

DIAK has also indicated that it will produce its business records, noting commissions paid to PPI, for only one of its Juneau stores. DIAK should recognize that the jewelry business catering to cruise ship passengers in Southeast Alaska is substantially interwoven. A single ship carrying the same passengers is likely to make calls at numerous ports during a single voyage to Southeast Alaska. Based upon this fact it is likely that, to some extent, fine jewelry stores at each port of call will compete with the stores at the other ports of call. Further, as will be set forth below and as Celebrity's damages expert has made clear, information pertaining to DIAK's other jewelry stores in Juneau and Southeast Alaska is not only relevant, but is also necessary for a calculation of Celebrity's damages. Other such stores include:

> Tanzanite International
> 455 S. Franklin St.
> Juneau, Alaska
> (907) 586-3550
>
> Diamonds International of Alaska Ltd.
> 305 Mill
> Ketchikan, Alaska
> (907) 247-3600
>
> Diamonds International
> 230 Second Avenue
> Skagway, Alaska
> (907) 983-3670
>
> Tanzanite International
> 360 Broadway
> Skagway, Alaska
> (907) 983-3673

Accordingly, DIAK must supplement this response by making available non-redacted copies of all of the information and documentation referenced in response to the above interrogatory. DIAK must further supplement this response by including information and documentation relating to DIAK's other locations in Southeast Alaska as noted above.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 10

INTERROGATORY NO. 14: Please specifically identify all fees and commissions paid by DIAK to PPI and/or the cruise lines from January 2000 until the present, including amounts, date paid, and characterization of payment (fee or commission).

DEFICIENCY: As noted above, DIAK has indicated that it will produce its business records, noting commissions paid to PPI, for only one of its Juneau stores. DIAK should recognize that the jewelry business catering to cruise ship passengers in Southeast Alaska is substantially interwoven. One ship, carrying the same passengers, is likely to make calls at numerous ports during a single voyage to Southeast Alaska. Based upon this fact it is likely that, to some extent, fine jewelry stores at each port of call will compete with the stores at the other ports of call. Further, as will be set forth below and as Celebrity's damages expert has made clear, information pertaining to DIAK's other jewelry stores in Juneau and Southeast Alaska is not only relevant, but is also necessary for a calculation of Celebrity's damages. Other such stores include:

> Tanzanite International
> 455 S. Franklin St.
> Juneau, Alaska
> (907) 586-3550

> Diamonds International of Alaska Ltd.
> 305 Mill
> Ketchikan, Alaska
> (907) 247-3600

> Diamonds International
> 230 Second Avenue
> Skagway, Alaska
> (907) 983-3670

> Tanzanite International
> 360 Broadway
> Skagway, Alaska
> (907) 983-3673

Accordingly, DIAK must supplement this response by including information and documentation relating to DIAK's other locations in Southeast Alaska as noted above.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 11


INTERROGATORY NO 16:  Please specifically describe all services provided to DIAK by PPI for the years 2000 through the present, including any variation or deviation in the services so provided.

DEFICIENCY:  DIAK's answer to this interrogatory remains unresponsive as no details have been given as to the services provided.  In its response, while DIAK admits that promotional and advertising services were provided by PPI from 2000 – 2004, DIAK provides no detail as to what those service were.  DIAK must supplement this response to specifically describe, in detail, any and all services provided to it by PPI from 2000 – 2004.

REQUEST FOR PRODUCTION NO. 1:  If your response to any of the preceding requests for admissions is anything other than an unequivocal admission, please produce all documents that support your response.  If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests.  If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY:  DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005.  In that document, DIAK refers to responsive non-privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume. The relative burden and expense upon the parties of production in New York is grossly disproportionate.  Therefore, DIAK's position that the documents will be made available only in New York is unreasonable.  Further, as noted above, DIAK must supply documentation for each of its stores in Southeast Alaska other than the one DIAK location in Juneau, including:

> Tanzanite International
> 455 S. Franklin St.
> Juneau, Alaska
> (907) 586-3550
>
> Diamonds International of Alaska Ltd.
> 305 Mill
> Ketchikan, Alaska
> (907) 247-3600

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 12

                   Diamonds International
                   230 Second Avenue
                   Skagway, Alaska
                   (907) 983-3670

                   Tanzanite International
                   360 Broadway
                   Skagway, Alaska
                   (907) 983-3673

Accordingly, DIAK must supplement this response by including the information and documentation referenced above.

    REQUEST FOR PRODUCTION NO. 2: Please produce all documents or tangible items received by you, your attorneys, or the persons assisting your attorneys that mention, or relate to the allegations contained in the complaint or DIAK's answer thereto. If such written documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

    DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. In that document, DIAK refers to responsive non-privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume. The relative burden and expense upon the parties of production in New York is grossly disproportionate. Therefore, DIAK's position that the documents will be made available only in New York is unreasonable. Further, as noted above, DIAK must supply documentation for each of its stores in Southeast Alaska other than the one DIAK location in Juneau, including:

                   Tanzanite International
                   455 S. Franklin St.
                   Juneau, Alaska
                   (907) 586-3550

                   Diamonds International of Alaska Ltd.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 13

> 305 Mill
> Ketchikan, Alaska
> (907) 247-3600
>
> Diamonds International
> 230 Second Avenue
> Skagway, Alaska
> (907) 983-3670
>
> Tanzanite International
> 360 Broadway
> Skagway, Alaska
> (907) 983-3673

Accordingly, DIAK must supplement this response by including the information and documentation referenced above.

REQUEST FOR PRODUCTION NO. 3: Please produce any investigative reports, drawings, diagrams, tape recordings, documents or tangible items generated by you, your attorneys, investigators working for your attorneys and expert witnesses you have retained that relate to or mention the allegations contained in the complaint or DIAK's answer thereto. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. In that document, DIAK identifies promotional videotapes provided to PPI, but made no objection as to them and has failed to produce them.

REQUEST FOR PRODUCTION NO. 5: Please produce any documents, data, or tangible items referenced in DIAK's response to the interrogatories identified above, including but not limited to correspondence, reports, investigations, records, photographs, drawings, diagrams, billings, notes of telephone conversations, and any exhibits to be used at trial. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 14


DEFICIENCY:  DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005.  In that document, DIAK refers to responsive non-privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume. The relative burden and expense upon the parties of production in New York is grossly disproportionate.  Therefore, DIAK's position that the documents will be made available only in New York is unreasonable.  Further, as noted above, DIAK must supply documentation for each of its stores in Southeast Alaska other than the one DIAK location in Juneau, including:

> Tanzanite International
> 455 S. Franklin St.
> Juneau, Alaska
> (907) 586-3550
>
> Diamonds International of Alaska Ltd.
> 305 Mill
> Ketchikan, Alaska
> (907) 247-3600
>
> Diamonds International
> 230 Second Avenue
> Skagway, Alaska
> (907) 983-3670
>
> Tanzanite International
> 360 Broadway
> Skagway, Alaska
> (907) 983-3673

Accordingly, DIAK must supplement this response by including the information and documentation referenced above.

REQUEST FOR PRODUCTION NO. 6:  Please produce any and all documentation demonstrating that Celebrity allegedly utilizes merchandise of inferior quality and/or deceptive sales techniques, including that Celebrity only purchases diamonds from a pool of diamonds that DIAK has already rejected out of hand.  If such

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 15

documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. Contrary to your response to this request, your answer to Request for Admission No. 20 specifically denies that DIAK lacks any evidence, knowledge, information or belief that "Celebrity utilizes merchandise of inferior quality and/or deceptive sales techniques." If DIAK possesses such evidence, it must produce it in response to this request for production.

REQUEST FOR PRODUCTION NO. 7:    Please produce any and all documentation demonstrating that Celebrity allegedly utilizes merchandise of inferior quality and/or deceptive sales techniques, including that Celebrity sells brown diamonds tricked up with enhancement settings and super yellow mixed gold, flashing laser cut gold, etc. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. Contrary to your response to this request, your answer to Request for Admission No. 20 specifically denies that DIAK lacks any evidence, knowledge, information or belief that "Celebrity utilizes merchandise of inferior quality and/or deceptive sales techniques." If DIAK possesses such evidence, it must produce it in response to this request for production.

REQUEST FOR PRODUCTION NO. 8:    Please produce any and all documentation demonstrating that Celebrity allegedly utilizes merchandise of inferior quality and/or deceptive sales techniques, including that Celebrity enhances the appearance of such inferior diamonds by utilizing deceptive Kleig/Halogen Lights. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 16

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. Contrary to your response to this request, your answer to Request for Admission No. 20 specifically denies that DIAK lacks any evidence, knowledge, information or belief that "Celebrity utilizes merchandise of inferior quality and/or deceptive sales techniques." If DIAK possesses such evidence, it must produce it in response to this request for production.

REQUEST FOR PRODUCTION NO. 9:   Please produce any and all documentation demonstrating that Celebrity allegedly utilizes merchandise of inferior quality and/or deceptive sales techniques, including that Celebrity deceptively groups together a bunch of industrial grade tiny diamonds that contain hard to see black spots or brown tint. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. Contrary to your response to this request, your answer to Request for Admission No. 20 specifically denies that DIAK lacks any evidence, knowledge, information or belief that "Celebrity utilizes merchandise of inferior quality and/or deceptive sales techniques." If DIAK possesses such evidence, it must produce it in response to this request for production.

REQUEST FOR PRODUCTION NO. 11: Please produce any documents, data, or tangible items referenced in DIAK's initial disclosures and any supplements thereto, including but not limited to correspondence, reports, investigations, records, photographs, drawings, diagrams, billings, notes of telephone conversations, and any exhibits to be used at trial. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. In that document, DIAK refers to responsive non-privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 17


The relative burden and expense upon the parties of production in New York is grossly disproportionate. Therefore, DIAK's position that the documents will be made available only in New York is unreasonable. Further, as noted above, DIAK must supply documentation for each of its stores in Southeast Alaska other than the one DIAK location in Juneau, including:

>Tanzanite International
>455 S. Franklin St.
>Juneau, Alaska
>(907) 586-3550

>Diamonds International of Alaska Ltd.
>305 Mill
>Ketchikan, Alaska
>(907) 247-3600

>Diamonds International
>230 Second Avenue
>Skagway, Alaska
>(907) 983-3670

>Tanzanite International
>360 Broadway
>Skagway, Alaska
>(907) 983-3673

Accordingly, DIAK must supplement this response by including the information and documentation referenced above.

REQUEST FOR PRODUCTION NO. 12: Please produce DIAK's audited and unaudited financial statements, tax returns, and any other documentation summarizing income derived from its Juneau, Alaska store for the 2000, 2001, 2002, 2003 and 2004 tax years. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production,

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 18

dated September 2, 2005. DIAK's objection to production of financial statements is not well-taken. The complaint seeks punitive damages to which financial information having a bearing on net worth is directly relevant. The Court has in place a protective order which adequately protects DIAK. As to other responsive documents, DIAK refers to non-privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers to be responsive either by Bates number range or approximate volume. The relative burden and expense upon the parties of production in New York is grossly disproportionate. Therefore, DIAK's position that the documents will be made available only in New York is unreasonable.

REQUEST FOR PRODUCTION NO. 13: Please produce copies of any and all contracts, memorandums of understanding, agreements, etc., entered by and between DIAK and PPI or any of their affiliates for the 2000, 2001, 2002, 2003 and 2004 Alaskan tourist seasons. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. While Celebrity disagrees that its request is overbroad, the Court's Protective Order more amply protects information regarding other related companies. However, it is noted that even as to DIAK's offer to produce redacted copies of the actual contracts, it fails to identify the master contracts by Bates number range or approximate number of pages. The relative burden and expense upon the parties of production in New York is grossly disproportionate. Therefore, DIAK's position that the redacted contracts will be made available only in New York is unreasonable. Further, as noted above, DIAK must supply documentation for each of its stores in Southeast Alaska other than the one DIAK location in Juneau, including:

Tanzanite International
455 S. Franklin St.
Juneau, Alaska
(907) 586-3550

Diamonds International of Alaska Ltd.
305 Mill
Ketchikan, Alaska
(907) 247-3600

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 19

> Diamonds International
> 230 Second Avenue
> Skagway, Alaska
> (907) 983-3670
>
> Tanzanite International
> 360 Broadway
> Skagway, Alaska
> (907) 983-3673

Accordingly, DIAK must supplement this response by including the information and documentation referenced above.

REQUEST FOR PRODUCTION NO. 14:    Please produce copies of all documents referencing fees and commissions paid by DIAK to PPI from January 2000 until the present, including amounts, date paid, and characterization of payment (fee or commission). If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. DIAK refers to responsive documents but fail to identify the records it considers to be responsive either by Bates number range or approximate volume. The relative burden and expense upon the parties of production in New York is grossly disproportionate. Therefore, DIAK's position that the documents will be made available only in New York is unreasonable. Further, as noted above, DIAK must supply documentation for each of its stores in Southeast Alaska other than the one DIAK location in Juneau, including:

> Tanzanite International
> 455 S. Franklin St.
> Juneau, Alaska
> (907) 586-3550
>
> Diamonds International of Alaska Ltd.
> 305 Mill

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 20

        Ketchikan, Alaska
        (907) 247-3600

        Diamonds International
        230 Second Avenue
        Skagway, Alaska
        (907) 983-3670

        Tanzanite International
        360 Broadway
        Skagway, Alaska
        (907) 983-3673

Accordingly, DIAK must supplement this response by including the information and documentation referenced above.

REQUEST FOR PRODUCTION NO. 15: Please produce organizational charts for the various entities and personnel comprising DIAK and which detail such organization structure as of June 30, 2003 and June 30, 2005. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: DIAK has failed to further supplement this response beyond the answer provided in its original responses to Plaintiff's first set of requests for production, dated September 2, 2005. Celebrity disagrees that its request is overbroad. The organizational charts of the various entities and personnel that "comprise DIAK" is clearly discoverable. As to the current organizational chart, Celebrity believes that information regarding the current make-up of DIAK is also discoverable, as that identifies persons who are or may be authorized presently to represent or speak for the company. DIAK's reference to the Gads is only partially responsive. DIAK neither denies the existence of nor offers to produce responsive organizational charts. DIAK must supplement this response by including the information and documentation referenced above.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 21

### B.    PPI's Supplemental Responses

INTERROGATORY NO. 15: Please specifically identify all records, documents and information relating to Celebrity, including, but not limited to, all contracts, on board sales records, fees paid by Celebrity, commissions paid by Celebrity or PPI to PPI agents, employees, representatives or subcontractors, accounts receivable ledgers, and all communications by and between Celebrity and PPI for the period beginning January 1, 2000 and through the present date.

DEFICIENCY: Rule 33(d) states "A specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer must be ascertained." PPI has failed to identify which documents are available that are responsive to this request. PPI refers to responsive documents but fails to identify the records it considers responsive either by Bates number range or approximate volume. PPI also fails to designate where such documents will be made available for inspection. While PPI objects to producing certain documentation, it fails to clarify whether such documents will be produced despite the objection or whether PPI intends to withhold the documents based upon its objection. It is assumed that PPI still is intending to make such documents available for inspection at its attorney's offices in Fort Lauderdale, Florida as it had referenced in its original responses. The relative burden and expense upon the parties for production in Fort Lauderdale, Florida is grossly disproportionate and unreasonable considering the fact that this case is filed in Alaska and that the majority of counsel participating in this case reside in Alaska. Therefore, PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable. PPI must specifically articulate and identify which documents are being produced for inspection in response to this request and which documents are being withheld on the basis of its objections. Further, PPI must confirm that such documents will be produced at the offices of its local counsel in Alaska.

INTERROGATORY NO. 17: Please specifically identify all records, documents and information relating to DI, DIAK and/or any of their affiliates, involving the Southeast Alaska cruise ship market, including, but not limited to, on board sales records, fees paid by DI/DIAK, commissions paid by DI/DIAK or PPI to PPI agents, employees, representatives or subcontractors, contracts, accounts receivable ledgers, and all communications by and between DI/DIAK and PPI for the period beginning January 1, 2000 and through March 24, 2004.

DEFICIENCY: This request is not overbroad or burdensome. Such information is directly related to Plaintiff's allegations regarding liability and damages. Moreover, the

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 22

limitation to "non-financial" records is improper.   The Court's Protective Order
adequately protects any confidentiality concerns.  Rule 33(d) states "A specification shall
be in sufficient detail to permit the interrogating party to locate and identify, as readily as
can the party served, the records from which the answer must be ascertained." PPI has
failed to identify which documents are available that are responsive to this request.  PPI
refers to responsive documents but fails to identify the records it considers responsive
either by Bates number range or approximate volume.  PPI also fails to designate where
such documents will be made available for inspection.  While PPI objects to production
of certain documentation, it fails to clarify whether such documents will be produced
despite the objection or whether PPI intends to withhold the documents based upon its
objection.  It is assumed that PPI still is intending to make such documents available for
inspection at its attorney's offices in Fort Lauderdale, Florida as it had referenced in its
original responses.  The relative burden and expense upon the parties of production in
Fort Lauderdale, Florida is grossly disproportionate and unreasonable considering the fact
that this case is filed in Alaska and that the majority of counsel participating in this case
reside in Alaska.  Therefore, PPI's position that the documents will be made available
only in Fort Lauderdale is unreasonable.  PPI must specifically articulate and identify
which documents are being produced for inspection in response to this request and which
documents are being withheld on the basis of its objections.  Further, PPI must confirm
that such documents will be produced at the offices of its local counsel in Alaska.

INTERROGATORY NO. 20:  Please identify the various cruise lines operating in
Southeast Alaska with whom PPI contracts, and specifically describe the various services
PPI either receives from and/or provides those entities.  Please also specifically identify
the manner in which compensation is exchanged, including whether such compensation is
based upon a percentage of sales, flat fee, etc.

DEFICIENCY:  PPI continues to refuse to supply and/or identify its contracts with
the various cruise lines operating in Southeast Alaska.  As set forth in the complaint, such
contracts and relationships may have a direct bearing upon the causes of action alleged by
Plaintiff.  Further, as set forth in the complaint, such cruise lines may be implicated in the
wrongdoing alleged and consequently, the complaint has named as Defendants in this
case, Does 1-10.  The Court's Protective Order adequately protects PPI with regard to its
confidentiality concerns.  At a minimum, this response must be supplemented so as to
allow an in camera inspection of all such documents.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 23

REQUEST FOR ADMISSION NO. 13:  Please admit that Celebrity was advised that the services referenced in Requests for Admissions 6-11 would be provided to it by PPI and its PSAs.

DEFICIENCY:  The objection is inappropriate.  Regardless of the source of the advice, the request can be either admitted or denied.  Further, the request asks PPI to admit that Celebrity was "advised."  Such information could have been relayed via contract, writings, e-mail, face-to-fact understandings, implication, etc.  Unlike PPI's response, the above-referenced request relates to information far beyond the contracts between the parties.  PPI must further supplement its response by admitting or denying the exact question posed in the above-referenced request for admission.

REQUEST FOR ADMISSION NO. 27:  Please admit that based upon the contracts entered into with PPI, Celebrity is/was required to pay PPI commissions for each and every sale that occurred with a passenger from a PPI affiliated ship, irrespective of whether or not PPI was, in fact, responsible for generating the sale.

DEFICIENCY:  Despite the limited admission contained in its amended and supplemental response, PPI continues to refuse to admit or deny the exact question posed. There is no reasonable basis for PPI's refusal to do so.  PPI must further supplement its response by admitting or denying the exact question posed in the above-referenced request for admission.

REQUEST FOR PRODUCTION NO. 1:  If your response to any of the preceding requests for admissions is anything other than an unequivocal admission, please produce all documents that support your response.  If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests.  If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY:  The request is in no way overbroad or vague and, notably, PPI fails to indicate in what way it believes it to be.  PPI refers to responsive non-privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume.  It is assumed that PPI still is intending to make such documents available for inspection at its attorney's offices in Fort Lauderdale, Florida as it had referenced in its original responses.  The relative burden and expense upon the parties of production in Fort Lauderdale, Florida is grossly disproportionate and unreasonable considering the fact that

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 24

this case is filed in Alaska and that the majority of counsel participating in this case reside in Alaska. Therefore, PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable. PPI must specifically articulate and identify which documents are being produced for inspection in response to this request and which documents are being withheld on the basis of its objections. Further, PPI must confirm that such documents will be produced at the offices of its local counsel in Alaska.

REQUEST FOR PRODUCTION NO. 2: Please produce all documents or tangible items received by you, your attorneys, or the persons assisting your attorneys that mention, or relate to the allegations contained in the complaint or PPI's answer thereto. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: PPI refers generically to responsive non-privileged documents and privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume. It is assumed that PPI still is intending to make such documents available for inspection at its attorney's offices in Fort Lauderdale, Florida as it had referenced in its original responses. The relative burden and expense upon the parties of production in Fort Lauderdale, Florida is grossly disproportionate and unreasonable considering the fact that this case is filed in Alaska and that the majority of counsel participating in this case reside in Alaska. Therefore, PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable. PPI must specifically articulate and identify which documents are being produced for inspection in response to this request and which documents are being withheld on the basis of its objections. Further, PPI must confirm that such documents will be produced at the offices of its local counsel in Alaska.

REQUEST FOR PRODUCTION NO. 3: Please produce any investigative reports, drawings, diagrams, tape recordings, documents or tangible items generated by you, your attorneys, investigators working for your attorneys and expert witnesses you have retained that relate to or mention the allegations contained in the complaint or PPI's answer thereto. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 25

DEFICIENCY: PPI's claims of privilege are disputed. PPI refers generically to privileged documents, but does not identify or produce a privilege log as required. PPI must either produce the documents requested or alternatively, if it continues to refuse to do so on the basis of privilege, must produce a privilege log as required by the discovery rules.

REQUEST FOR PRODUCTION NO. 5: Please produce any documents, data, or tangible items referenced in PPI's response to the interrogatories identified above, including but not limited to correspondence, reports, investigations, records, photographs, drawings, diagrams, billings, notes of telephone conversations, and any exhibits to be used at trial. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: PPI refers generically to responsive non-privileged documents and privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume. It is assumed that PPI still is intending to make such documents available for inspection at its attorney's offices in Fort Lauderdale, Florida as it had referenced in its original responses. The relative burden and expense upon the parties of production in Fort Lauderdale, Florida is grossly disproportionate and unreasonable considering the fact that this case is filed in Alaska and that the majority of counsel participating in this case reside in Alaska. Therefore, PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable. PPI must specifically articulate and identify which documents are being produced for inspection in response to this request and which documents are being withheld on the basis of its objections. Further, PPI must confirm that such documents will be produced at the offices of its local counsel in Alaska.

REQUEST FOR PRODUCTION NO. 12: Please produce any documents, data, or tangible items referenced in PPI's initial disclosures and any supplements thereto, including but not limited to correspondence, reports, investigations, records, photographs, drawings, diagrams, billings, notes of telephone conversations, and any exhibits to be used at trial. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 26

DEFICIENCY: PPI refers generically to responsive non-privileged documents and privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume. It is assumed that PPI still is intending to make such documents available for inspection at its attorney's offices in Fort Lauderdale, Florida as it had referenced in its original responses. The relative burden and expense upon the parties of production in Fort Lauderdale, Florida is grossly disproportionate and unreasonable considering the fact that this case is filed in Alaska and that the majority of counsel participating in this case reside in Alaska. Therefore, PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable. PPI must specifically articulate and identify which documents are being produced for inspection in response to this request and which documents are being withheld on the basis of its objections. Further, PPI must confirm that such documents will be produced at the offices of its local counsel in Alaska.

REQUEST FOR PRODUCTION NO. 13: Please produce PPI's audited and unaudited financial statements, tax returns, and any other documentation summarizing income derived from its business activities in Southeast Alaska for the 2000, 2001, 2002, 2003 and 2004 tax years. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: Contrary to PPI's contentions, the financial information for 2000 - 2004 is discoverable in that Plaintiffs have alleged damages extending during that entire period. Further, damages from torts, such as defamation and misrepresentation, or conduct prohibited by statute, logically, do not terminate just because the contractual relationship ended as of a given date. The request is not overbroad or burdensome merely because income is not segregated geographically by region of the country. Not only does the Court's Protective Order adequately protect PPI in this regard, but Plaintiff's punitive damage claim entitles it to financial information that has a bearing on PPI's net worth. Further, contrary to what PPI has offered, Plaintiff is not required to rely upon summaries of information produced by PPI. Plaintiff is specifically entitled to all audited and unaudited financial statements, tax returns, and any other documentation summarizing income derived from its business activities in Southeast Alaska for the 2000, 2001, 2002, 2003 and 2004 tax years. Simply producing summaries prepared by PPI is insufficient.

PPI also refers generically to responsive documents, it does not identify the documents it considers responsive either by Bates number range or approximate volume.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 27

It is assumed that PPI still is intending to make such documents available for inspection at its attorney's offices in Fort Lauderdale, Florida as it had referenced in its original responses. The relative burden and expense upon the parties of production in Fort Lauderdale, Florida is grossly disproportionate and unreasonable considering the fact that this case is filed in Alaska and that the majority of counsel participating in this case reside in Alaska. Therefore, PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable. PPI must specifically articulate and identify which documents are being produced for inspection in response to this request and which documents are being withheld on the basis of its objections. Further, PPI must confirm that such documents will be produced at the offices of its local counsel in Alaska.

REQUEST FOR PRODUCTION NO. 14: Please produce copies of any and all contracts, memorandums of understanding, agreements, etc., entered by and between PPI and DI, DIAK or any of their affiliates for the 2000, 2001, 2002, 2003 and 2004 Alaskan tourist seasons. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: 2004 documents are discoverable for the reasons set forth in Plaintiff's comments regarding the deficiencies in the previous response to Request for Production No. 13. Moreover, PPI refers generically to responsive privileged and non-privileged documents, but does not identify or produce a privilege log, and fails to identify the records it considers responsive either by Bates number range or approximate volume. The relative burden and expense upon the parties of production in Fort Lauderdale is grossly disproportionate. In addition, PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable.

REQUEST FOR PRODUCTION NO. 15: Please produce copies of any and all contracts, memorandums of understanding, agreements, etc., entered by and between PPI and Celebrity for the 2000, 2001, 2002, 2003 and 2004 Alaskan tourist seasons. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: The relative burden and expense upon the parties of production in Fort Lauderdale is grossly disproportionate. PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 28

REQUEST FOR PRODUCTION NO. 16: Please produce copies of all documents referencing fees and commissions paid by Celebrity to PPI from January 2000 until the present, including amounts, date paid, and characterization of payment (fee or commission). If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: The relative burden and expense upon the parties of production in Fort Lauderdale is grossly disproportionate. PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable.

REQUEST FOR PRODUCTION NO. 17: Please produce copies of all documents referencing fees and commissions paid by DI/DIAK to PPI from January 2000 until the present, including amounts, date paid, and characterization of payment (fee or commission). If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: 2004 documents are discoverable for the reasons set forth in Plaintiffs' comments regarding the response to Request for Production No 13. As to location of production, the relative burden and expense upon the parties of production in Fort Lauderdale is grossly disproportionate. PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable.

REQUEST FOR PRODUCTION NO. 18: Please produce organizational charts for the various entities and personnel comprising PPI and which detail such organization structure as of June 30, 2003 and June 30, 2005. If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests. If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

DEFICIENCY: The relative burden and expense upon the parties of production in Fort Lauderdale is grossly disproportionate. PPI's position that the documents will be made available only in Fort Lauderdale is unreasonable.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 29

### III. Location of Production of PPI and DIAK's Documents Responsive to Celebrity's Requests for Production.

Initially, both Defendants failed to produce or make available for inspection in Juneau a single document in this case. Instead, Defendant PPI offered to produce at the offices of its out-of-state attorney in Coral Gables, Florida and at its corporate offices in Fort Lauderdale, Florida, documents referenced in its initial disclosures and in response to Plaintiff's requests for production. *PPI Defendant's Rule 26(a) Initial Disclosures,* dated March 29, 2005; *Defendant PPI Group's Response to Plaintiff's First Set of Discovery Requests,* dated September 2, 2005. Likewise, Defendant DIAK suggested that documents contained in its initial disclosures would be available for inspection at the offices of its Florida attorney in Coral Gables, Florida. *Initial Disclosures of Diamonds International of Alaska, Ltd.,* dated March 29, 2005. DIAK also suggested that documents responsive to Celebrity's first set of requests for production would be made available at 592 Fifth Avenue, 9th Floor, New York, New York. *DIAK's Response to Plaintiff's First Set of Requests for Production,* dated September 2, 2005.

DIAK has recently offered to ship to Celebrity's counsel at least a portion of the above-referenced documents (approximately 10 boxes) in exchange for Celebrity paying copying and shipping charges. *DIAK's Supplemental Response to Plaintiff's First Set of Interrogatories,* dated November 23, 2005, pp. 13-16. Nevertheless, neither Celebrity nor its counsel has been given an opportunity to view and inspect these documents in Alaska prior to incurring such charges. Further, DIAK has failed to specifically identify the number of documents involved, or the approximate charges.

To date, PPI's initial position with regard to its documentation appears unchanged. It has not offered to make any of its documents available for viewing or inspection in Alaska and has not offered to copy or ship any such documents.

Celebrity submits that requiring its attorneys to travel to New York City, New York, two separate locations in Coral Gables, Florida and to Fort Lauderdale, Florida, in order to view discoverable documents in this case is unreasonable and is unsupported by the rules. *See generally, Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611 (D. Kansas 2005).

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 30

**IV.    Defendants' Failure to Bates Stamp Documents Responsive to Celebrity's Requests and Failure to Specifically Identify Which Documents are Responsive to Which Requests.**

Once again, in this instance, Celebrity has Bates stamped and either produced, or offered for production, over 29,000 pages of documents relevant to this dispute. With regard to its responses to discovery requests, Celebrity identified by Bates stamp number which documents were responsive to which requests. Unfortunately, not only have Defendants failed to Bates stamp the voluminous documents they claim to have offered for production, but they have also failed to specifically identify which documents are responsive to which requests. Proceeding in this manner fails to comport with both the purpose and intent of the Federal Rules.

When responding to discovery requests, a broad statement that the information sought is available from a mass of documents and that the documents are available for inspection simply is not a sufficient response to satisfy the arms of discovery. *ITT Life Insurance Company v. Thomas Nastoff, Inc.,* 108 F.R.D. 664, 666 (N.D. Ind. 1985). Instead, documents must be identified in such a way as to make their production useful to the requesting party. Fed. R. Civ. P. 34(b) mandates that the party upon whom a request for production is served shall serve a written response that states, *with respect to each item or category,* that inspection and related activities will be permitted as requested, unless the request is objected to. A party who produces documents for inspection shall either produce them as they are kept in the usual course of business or organize and label them to correspond with the categories in the request. *Id.*

When voluminous numbers of business records are requested, federal courts mandate that the responding party organize and label the documents in a manner that relates back to the discovery requests in order to comply with Rule 34. *See Stiller v. Arnold,* 167 F.R.D. 68, 71 (N.D. Ind. 1996) (finding that producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b)); *Govas v. Chalmers,* 965 F.2d 298, 302 (7th Cir. 1992) (sanctioning party for producing approximately 9,000 documents without attempting to categorize them or relate the documents to discovery requests); *Ferrito v. IKON Office Solutions, Inc.,* 2000 WL 1477188 (D. Kan. 2000) (stating the production of 2,000 pages of documents that were neither Bates stamped nor otherwise organized did not satisfy Rule 34). *T.N. Taube Corp. v. Marine Midland Mort. Corp.,* 136 F.R.D. 449, 456 (W.D.N.C. 1991) (requiring Defendant to organize the documents produced in a manner clearly indicating which of these documents respond to Plaintiff's specific requests for production in order to comply with Rule 34, the purposes of discovery, and basic considerations of fairness); *Wagner v.*

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 31

*Dryvit Systems, Inc.,* 208 F.R.D. 606, 610 (D. Neb. 2001) (producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34).

Further, the fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information. *See Id.* at 610*; Caruso v. Coleman Corp.,* 157 F.R.D. 344, 349 (E.D. Pa.1994); *Baine v. General Motors Corp.,* 141 F.R.D. 328, 331 (M.D. Ala.1991); *Snowden v. Connaught Laboratories, Inc.,* 137 F.R.D. 325, 332-33 (D. Kan.1991); *Pollitt v. Mobay Chemical Corp.,* 95 F.R.D. 101, 105 (S.D. Ohio 1982); *Baxter Travenol Labs. Inc. v. LeMay,* 93 F.R.D. 379, 383 (S.D. Ohio 1981); *Dunn v. Midwestern Indemnity,* 88 F.R.D. 191, 197-98 (S.D. Ohio 1980); *Kozlowski v. Sears, Roebuck,* 73 F.R.D. 73 (D. Mass.1976).

Although Alaska has not established a specific rule requiring litigants to Bates stamp their documents, other federal courts have required the procedure. *See Glover v. Board of Educ. of Rockford Public Schools, Dist. 205,* 2004 WL 785270 (N.D. Ill.,2004) (ordering Defendants to Bates Stamp all documents produced to Plaintiff and to indicate which documents correspond to the categories requested); *Douglas v. Victor Capital Group,* 1997 WL 716912 (S.D.N.Y 1997) ("Bates-stamping of documents (or the many available equivalents and low cost means of sequentially numbered documents produced in the litigation) should be used in all cases, not just the large case-large firm situations where it is already prevalent....[I]t costs very little to number stamp documents; and the minimal cost is cheap insurance against disputes over whether documents were produced.").

There is only one Alaska Federal District Court case which somewhat addressed the issue of Bates stamps, and it did so when addressing the issue of whether one of the parties had failed to update its discovery responses as required by Rule 26(e). With regards to Bates stamps, the court simply noted "[f]irst, none of the papers displays a "Bates" stamp number, which would ordinarily appear on documents assembled by sophisticated litigants in a case involving a large claim and a large volume of documents." *U.S. Kiewit Const. Co.,* 2005 WL 1277953 (D. Alaska 2005).

Here, there is no excuse for failing to Bates stamp the documents Defendants claim to have made available for production. This is a large factually and legally complex case where significant damages are at issue. Further, as noted, it is not as if Defendants have actually turned over or provided the documents in question. Instead, Defendants have simply made vague and non-specific reference to large volumes of documents that may exist should Celebrity wish to travel from one end of the country to the other in order to

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 32

view them. Without either Bates stamping such documents and identifying which documents are responsive to which discovery requests, no useful information has been given. Further, until Celebrity actually views such documents, there is no way of confirming to what extent Defendants have complied with the discovery rules. The opportunity for Defendants' abuse of the discovery process is significant.

For these reasons, Celebrity submits that Defendants should immediately Bates stamp all documents claimed as relevant and/or responsive to Celebrity's requests in this case. Both parties should also identify which Bates stamped documents are responsive to which of Celebrity's discovery requests.

**V.    Celebrity's Second Set of Requests for Production to Both PPI and DIAK Specifically Requesting Documentation Sought by Celebrity's Expert Witness for Determination of Damages.**

Attached hereto is a letter from Mr. William E. Partin, an expert witness retained by Celebrity with regard to the issue of damages. *Letter from William E. Partin, CPA/ABV to Z. Kent Sullivan,* dated November 8, 2005, and attached hereto as Exhibit "1." As Mr. Partin makes clear, in order to fully analyze the damages claimed by Celebrity, he needs to be provided a variety of information relating to both DIAK and PPI, including:

    A.    As to DIAK

        1.    Copies of federal income tax returns for the years 2000 though 2004.

        2.    Copies of sales tax returns for the period from January 2000 through the present.

        3.    Copies of income statements for each store located in the State of Alaska for the period January 2000 through the present.

        4.    Copies of the balance sheets for each store located in the State of Alaska for the period January 2000 through the present.

        5.    Copies of fixed asset registers for each store located in the State of Alaska for the period January 2000 through the present.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 33

6.      Number of employees employed at each store in the State of Alaska for years 2000 through 2005, including, for each employee listed, the following:

      a.      job description

      b.      salary

      c.      hours worked per week

7.      Copy of store lease agreements for each store located in the State of Alaska including the following:

      a.      identity of the total square footage for each store listed

      b.      identity of the total square footage of display area for each store listed

8.      For each store located in the State of Alaska for the years 2000 through 2005, the following information:

      a.      number of items sold

      b.      sales by product category

      c.      markup by product category

      d.      year end physical inventory counts and pricing at cost by item and by product category

      e.      commission reports submitted to PPI

      f.      commission reports submitted to any other cruise ship marketing organization

9.      Contracts, agreements, cancelled checks, general ledger account detail listing, and all other documentation listing advertising expenditures on behalf of stores located in the State of Alaska for the period January 2000 through the present.

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 34

B.    As to PPI

1.    Names of ships, number of passengers and ports of call for all ships associated with PPI during each year of the period January 2000 through the present.

2.    Produce the number of passengers debarking ships associated with PPI at each State of Alaska port for each year 2000 through 2005.

3.    Report detailing the commissions and fees received by PPI from each jewelry retailer under contract with PPI in the State of Alaska during the period January 2000 through the present.

*Id.*

Based upon Mr. Partin's request for the above-referenced information, on or about December 7, 2005, Celebrity sent a second set of discovery requests to PPI and DIAK. *See generally, Plaintiff's Second Set of Discovery Requests to Defendant PPI,* dated December 7, 2005; *Plaintiff's Second Set of Discovery Requests to Defendant DIAK,* dated December 7, 2005. These second discovery requests specifically addressed each of the above-referenced items. *Id.*

In order for Celebrity's damages to be fully and accurately calculated, it is imperative that both Defendants comply with the above-referenced discovery requests. No claim can be made that the information is unwarranted or not relevant. Again, the information is not being arbitrarily requested by Celebrity. Instead, the information is being solicited based upon a specific request made by Celebrity's expert on the issue of damages. *Id.* Defendants might also attempt to argue that such information and documentation is unduly burdensome. However, despite any burden imposed upon Defendants, such information is at the heart of calculating Celebrity's damages and thus, any such burden is warranted. Second, as should be evident in this case, Celebrity has already been more than responsive when even greater discovery burdens have been imposed by Defendants. As evidence of this, one need look no further than the wealth of information and documentation presented by Celebrity with regard to its initial disclosures, supplemental disclosures and in response to the discovery requests posed by Defendants to date. *See generally, Plaintiffs Initial Disclosures*, dated March 29, 2005 (documents Bates stamped 000000 – 000841); *Plaintiff's First Supplemental Disclosures,* dated April 28, 2005 (documents Bates stamped 000842 – 001262);

Robert C. Gilbert, Esq., *et al.*
December 30, 2005
Page 35

*Plaintiff's Second Supplemental Disclosures,* dated June 1, 2005 (documents Bates stamped 001263 – 001664); *Plaintiff's Third Supplemental Disclosures,* dated November 14, 2005; *Plaintiff's Responses to Diamonds International of Alaska Ltd.'s First Set of Interrogatories,* dated April 29, 2005; *Plaintiff's Responses to Diamonds International of Alaska Ltd.'s First Set of Requests for Production,* dated April 29, 2005; *Plaintiff's Amended Responses to Diamonds International of Alaska Ltd.'s First Set of Interrogatories,* dated October 14, 2005; *Plaintiff's Responses to PPI's First Set of Interrogatories,* dated November 21, 2005; *Plaintiff's Responses to PPI's First Set of Requests for Production,* dated November 21, 2005 (documents Bates stamped 001665 – 001917, and 029478 – 029488).

There will ample opportunity for the parties to dispute many issues in this case. It is genuinely hoped that information specifically requested from Defendants by Celebrity's damages expert will not be such an issue.

## VI.   Celebrity's Filing of a Motion for Appointment of a Discovery Master.

Based upon the discovery issues that have arisen between the parties to date, together with the issues that are anticipated in the near future, contemporaneous with this letter, Celebrity will be filing a motion for appointment of a discovery master in this case. It is hoped that Defendants will recognize the merit in doing so and will be amenable to doing the same.

In the meantime, irrespective of whether future discovery issues are to be handled by the Court or by a discovery master, it is my hope that Defendants will comply with the above suggestions and requests. If any of you have any questions in this regard, please let me know.

Sincerely,

BAXTER BRUCE & SULLIVAN P.C.

Z. Kent Sullivan

ZKS/an
c:  Mohan, Vinod & Rajesh Bathija

# Mueller & Partin, PLLC

Certified Public Accountants & Forensic Economists

| | |
|---|---|
| **Plaza Center Building** | **(425) 455-0303** |
| **10900 NE 8th Street – Suite 825** | **(425) 455-5176 (fax)** |
| **Bellevue, Washington  98004** | **muellerpartin@qwest.net** |

## FACSIMILE COVER SHEET

**Please deliver the following documents to the individual (s) listed below.
If you do not receive the number of pages listed below, please call (425) 455-0303
immediately.**

| Date:<br>**November 8, 2005** | Time:<br>AM  /  1:45 PM | Total Pages, including cover:<br>**4** |
|---|---|---|

| | |
|---|---|
| To:<br>   **Z. Kent Sullivan** | Fax Number:<br>   **907-789-1913** |
| Firm:<br>   **Baxter Bruce & Sullivan, P.C.** | |
| Re:<br>   **Shivalay, Inc. v. Panoff Publishing, Inc. et al  Your File # 7500-001** | |

| From:<br>   **William E. Partin** |
|---|

☐ Urgent
☐ Reply ASAP
☐ Please Comment
☐ Please Review
☐ For your information

Original will be sent: ☐ Yes  ☐ No
via:    ☐ U.S. Mail
        ☐ Messenger
        ☐ Federal Express / UPS
        ☐ Other _____

## Notes/Comments

Please do not hesitate to contact me if I may be of assistance.

*The information contained in this communication is confidential information.  It is
intended solely for the individual(s) and or entity named above.  If the reader of this
cover sheet is not the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. Please call (425) 455-
0303 immediately, if you have received this facsimile in error.*

**BAT 029495**



*Senders Initials:* _____

C. client 11/8/05 –PN

## MUELLER & PARTIN P.L.L.C.

**Certified Public Accountants**
**Forensic Economists**

PLAZA CENTER BUILDING
10900 N.E. 8TH STREET, SUITE 825
BELLEVUE, WASHINGTON 98004

PHONE:    (425) 455-0303
FACSIMILE: (425) 455-5176
EMAIL: muellerpartin@qwest.net

November 8, 2005

Z. Kent Sullivan
Baxter Bruce & Sullivan, P.C.
P.O. Box 32819
Juneau, Alaska 99803

Re:    *Shivalay, Inc. v. Panoff Publishing, Inc. et al.*
      Your File Number:  7500-001

Dear Mr. Sullivan:

We have reviewed the documents submitted relating to the above-referenced litigation.  The following additional information may be of assistance to us in our analysis of the loss claimed:

- Financial statements and other information related to Shivalay, Inc. including:

    - Copies of City/Borough of Juneau Sales Tax Return Forms for the fourth quarter of 2002, the third quarter of 2004 and the period January 2005 through the present.

    - Details regarding number of items sold or sales by category and markup by category for the years 2000 through 2005.

    - Copies of the general ledger (or check register if a general ledger was not maintained) indicating the transactions recorded for each revenue and expense account for the years 2000 through 2005.

    - Year-end inventory at cost for the period 2000 through the present including counts by inventory category.

    - Size of store in square feet with identification of display areas and office/administrative areas.

**BAT 029496**

Z. Kent Sullivan
November 8, 2005
Page 2 of 3

    o  Number of employees employed at the store for years 2000 through 2005. Please provide the following for each employee listed:
- Job description
- Salary
- Hours worked per week

    o  Copy of store lease agreement.

- Copies of commission reports prepared by Celebrity for submission to PPI and On Board from commencement of the contracts through present.

- Financial statements and other information related to Diamonds International of Alaska, Ltd. including:

    o  Copies of federal income tax returns for the years 2000 through 2004.

    o  Copies of State of Alaska sales tax returns for the period January 2000 through the present.

    o  Copies of income statements for each store located in the State of Alaska for the period January 2000 through the present.

    o  Copies of balance sheets for each store located in the State of Alaska for the period January 2000 through the present.

    o  Copies of fixed asset registers for each store located in the State of Alaska for the period January 2000 through the present.

    o  Number of employees employed at each store in the State of Alaska for years 2000 through 2005. Please provide the following for each employee listed:
- Job description
- Salary
- Hours worked per week

    o  Copy of store lease agreement for each store located in the State of Alaska.
- Identify the total square footage of each store listed

**BAT 029497**

Z. Kent Sullivan
November 8, 2005
Page 3 of 3

- Identify the total square footage of display area for each store listed.

o Provide the following information for each Diamonds International Store located in the State of Alaska for years 2000 through 2005:
  - Number of items sold
  - Sales by product category
  - Markup by product category
  - Year end physical inventory counts and pricing at cost by item and by product category
  - Commission reports submitted to PPI
  - Commission reports submitted to any other cruise ship marketing organization

o Contracts, agreements, cancelled checks, general ledger account detail listing, and all other documentation listing advertising expenditures on behalf of stores located in the State of Alaska for the period January 2000 through the present.

- Names, number of passengers and ports of call for all ships associated with Panoff Publishing, Inc. during each year of the period January 2000 through the present.

- Produce the number of passengers debarking ships associated with PPI at each State of Alaska port for each year 2000 through 2005.

- Report detailing commissions and fees received by Panoff Publishing, Inc. from each jewelry retailer under contract in the State of Alaska during the period January 2000 through the present.

- Copy of the McDowell Group Studies relating to the State of Alaska cruise ship market for years 2000 through 2005.

We will continue with our analysis of the loss claimed upon receipt of the above information. Please feel free to contact us with any questions you may have.

Very truly yours,

William E. Partin, CPA/ABV

**BAT 029498**

The Honorable Ralph R. Beistline
United States District Judge
Alaska District
222 West 7th Avenue, #49
Anchorage, Alaska 99513-7546
Ph: (907) 677-6257

**LODGED**
**DEC 3 0 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MOHAN BATHIJA, VINOD BATHIJA, RAJESH BATHIJA, and SHIVALAY, INC., an Alaska corporation, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| PANOFF PUBLISHING, INC., a Florida corporation, PPI FLEET SERVICES, INC., a Florida Corporation, PORT PROMOTIONS, INC., a Florida corporation, DIAMONDS INTERNATIONAL OF ALASKA, LTD., an Alaska corporation, DIAMONDS INTERNATIONAL, L.L.C., a New York limited liability company and DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ORDER APPOINTING DISCOVERY ) MASTER ) ) Case No. J04-0011 CV (RRB) |
| Defendants. | ) |

This matter has come before the Court upon the motion of Plaintiff, Shivalay, Inc.

("Celebrity") for the appointment of a discovery master pursuant to Fed. R. Civ. P. 53 and

D. Ak. LR 53.1.  Based upon continuing and anticipated discovery disputes, this Court

agrees that it would be in the best interests of both the parties and this Court for a discovery

master to be appointed and for a procedure to be implemented concerning resolution of

such disputes.  Accordingly,

IT IS HEREBY ORDERED, that:

1.  _____ is appointed as discovery

master ("DM") in this case. Subject to the provisions and procedures set forth below, the

DM is hereby authorized and instructed to:

> A.  resolve all discovery disputes between the parties;
>
> B.  respond to all discovery requests and motions of the parties;
>
> C.  call discovery conferences under Rule 16, Fed. R. Civ. P., at the request of a party or on the DM's own motion;
>
> D.  recommend to the Court, but not impose, sanctions;
>
> E.  set any procedures that may be necessary, in addition to those below, for the timing and orderly presentation of discovery disputes for resolution, including facsimile filing of motions with the DM, provided all motions to the DM are to be filed under D. Ak. LR 7.1, with a copy served on the DM;
>
> F.  make all rulings in writing, served on the parties and filed with the Court; and
>
> G.  recommend to the Court a revision of any pre-trial order entered in the case, if necessary.

2.  Before submitting a discovery dispute to the DM for resolution, the parties

shall make a good faith effort to resolve any such dispute. Any motion filed with the DM

must have the certification required by Fed. R. Civ. P. 37(a)(2)(A) stating that the parties

have attempted to resolve the dispute prior to seeking the DM's assistance.

3.  If the parties are unable to resolve the dispute, motions may be filed with

the DM. Any such motion shall be limited to 10 pages of argument and 30 pages of

exhibits, unless the party filing the motion can make a good cause showing why

additional pages are needed. The party or parties to whom the motion is directed shall file an opposition within 7 days from the date the motion is served (10 days if mailed). The opposition shall be limited to 10 pages of argument and 30 pages of exhibits, unless the opposing party can make a good cause showing why additional pages are needed. The party filing the motion may file a reply memorandum. Any reply shall be filed within 3 days from the date the opposition is served (6 days if mailed). Any reply shall be limited to 5 pages of argument and 10 pages of exhibits, unless the party filing the reply memorandum can make a good cause showing why additional pages are needed.

4.      In the event that a discovery issue arises which requires immediate resolution in order to prevent undue expense or delay (e.g., an issue arising over an instruction to a deponent not to answer a deposition question, at an out-of-state deposition attended by multiple counsel), one or more parties may attempt to contact the DM by telephone for his expedited ruling on the discovery issue. If the DM cannot be reached, the party(ies) seeking immediate resolution of the discovery issue may attempt to contact the trial judge for his similar resolution of the issue.

5.      Except as otherwise noted herein, all discovery disputes must first be submitted to the DM for resolution. In his discretion, the DM may schedule oral argument on any dispute presented to him for resolution.

6.      The DM shall decide the motions in the order they are received, unless a party can make a good cause showing why they should be taken out of order. The DM shall endeavor to decide the motions promptly. The DM will issue a written decision on each dispute presented to him for resolution. The DM's ruling shall include an award of

the DM's costs and fees. Generally, the losing party in a discovery dispute shall pay the DM's costs and fees except that for good cause shown, the DM may allocate his costs and fees to the parties in such manner as he determines is fair and equitable. Where there are proceedings before the DM in which there is no party who "wins or loses" an issue, the DM shall allocate his costs and fees to the parties in a written order in a manner that the DM determines to be fair and reasonable. The DM shall have the authority to award attorney's fees and costs pursuant to Fed. R. Civ. P. 37(a)(4). Any party may seek a ruling directly from the Court as to any motion that has been ripe before the DM for more than 30 days, at which point the DM shall lose jurisdiction over the matter unless this deadline is waived by the parties initially bringing and opposing the motion (those that have merely "joined" the motion shall not have standing to waive or enforce this provision).

      7.    Once the DM issues a decision, a party has a right to appeal the decision to the Court. An appeal shall be filed with the Court within 10 days of the DM's decision (13 days if mailed) and will consist of a notice of appeal indicating which motion is being appealed, the DM's decision, and the papers filed with the DM. The DM's decision will be stayed pending the Court's decision on appeal. This Court will then consider the appeal. If the Court affirms the DM's decision in its entirety, the Court shall award the prevailing party attorney's fees and costs. The Court shall have the discretion to make any award of fees and costs against an appealing party if it determines that the appealing party did not substantially improve its position from the DM's order or if there was not a good faith basis to file the appeal.

8.    The DM's fee of $_____ per hour is approved.    The parties shall endeavor to promptly pay for the DM's services.  Except as noted above, all fees and costs incurred by the DM shall be apportioned between the parties in equal shares.

DATED this _____ day of _____, 2006.


_____
The Honorable Ralph R. Beistline
United States District Judge


c:    Z. Sullivan
      W. Ruddy
      R. Gilbert
      K. Clarkson
      P. Hockman