William G. Ruddy
Ruddy, Bradley & Kolkhorst
PO Box 34338
Juneau, AK 99803
Tel:    (907) 789-0047
Fax:    (907) 789-0783

Robert C. Gilbert
Robert C. Gilbert, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, FL 33134
Tel:    (305) 529-9100
Fax:    (305) 529-1612

Attorneys for Defendants Panoff Publishing, Inc., PPI Fleet Services, Inc.
and Port Promotions, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MOHAN BATHIJA, VINOD BATHIJA, RAJESH BATHIJA and SHIVALAY, INC., an Alaskan corporation, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>PANOFF PUBLISHING, INC., a Florida corporation, PPI FLEET SERVICES, INC., a Florida corporation, DIAMONDS INTERNATIONAL OF ALASKA, LTD., an Alaskan corporation, DIAMONDS INTERNATIONAL, L.L.C., a New York corporation, and DOES 1-10, )<br><br>Defendants. ) | Case No. J04-0011 CV (RRB)<br><br>**DEFENDANT PPI GROUP'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS** |

Defendants Panoff Publishing, Inc. ("Panoff Publishing"), PPI Fleet Services, Inc. ("PPI

Fleet"), and Port Promotions, Inc. ("Port Promotions") (collectively "PPI"), through undersigned

EXHIBIT  A-1

counsel, provide the following responses to plaintiff Shivalay, Inc.'s ("Celebrity") first set of discovery requests.

## PRELIMINARY STATEMENT

1.    These responses are given for purposes of discovery only and are without prejudice to all objections of PPI to the admissibility into evidence or other use of these responses.

2.    No waiver of any applicable privilege against disclosure (*e.g.*, attorney-client, attorney work product, etc.) is intended, or may be inferred, by reason of PPI's voluntary production of information or documents pursuant to these requests.  PPI fully preserves all applicable privileges in connection with the subject matter of these requests.

3.    These responses are given pursuant to, and are subject to all limitations of, the Federal Rules of Civil Procedure.   Any instructions in Celebrity's discovery requests which are not authorized by those rules have been ignored in these responses.

## INTERROGATORIES

**INTERROGATORY NO. 1**:  Please identify the name, title and position of all persons presently or formerly affiliated with PPI having direct knowledge or information regarding the facts and circumstances set forth in the complaint or in PPI's answer thereto.  Also, please provide a complete summary of each person's knowledge.

*ANSWER*:

Bill Panoff – President and CEO of PPI GROUP
Irene Panoff – Chief Operating Officer of PPI GROUP
Jose I. Martin – Chief Financial Officer of PPI GROUP
Mitch Pizik – VP Sales & Marketing PPI GROUP
Bill Jordan – Executive Director Sales & Marketing of PPI GROUP
Joke Soto – Director of Operations Port Shopping Services PPI GROUP
  • Knowledge of PPI's business operations
  • Knowledge of PPI's business relationship with Celebrity

EXHIBIT   A - 2

- Knowledge of e-mails sent by Rick Domanski to port lecturers in July 2003
- Knowledge of PPI's business relationship with DI

Melanie Case – Port Shopping Ambassador
- Knowledge of PPI's onboard promotion of Alaska merchants

Chris Velilla – Regional Sales Manager PPI GROUP
- Knowledge of origin of PPI's business relationship with Celebrity

Donna Bumgardner – Former Port Shopping Ambassador
Margo Masse – Former Port Shopping Ambassador
Edward Murphy - Former Port Lecturer
Randy Sharman – Former Port Shopping Ambassador
Adrian Staton – Former Port Shopping Ambassador
- Knowledge of PPI's onboard promotion of Alaska merchants

Bruno Dannenberg – Former Account Executive
- Knowledge of PPI merchant clients in Mexico

Rick Domanski – Former Promotions Manager PPI GROUP
- Knowledge of PPI's business relationship with Celebrity
- Knowledge of e-mails sent to port lecturers in July 2003
- Knowledge of PPI's business relationship with DI

Rob Locke – Former Master Sales Speaker Onboard Personnel
- Knowledge of PPI's training of port lecturers

Joe McGrath – Former VP Port Shopping Services PPI GROUP
- Knowledge of PPI's business relationship with Celebrity
- Knowledge of e-mails sent by Rick Domanski to port lecturers in July 2003
- Knowledge of PPI's business relationship with DI

Gayle Reed – Former Account Executive PPI GROUP
- Knowledge of PPI's business relationship with Celebrity
- Knowledge of PPI's business relationship with DI
- Knowledge of e-mails sent by R. Domanski to port lecturers in July 2003

Julio Rodriguez – Former Executive Assistant to the President
- Knowledge of PPI's clients' reaction to letters published on the Jeff Sweet website

Robin Selleck – Former Account Executive PPI GROUP
- Knowledge of PPI's business relationship with Celebrity

EXHIBIT  A -3

Carol Armstrong - Former Port Lecturer
Michael de Sadeleer - Former Port Lecturer
Shari Kirkeeng - Former Port Lecturer
Ivan Kivitt - Former Port Lecturer
Jim Leary - Former Port Lecturer
Dan Mason - Former Port Lecturer
Angela McKee - Former Port Lecturer
Rick Miller - Former Port Lecturer
Richie Sacks - Former Port Lecturer
Amelia Savage - Former Port Lecturer
Melissa Schenk - Former Port Lecturer
Randy Sharman - Former Port Lecturer
- Knowledge of PPI's onboard promotion of Alaska merchants
- Knowledge of emails sent by Rick Domanski in July 2003

**INTERROGATORY NO. 2**:  Please identify the name, title and position of the person or persons within PPI primarily responsible for gathering the information set forth in these responses and in communicating that information to your attorneys.

> *ANSWER*:  Irene Panoff, Chief Operating Officer, Jose I. Martin, Chief Financial Officer, and Joke Soto, Director of Operations Port Shopping Services.

**INTERROGATORY NO. 3**:  Please identify by name, job title, duties, address, telephone number and dates of employment, all persons who are current employees or independent contractors performing services for Defendant PPI.

> *ANSWER*:  See attached Schedules 3A (Current Employees) and 3B (Current Independent Contractors).

> **PPI designates the information disclosed in this interrogatory answer as "Confidential" pursuant to the Court's Order Granting Motion for Entry of Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.**

**INTERROGATORY NO. 4**:  Please identify by name, job title, duties, address, telephone number and dates of employment, all persons who were employed by, or performed services as

EXHIBIT    A - 4

independent contractors for, Defendant PPI for the period from January 1, 2000 through March 24,

2004.

> **_ANSWER_:**   See attached Schedules 3A (Current Employees), 3B (Current Independent Contractors), 4A (Former Employees) and 4B (Former Independent Contractors).

> **PPI designates the information disclosed in this interrogatory answer as "Confidential" pursuant to the Court's Order Granting Motion for Entry of Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.**

> **INTERROGATORY NO. 5**:   Please identify all merchants, entities or persons doing

business in Southeast Alaska with whom PPI was affiliated, represented, promoted, or contracted

with at any time between January 1, 2000 and March 24, 2004, but with whom PPI no longer

provides such services.

> **_ANSWER_**:      Alaska Basket Co.
> Annabelle's
> Best Western Executel
> Blue Diamond Inc.
> Brenner's Fine Clothing & Gifts
> Caribbean Gems (Alaska)
> Celebrity Jewelers
> Colombian Emeralds Int.
> Color Fantasies
> Czar's Treasures
> David Green Furriers
> David Green Jewelers
> Eagle Spirit Gallery
> Fire And Ice
> Fur Factory of Alaska
> Galligaskins
> Gems International
> Golden Times of Alaska
> Holiday Inn Express City Center
> Holiday Inn Seattle
> Hunter Art Studio
> Kabana Outlet
> Keller's Trading Co.

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 5 of 32

**EXHIBIT** A-5

Klassique Jewelers
La Putri
Little Switzerland
New Archangel Trading Co.
Precious Kollection
Princess Jewelers
Roma Jewelry International Port
Royal Pashmina
Sachi's Fine Jewelry Ketchikan
Salmon Etc.
Salmon Etc. (Mail Order)
Scanlon Gallery
Sitka Bazaar
Sitka Fur Gallery
T K Maguires
The Tasting Room - Wines of Washington
Touched By The Sun Alaska

**PPI designates the information disclosed in this interrogatory answer as "Confidential" pursuant to the Court's Order Granting Motion for Entry of Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.**

**INTERROGATORY NO. 6**: Please describe in detail all of the facts and specifics regarding the meaning, genesis, implementation, date of inception and oversight of the "DI/TI Alaskan Rescue Plan" as referenced in the e-mails attached to Celebrity's amended complaint.

*ANSWER*: There was no authorized directive from PPI referred to as the "DI/TI Alaska Rescue Plan." PPI believes the term "DI/TI Alaska Rescue Plan" was created by Mr. Domanski to encourage PPI's port lecturers to increase their sales performance.

**INTERROGATORY NO. 7**: Please name every expert witness you expect or intend to call at trial and for each, state the witness' area or areas of expertise, a summary of his or her qualifications, the subject matter on which he or she is expected to testify, the substance of the facts and opinions to which she or he is expected to testify, and a summary of the grounds for each opinion.

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 6 of 32

EXHIBIT _A - 6_

*ANSWER*:   PPI objects to this interrogatory as the scheduling order dated January 20, 2005 does not require the disclosure of such information until January 15, 2006. Without waiving its objection, PPI has not yet retained any expert witnesses it expects or intends to testify at trial.

**INTERROGATORY NO. 8**: Please describe all facts, details and individuals participating

in all conversations and meetings referred to in the e-mail from Rick Domanski to Amsterdam PSA,

*et al.*, dated July 31, 2003, and as attached to Celebrity's amended complaint as Exhibit "7."

*ANSWER*:   PPI believes Mr. Domanski visited the DI offices in New York City on or about July 29, 2003 accompanied by Rick Miller. PPI does not know with whom they met with during that visit.

**INTERROGATORY NO. 9**:   Please describe in detail what is meant by the term

"DIAMOND INTELLIGENCE" as referenced in the e-mail from Rick Domanski to Amsterdam

PSA, *et al.*, dated July 31, 2003, and as attached to Celebrity's amended complaint as Exhibit "7."

*ANSWER*:   PPI does not know what was meant by this term as this term was never used in any authorized directives from PPI. Only Mr. Domanski can answer what is meant by this term.

**INTERROGATORY NO. 10**:   Please identify all court cases in the past ten (10) years in

which either Bill Panoff or any of the entities comprising PPI have been named as a party, including

the case name, the case number, the place where the case was filed, the nature of the case, whether

PPI or Mr. Panoff were represented by an attorney and, if so, the identity of the attorney, including

address and phone number, and the results of the court case.

*ANSWER*:

**Safe Place v. PPI Group**, Broward County Circuit, Court Case No. 02-010965 CACE (02) - Safe Place contracted with PPI for the production and showing of a video commercial in cruise line cabins. Safe Place claimed there was no distribution, even though the cruise line(s) verified the video tapes were being played. Case was resolved amicably by PPI refunding $3,500 to Safe Place and Safe Place the future right to use of the commercial. PPI was represented by Steven Brodie, Carlton

**EXHIBIT** $\underline{A-7}$

Fields, 4000 International Place, 100 SE Second Street, Miami, FL 33131-9101, tel. (305) 530-0050.

**Nelson Garcia Fortuna v. PPI and William Panoff**, Case No. 1442/2004, Court of La Romana, Dominican Republic - Fortuna claimed PPI violated the copyright laws of the Dominican Republic pertaining to its publication of a street map. Court ruled Fortuna not entitled to sue PPI. Decision upheld on appeal. Fortuna held liable for all court costs. PPI was represented by Nelson De los Santos, Steel Hector Davis Pena Prieto & Gamundi, 200 South Biscayne Boulevard, Miami, FL 33131-2398, tel. (305) 577-7000.

**INTERROGATORY NO. 11**:  Please describe in detail all of the services PPI claims it provided Celebrity during the period from January 1, 2000 through March 24, 2004.

> *ANSWER*:  Pursuant to written contracts, PPI promoted Celebrity Jewelers through port shopping talks given by its port lecturers and through the placement of information on the shopping maps it published for Juneau, identifying the location of Celebrity Jewelers' store in Juneau's shopping area and a description of the merchandise sold.  PPI also placed the print ad provided by Celebrity in in-cabin magazines for the 2004 Alaska season.

**INTERROGATORY NO. 12**:  Please describe in detail the "15K Alaskan mandate [that] came up out of the face to face Princess negotiation" and as referenced in the e-mail from Rick Domanski to Amsterdam PSA, *et al.*, dated July 31, 2003, and as attached to Celebrity's amended complaint as Exhibit "7."

> *ANSWER*:  Rick Domanski was not a participant in PPI's negotiations with Princess Cruises.  PPI has no knowledge of the origin of Mr. Domanski's use of the phrase "15K Alaskan mandate."

**INTERROGATORY NO. 13**: Please specifically identify all evidence PPI possesses which demonstrates that Celebrity utilizes merchandise of inferior quality and/or deceptive sales techniques, including:

> A.     Celebrity only purchases diamonds from a pool of diamonds that DI has already rejected out of hand.

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 8 of 32

**EXHIBIT** _A - 8_

B.    Celebrity sells brown diamonds tricked up with enhancement settings and super yellow mixed gold, flashing laser cut gold, etc.

C.    Celebrity enhances the appearance of such inferior diamonds by utilizing deceptive Kleig/Halogen lights.

D.    Celebrity deceptively groups together a bunch of industrial grade tiny diamonds that contain hard to see black spots or brown tint.

> *ANSWER*: PPI does not assert Celebrity: (1) only purchases diamonds from a pool of diamonds that DI has already rejected out of hand; (2) sells brown diamonds tricked up with enhancement settings and super yellow mixed gold, flashing laser cut gold, etc; (3) enhances the appearance of such inferior diamonds by utilizing deceptive Kleig/Halogen lights; and (4) deceptively groups together a bunch of industrial grade tiny diamonds that contain hard to see black spots or brown tint. Therefore, PPI does not maintain any evidence to this effect.

**INTERROGATORY NO. 14**:  Please specifically articulate the basis for PPI's contention in its answer that it only engaged in "isolated and infrequent business contacts with the State of Alaska in the course of providing" services.  Please specifically identify the number of merchants (without disclosing their identities) with whom PPI currently contracts in Southeast Alaska and the gross receipts PPI realized from the merchants it contracted with during the 2000, 2001, 2002, 2003 and 2004 tourist seasons.

> *ANSWER*: PPI incorporates by reference the Declaration of William A. Panoff dated May 28, 2004 filed in support of PPI's motion to dismiss for lack of personal jurisdiction.  For the 2005 Alaska cruise season, PPI has contracts with 39 Alaska merchants.  Gross receipts realized from merchants with whom PPI contracted during 2000-2003 are as follows:

|      |      |              |
|------|------|--------------|
| 2000 | $    | 86,464.77    |
| 2001 |      | 81,591.61    |
| 2002 |      | 557,861.78   |
| 2003 |      | 1,303,635.80 |

EXHIBIT _A - 9_

PPI objects to this interrogatory to the extent it seeks financial information for the 2004 Alaska tourist season on the grounds that Celebrity and PPI ended their business relationship prior to the commencement of the 2004 Alaska season. Therefore, any financial information relating to the 2004 Alaska tourist season is irrelevant and unlikely to lead to the discovery of admissible evidence.

**PPI designates the information disclosed in this interrogatory answer as "Confidential" pursuant to the Court's Order Granting Motion for Entry of Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.**

**INTERROGATORY NO. 15**: Please specifically identify all records, documents and information relating to Celebrity, including, but not limited to, all contracts, on board sales records, fees paid by Celebrity, commissions paid by Celebrity or PPI to PPI agents, employees, representatives or subcontractors, accounts receivable ledgers, and all communications by and between Celebrity and PPI for the period beginning January 1, 2000 through the present date.

*ANSWER*: Pursuant to Rule 33(d), PPI will make all non-privileged documents within its possession, custody or control responsive to this interrogatory available for inspection and copying at its offices in Fort Lauderdale, Florida, on a mutually convenient date and time.

**INTERROGATORY NO. 16**: Please specifically identify all fees and commissions paid by Celebrity to PPI from January 2000 until the present, including amounts, date paid, and characterization of payment (fee or commission).

*ANSWER*:

| | | |
|------|---|-----------|
| 2000 | $ | 5,200.00 |
| 2001 | | 7,453.09 |
| 2002 | | 24,255.14 |
| 2003 | | 66,281.61 |
| 2004 | | 27,000.00 |

The $27,000 payment by Celebrity in 2004 was refunded in April 2004 upon the termination of the business relationship between PPI and Celebrity.

**INTERROGATORY NO. 17**: Please specifically identify all records, documents and information relating to DI, DIAK and/or any of their affiliates involving the Southeast Alaska cruise ship market, including, but not limited to, on board sales records, fees paid by DI/DIAK,

EXHIBIT A-10

commissions paid by DI/DIAK or PPI or PPI agents, employees, representatives or subcontractors, contracts, accounts receivable ledgers, and all communications by and between DI/DIAK and PPI for the period beginning January 1, 2000 through March 24, 2004.

> *ANSWER*: PPI objects to this request as overbroad, burdensome and calling for the production of internal financial documents which are neither relevant to the disputed issues in this case nor likely to lead to the discovery of admissible evidence. Without waiving its objection and pursuant to Rule 33(d), PPI will make all non-financial documents within its possession, custody or control responsive to this interrogatory available for inspection and copying on a mutually convenient date and time.

> **PPI designates the information disclosed in this interrogatory answer as "Confidential" pursuant to the Court's Order Granting Motion for Entry of Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.**

**INTERROGATORY NO. 18**: Please specifically identify all fees and commissions paid by Celebrity to DI/DIAK from January 2000 through March 24, 2004, including amounts, date paid, and characterization of payment (fee or commission).

> *ANSWER*: PPI has no knowledge of any fees paid by Celebrity to DI/DIAK during the stated period.

**INTERROGATORY NO. 19**: Please specifically describe the dates of employment and/or period of contract if independent contractors, job title and job duties of Rick Domanski and Joke Soto. Please further identify whether or not Rick Domanski and Joke Soto are current employees and/or independent contractors of PPI.

> *ANSWER*:
> Joke Soto
> Employment:  09/29/91-01/17/99; 10/02/00-current
> Title:  Manager of Operations; currently Director of Operations
> Duties:  Responsible for placing port lecturers on ships and oversees their training and management on day to day basis.

EXHIBIT *A - 11*

Rick Domanski
Employment: 07/17/00-05/11/01; 09/24/01-02/26/04
Title: Promotions Manager
Duties: Responsible for developing promotions for merchants and for brands represented on the port shopping program.

**INTERROGATORY NO. 20**: Please identify the various cruise lines operating in Southeast Alaska with whom PPI contracts, and specifically describe the various services PPI either receives from and/or provides those entities. Please also specifically identify the manner in which compensation is exchanged, including whether such compensation is based upon a percentage of sales, flat fee, etc.

*ANSWER*: PPI has operated the port shopping concession for Carnival Cruise Line in Southeast Alaska since the 2000 Alaska season. PPI has operated port shopping concessions for Holland America Line and Radisson Seven Seas Cruises since the 2002 Alaska season, and PPI assumed the port shopping concession in Alaska for Princess Cruise Lines in 2004. PPI objects to the portion of this interrogatory seeking information regarding the manner of compensation between PPI and these cruise lines on the grounds such information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, several of PPI's contracts with cruise lines contain confidentiality provisions which prohibit PPI from disclosing the requested information.

**PPI designates the information disclosed in this interrogatory answer as "Confidential" pursuant to the Court's Order Granting Motion for Entry of Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.**

**INTERROGATORY NO. 21**: If your response to any request for admission set forth below is anything other than an unqualified admission, please identify all facts which you contend support your refusal to unqualifiedly admit the request.

*ANSWER*: PPI objects to this interrogatory on the grounds it seeks to transform each "unqualifiedly" admitted or denied request for admission into a subpart of this interrogatory, thereby exceeding the permitted number of interrogatories. Additionally, PPI objects to this interrogatory on the grounds it is unduly burdensome and oppressive.

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 12 of 32

**EXHIBIT** *A -12*

**INTERROGATORY NO. 22**: If your response to any request for admission set forth below is anything other than an unqualified admission, please identify all documents, notes, reports, memoranda, electronic and/or tape recordings, photographs, oral statements, or other tangible things which support your refusal to unqualifiedly admit the request.

> ***ANSWER***: PPI objects to this interrogatory on the grounds it seeks to transform each "unqualifiedly" admitted or denied request for admission into a subpart of this interrogatory, thereby exceeding the permitted number of interrogatories. Additionally, PPI objects to this interrogatory on the grounds it is unduly burdensome and oppressive.

**INTERROGATORY NO. 23**: If your response to any request for admission set forth below is anything other than an unqualified admission, please provide the name, address and telephone number of all persons, including consultants and/or experts, purporting to have any knowledge or factual data upon which you base your refusal to make an unqualified admission to the request. The purpose of this interrogatory is to have you reveal everything presently known to you that bears upon your refusal to respond to the request with an unqualified admission.

> ***ANSWER***: PPI objects to this interrogatory on the grounds it seeks to transform each "unqualifiedly" admitted or denied request for admission into a subpart of this interrogatory, thereby exceeding the permitted number of interrogatories. Additionally, PPI objects to this interrogatory on the grounds it is unduly burdensome and oppressive.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**: Please admit that PPI was contractually bound to non-exclusively promote Celebrity to cruise ship passengers, on certain cruise ships with whom PPI was affiliated, during the 2000, 2001, 2002, 2003 and 2004 cruise ship tourists seasons.

> ***RESPONSE***: Pursuant to the terms of written contracts, PPI admits it was contractually bound to promote Celebrity, on a non-exclusive basis, to passengers traveling on ships operated by certain of its cruise line clients for the 2000 through

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 13 of 32

**EXHIBIT** _A -13_

2003 Alaska seasons. PPI denies it was bound to provide such services during the 2004 Alaska season based on the parties' agreed upon termination of their contracts.

**REQUEST FOR ADMISSION NO. 2**: Please admit that the contracts between Celebrity and PPI, together with oral representations made by PPI, its employees and agents, provided that Celebrity's store and merchandise would be fairly promoted by PPI to cruise ship passengers.

*RESPONSE*: PPI admits the terms of the parties' written contracts delineating the parties' legal obligations to each other; otherwise denies.

**REQUEST FOR ADMISSION NO. 3**: Please admit that at the time PPI contracted with Celebrity, PPI knew that diamond and tanzanite sales comprised a substantial portion of Celebrity's total business.

*RESPONSE*: PPI admits it was aware Celebrity's product line included diamonds and tanzanite at the time the parties entered into their contracts in 2000 and 2001. PPI objects to the phrase a "substantial portion of Celebrity's total business" as vague and indefinite and, therefore, otherwise denies this request.

**REQUEST FOR ADMISSION NO. 4**: Please admit that in furtherance of its marketing efforts, PPI places employees, agents and/or independent contractors on board cruise ships with whom it affiliates.

*RESPONSE*: Admits.

**REQUEST FOR ADMISSION NO. 5**: Please admit that the above-referenced personnel are commonly referred to as Port Shopping Ambassadors ("PSA").

*RESPONSE*: PPI admits that port shopping promotion contractors are referred to as Port Shopping Ambassadors on the ships of Holland America Line, Super Shoppers on the ships of Carnival Cruise Lines, and Port Shopping Ambassadors on the ships of Princess Cruise Lines. These personnel are also commonly referred to as "port lecturers."

EXHIBIT ___ A -14

**REQUEST FOR ADMISSION NO. 6**: Please admit that, in marketing Southeast Alaska merchants with whom PPI contracts, PSAs frequently place printed materials on board the cruise ships detailing the goods, services and locations of the participating local merchants.

*RESPONSE*:  Admits.

**REQUEST FOR ADMISSION NO. 7**:  Please admit that, in marketing Southeast Alaska merchants with whom PPI contracts, PSAs frequently utilize on-board demonstration and exhibition of products of participating merchants.

*RESPONSE*:  Admits.

**REQUEST FOR ADMISSION NO. 8**:  Please admit that, in marketing Southeast Alaska merchants with whom PPI contracts, PSAs frequently secure contracts with participating merchants on behalf of cruise ship passengers.

*RESPONSE*:  PPI objects to this request because, as phrased, it is vague and unclear.

**REQUEST FOR ADMISSION NO. 9**:  Please admit that, in marketing Southeast Alaska merchants with whom PPI contracts, PSAs frequently conduct promotional talks prior to the vessel's arrival in port and in order to promote the various participating merchants.

*RESPONSE*:  Admits.

**REQUEST FOR ADMISSION NO. 10**:  Please admit that, in marketing Southeast Alaska merchants with whom PPI contracts, PSAs frequently conduct other on-board promotions including raffles and giveaways.

*RESPONSE*:  Admits.

**EXHIBIT** A-15

**REQUEST FOR ADMISSION NO. 11**: Please admit that, in marketing Southeast Alaska merchants with whom PPI contracts, PSAs frequently display participating merchants' stores and products via closed circuit television on board ships.

>   ***RESPONSE***: Denies. The video commercials shown on closed circuit television on-board ships are pre-recorded prior to the Alaska cruise season and PSAs play no role in such video broadcasts.

**REQUEST FOR ADMISSION NO. 12**:  Please admit that PPI management controls the detailed information and instructions regarding exactly how PSAs are to conduct the activities referenced in Requests for Admission 6-11.

>   ***RESPONSE***:  Admits.

**REQUEST FOR ADMISSION NO. 13**:  Please admit that Celebrity was advised that the services referenced in Requests for Admission 6-11 would be provided to it by PPI and its PSAs.

>   ***RESPONSE***:  Objection, the terms of the parties' written contracts specify the services to be provided.

**REQUEST FOR ADMISSION NO. 14**:  Please admit that Celebrity was not advised that the services referenced in Requests for Admission 6-11 would be provided to PPI merchants in a disparate or unequal manner.

>   ***RESPONSE***:  Objection to the form of this request as it assumes a fact that has neither been admitted nor established.

**REQUEST FOR ADMISSION NO. 15**:  Please admit that in exchange for such services and promotion, Celebrity has paid fees and commission to PPI since January 1, 2000, totaling approximately $129,950.00.

>   ***RESPONSE***:  Denies. The figure of $129,950 includes $27,000 paid for 2004 media advertising which was refunded to Celebrity in April 2004.  The correct figure is approximately $103,000.

EXHIBIT __A-46__

**REQUEST FOR ADMISSION NO. 16**: Please admit that instead of marketing Celebrity to cruise ship passengers in a manner consistent with PPI's representations, PPI engaged in an active campaign of knowingly and intentionally discouraging passenger business with Celebrity.

**_RESPONSE_**: Denies.

**REQUEST FOR ADMISSION NO. 17**: Please admit that PPI implemented a "plan" whereby it agreed to exclusively market and promote DI for all diamond and tanzanite sales.

**_RESPONSE_**: Denies.

**REQUEST FOR ADMISSION NO. 18**: Please admit that as part of the above-referenced plan, PPI management told its PSAs to specifically discourage cruise ship passenger business with Celebrity and other Indian owned stores characterized as "the Indian Brethren."

**_RESPONSE_**: Denies.

**REQUEST FOR ADMISSION NO. 19**: Please admit that PPI encouraged PSAs to promote DI exclusively, over and above all other merchants, for certain items such as diamonds and tanzanite.

> **_RESPONSE_**: Admits that for the years 2003 and 2004, PPI encouraged its PSAs to exclusively promote DI for diamonds and tanzanite during its onboard lectures only; otherwise denies.

**REQUEST FOR ADMISSION NO. 20**: Please admit that as part of the above-referenced plan, PPI management told its PSAs to discourage passenger business with Celebrity and that the PSAs should advise passengers that Celebrity utilizes merchandise of inferior quality and deceptive sales techniques, including that Celebrity only purchases diamonds from a pool of diamonds that DI has already rejected out of hand.

**_RESPONSE_**: Denies.

EXHIBIT _A -17_

**REQUEST FOR ADMISSION NO. 21**: Please advise that as part of the above-referenced plan, PPI management told its PSAs to discourage passenger business with Celebrity and that the PSAs should advise passengers that Celebrity utilizes merchandise of inferior quality and deceptive sales techniques, including that Celebrity sells brown diamonds tricked up with enhancement settings and super yellow mixed gold, flashing laser cut gold, etc.

**RESPONSE**: Denies.

**REQUEST FOR ADMISSION NO. 22**: Please admit that as part of the above-referenced plan, PPI management told its PSAs to discourage passenger business with Celebrity and that the PSAs should advise passengers that Celebrity utilizes merchandise of inferior quality and deceptive sales techniques, including that Celebrity enhances the appearance of such inferior diamonds by utilizing deceptive Kleig/Halogen lights.

**RESPONSE**: Denies.

**REQUEST FOR ADMISSION NO. 23**: Please admit that as part of the above-referenced plan, PPI management told its PSAs to discourage passenger business with Celebrity and that the PSAs should advise passengers that Celebrity utilizes merchandise of inferior quality and deceptive sales techniques, including that Celebrity deceptively groups together a bunch of industrial grade tiny diamonds that contain hard to see black sports or brown tint.

**RESPONSE**: Denies.

**REQUEST FOR ADMISSION NO. 24**: Please admit that PPI has no evidence, knowledge, information or belief that Celebrity utilizes merchandise of inferior quality and/or deceptive sales techniques.

**RESPONSE**: Admits.

EXHIBIT $A-18$

**REQUEST FOR ADMISSION NO. 25**: Please admit that based upon PPI's actions, and the actions of its management, personnel, employees and agents, numerous cruise ship passengers were, in fact, specifically directed to DI and away from Celebrity.

*RESPONSE*: Denies.

**REQUEST FOR ADMISSION NO. 26**: Please admit that the above-referenced campaign to direct sales away from Celebrity, and instead to DI, increased DI's volume and value of sales.

*RESPONSE*: Denies.

**REQUEST FOR ADMISSION NO. 27**: Please admit that based upon the contracts entered into with PPI, Celebrity is/was required to pay PPI commissions for each and every sale that occurred with a passenger from a PPI affiliated ship, irrespective of whether or not PPI was, in fact, responsible for generating the sale.

*RESPONSE*: Objection, the terms of the contracts speak for themselves.

**REQUEST FOR ADMISSION NO. 28**: Please admit that any actions designed to discourage cruise ship passenger business with Celebrity, would be a breach of PPI's obligations with Celebrity.

*RESPONSE*: Objection, the request as drafted is overbroad, vague and calls for a legal conclusion. Without waiving its objection, PPI denies that it took any actions designed to steer passengers away from Celebrity.

**REQUEST FOR ADMISSION NO. 29**: Please admit that any act by PPI to discourage passenger business with Celebrity or to disparage Celebrity and its products would be contrary to the contractual rights and interests Celebrity had created with PPI.

*RESPONSE*: Objection, the request as drafted is overbroad, vague and calls for a legal conclusion. Without waiving its objection, PPI denies that it took any actions

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 19 of 32

**EXHIBIT** _A-19_

designed to discourage passenger business with Celebrity or to disparage Celebrity and its products.

**REQUEST FOR ADMISSION NO. 30**: Please admit that PPI participated in and/or was aware of an active conspiracy to restrain trade involving Celebrity.

*RESPONSE*: Denies.

**REQUEST FOR ADMISSION NO. 31**: Please admit that the e-mails attached to the first amended complaint as Exhibits 5-7 are true and correct copies of e-mails sent by PPI employees and/or independent contractors to PSAs on board the PPI affiliated cruise lines.

*RESPONSE*: Admits.

**REQUEST FOR ADMISSION NO. 32**: Please admit that PPI president William Panoff was aware of the e-mails attached to the first amended complaint as Exhibits 5-7 at or near the time that the e-mails were sent.

*RESPONSE*: Admits.

**REQUEST FOR ADMISSION NO. 33**: Please admit that at or about the time that the e-mails attached to the first amended complaint as Exhibits 5-7 were sent, the senders, Rick Domanski and Joke Soto, were either executives and/or managers of Defendant PPI.

*RESPONSE*: Admits that Rick Domanski was the Promotions Manager, Onboard Marketing, and Joke Soto was the Operations Manager of the Onboard Marketing Department at or about the time such emails were sent, but denies that Mr. Domanski was acting within the scope of his authority at the time.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**: If your response to any of the preceding requests for admission is anything other than an unequivocal admission, please produce all documents that

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 20 of 32

EXHIBIT A -20

support your response. If such documentation has not already been produced, please provide a copy

of any such document with your responses to these discovery requests. If you object to the

production of any such item, please set forth such objection with sufficient particularity to permit

Celebrity to file a motion to compel production with the Court.

> ***RESPONSE***: Objection, this request is overbroad and vague. Without waiving its objection, pursuant to Rule 34(b), PPI will make available for inspection and copying at its offices in Fort Lauderdale, Florida, all non-privileged documents within its possession, custody and control responsive to this request, except those documents relating to interrogatory nos. 5, 14, 17 and 20 based on the objections asserted therein.

> **PPI designates the documents produced in response to this request are "Confidential" pursuant to the Court's Order Granting Motion for Entry of Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.**

**REQUEST FOR PRODUCTION NO. 2**: Please produce all documents or tangible items

received by you, your attorneys, or the persons assisting your attorneys that mention, or relate to the

allegations contained in the complaint or PPI's answer thereto. If such documentation has not

already been produced, please provide a copy of any such document with your responses to these

discovery requests. If you object to the production of any such item, please set forth such objection

with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

> ***RESPONSE***: PPI objects to this request to the extent it seeks documents protected from disclosure based on the attorney-client and work-product privileges. PPI further objects to this request in that it is overbroad and vague. Without waiving its objection, pursuant to Rule 34(b), PPI will make available for inspection and copying at its offices in Fort Lauderdale, Florida, all non-privileged documents within its possession, custody and control responsive to this request, except those documents relating to interrogatory nos. 5, 14, 17 and 20 based on the objections asserted therein.

> **PPI designates the documents produced in response to this request are "Confidential" pursuant to the Court's Order Granting Motion for Entry of**

DEFENDANT PPI GROUP'S RESPONSE TO PLAINTIFF'S FIRST SET OF
DISCOVERY REQUESTS
*Bathija, et al. v. Panoff Publishing, Inc., et al.*, Case No. J04-0011 Civil (RRB)
Page 21 of 32

EXHIBIT _A-21_

Protective Order and the provisions of the Protective Order attached as Exhibit A to Defendants' motion.

**REQUEST FOR PRODUCTION NO. 3**:  Please produce any investigative reports, drawings, diagrams, tape recordings, documents or tangible items generated by you, your attorneys, investigators working for your attorneys and expert witnesses you have retained that relate to or mention the allegations contained in the complaint or PPI's answer thereto.  If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests.  If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

> *RESPONSE*: PPI objects to this request on the grounds it seeks documents protected
> from disclosure based on the attorney-client and work-product privileges.

**REQUEST FOR PRODUCTION NO. 4**:  Please produce any documents, data or tangible items received, reviewed or generated by any expert witness that you have retained, including but not limited to, correspondence, reports, investigations, records, photographs, drawings, diagrams, billings, notes of telephone conversations, and any exhibits to be used at trial.  If such documentation has not already been produced, please provide a copy of any such document with your responses to these discovery requests.  If you object to the production of any such item, please set forth such objection with sufficient particularity to permit Celebrity to file a motion to compel production with the Court.

> *RESPONSE*:  None – see response to interrogatory no. 7.

**REQUEST FOR PRODUCTION NO. 5**: Please produce any documents, data or tangible items referenced in PPI's response to the interrogatories identified above, including but not limited

**EXHIBIT** A-22