1  g. the author, addressees and recipients or any person who would have had access to
2  such information by virtue of his/her employment as well as deposition witnesses presently
3  employed by the party producing the highly confidential document.
4  11. If a party in this litigation other than the producing party desires to give, show, make
5  available or communicate any Litigation Materials marked or treated as "Confidential" or "Highly
6  Confidential" to any person who is not specifically authorized pursuant to the terms of this
7  Protective Order to have access to such Litigation Materials, the party intending to disclose the
8  materials shall notify the producing party of such intent no less than three business days prior to the
9  intended disclosure. Said notification shall be sufficiently specific to inform the producing party of
10 the intended scope of the disclosure, including the name and/or job description of the person to
11 whom such disclosure is intended. The parties will then attempt to negotiate the terms of disclosure
12 within two business days of the notification. If no agreement can be reached during this shortened
13 meet and confer period, then this dispute shall be the subject of a regularly noticed motion filed by
14 the objecting party with the producing party bearing the burden to support nondisclosure, pursuant
15 to the dispute resolution procedure in paragraph 4 above, except that any party may move on an ex
16 parte or expedited basis for an order shortening time if a scheduled deposition or Court date could
17 be delayed or cancelled. This paragraph does not apply to "Highly Confidential" documents which
18 are used at deposition or trial in good faith for impeachment purposes only; provided, however, that
19 the party desiring to use, pursuant to this exception, a "Highly Confidential" document for
20 impeachment purposes at a deposition shall alert the producing party at least 48 hours in advance of
21 its intent to use the "Highly Confidential" document under this exception, and then the requesting
22 party and the producing party shall meet and confer in good faith to address confidentiality concerns
23 and appropriate redactions, with any dispute being brought to the Court's attention for resolution on
24 an expedited basis (by telephone conference or other means directed by the Court) in which only the
25 requesting party and the producing party have notice or participate, so that the deposition is not
26 delayed. If such a proceeding were to occur, the requesting party shall provide written notice of the
27 fact of the preceeding and the production number of the "Highly Confidential" document at issue to
28 the other parties to the action immediately after the conclusion of the deposition in which the

1  request arose. A producing party who is notified of a request to use a "Highly Confidential"
2  document for impeachment purposes, pursuant to this paragraph, shall not disclose the fact of that
3  request or the document or its contents to the deposition witness, the attorney for the deposition
4  witness, or any other party to this action.
5      12. (a)    If any party wishes to disclose Litigation Materials produced by any other
6  party and designated "Confidential" or "Highly Confidential" to any expert or consultant, the expert
7  or consultant must sign the agreement attached hereto as Exhibit A. Nothing in this Protective
8  Order shall require that non-testifying experts or consultants be deposed or otherwise be the subject
9  of discovery.
10      (b)    If any party desires to disclose another party's information designated
11  "Highly Confidential" to any expert or consultant pursuant to paragraph 10(f) above, and that expert
12  or consultant, in the five years prior to the date this Order is entered, has worked for one of the
13  defendants (or their predecessors) then and only then, that party must first identify in writing to the
14  attorneys for the producing party that expert or consultant and a general description of the nature of
15  that engagement sufficient to allow the producing party to determine if it will object to the
16  disclosure of its "Highly Confidential" information to that expert or consultant, unless the
17  producing party agrees to permit disclosure without such information. The attorney for the
18  producing party shall have five (5) days from receipt of such notice to undertake the dispute
19  resolution procedures set forth in paragraph 4 above, and any objections not informally resolved
20  shall be the subject of a regularly noticed motion by the producing party who shall have the burden
21  to support the restriction on dissemination of its "Highly Confidential" information to that expert or
22  consultant.
23      (c)    Such identification shall include the full name, professional address and
24  affiliation of the expert or consultant, the present and prior employments or consultancies of the
25  expert or consultant and work done for defendants and/or their predecessors (other than work done
26  for the party engaging that expert or consultant in this litigation).
27      13. Each person (except for the Court, Court personnel, any discovery referee, any
28  settlement mediator, court reporters and videographers and copying, imaging and computer service

employees) provided access to Litigation Materials marked "Confidential" or "Highly Confidential" pursuant to the terms of the Protective Order shall, before gaining such access, receive a copy of this Protective Order and, as to those persons described in paragraphs 9 and 10 shall sign an agreement in the form attached hereto as "Exhibit A" or shall agree to be bound by the terms of this Protective Order on the record at a deposition or hearing in this litigation. A file shall be maintained by each attorney of record for a party of all written agreements signed by persons who have received such Litigation Materials from that party or persons affiliated with that party.

14. Each witness in a deposition shall be provided with a copy of this Order at the start of the examination and shall be advised on the record that he or she is bound by the terms of this Order and applicable remedies under law for violating the terms of this Order.

15. Litigation Materials designated "Confidential" or "Highly Confidential," when filed with pleadings or as evidence, shall be sealed in conformance with Local Rule 79-5.

16. "Confidential" and "Highly Confidential" Litigation Materials shall maintain such protections and designations in connection with any trial in this matter. Before the trial begins, the parties will meet and confer in good faith as part of the pre-trial conference statement process to put into place a procedure for identification of and use of "Confidential" or "Highly Confidential" documents at trial. Any documents which remain "Confidential" or "Highly Confidential" before trial shall maintain their status through the time of the pre-trial conference or resolution of the procedures described above.

17. The provisions of this Order may be modified at any time by stipulation of the parties approved by order of the Court. In addition, a party may at any time apply to the Court for modification of this Protective Order pursuant to a motion brought in accordance with the rules of the Court. Nothing in this Stipulation and Order shall constitute: (i) an agreement by any party to produce any documents or other materials in discovery not otherwise agreed upon or required by court order or the Federal Rules of Civil Procedure; (ii) a waiver by any person or party of any right to object to or seek a further protective order with respect to any discovery in this or any other action; or (iii) a waiver of any claim of immunity or privilege with respect to any testimony, document or information.

18. In the event that Litigation Materials designated as "Confidential" or "Highly Confidential" are disclosed to someone not authorized under the terms of this Protective Order to receive such information, counsel of record for the party involved shall immediately give notice to counsel of record for the party who designated the Litigation Materials as "Confidential" or "Highly Confidential," and shall also describe the circumstances surrounding the unauthorized disclosure. If a party fails to treat documents designated as "Confidential" or "Highly Confidential" in the manner provided herein, the party should immediately take such steps as are necessary to have such items placed under seal and/or restored to their confidential status.

19. In the event that Litigation Materials claimed to be "Confidential" or "Highly Confidential" are inadvertently produced without the appropriate designation, such documents and copies thereof shall be returned to the producing party within five days of any written notice requesting their return to affix the appropriate designation or immediately stamped "Confidential" or "Highly Confidential" as requested by the producing party. The receiving party may challenge the confidential nature of the documents, but the inadvertent production of the documents, or the giving of testimony, claimed to be "Confidential" or "Highly Confidential" shall not constitute a waiver of the confidentiality designation.

20. Inadvertent production of any document produced in this action by any party or non-party that a party or non-party later claims should have been withheld on grounds of a privilege, including the work product doctrine (collectively referred to as an "Inadvertently Produced Privileged Document") will not be deemed to waive any privilege or work product protection. A party or non-party may request the return of any document that it inadvertently produced by identifying the Inadvertently Produced Privileged Document and stating the basis for withholding such document from production and providing any other information that would be listed on a supplemental privilege log disclosing the document. If a party or non-party requests the return, pursuant to this paragraph, of such an Inadvertently Produced Privileged Document then in the custody of one or more parties, the possessing parties shall within three business days return to the requesting party or non-party the Inadvertently Produced Privileged Document and all copies thereof and shall expunge from any other document or material information solely derived from the

1  Inadvertently Produced Privileged Document. After a document is returned pursuant to this
2  paragraph, a party may move the Court for an order compelling production of the document.
3      21. Within sixty days following termination of this litigation (including the final resolution
4  of any appeals), the originals and all copies, whether exact copies or compilations, digests or non-
5  exact copies in any form, of Litigation Materials designated as "Confidential" or "Highly
6  Confidential" shall be returned to the party who produced such documents or may be disposed of in
7  some other manner that is mutually agreeable among the parties. Notwithstanding this, however,
8  counsel of record may retain their file copies of all court filings, deposition or hearing transcripts
9  and exhibits, and correspondence, provided that counsel of record continues to treat all
10 "Confidential" or "Highly Confidential" Litigation Materials in the manner provided for in this
11 Protective Order.
12     22. The termination of proceedings in this action shall not thereafter relieve the parties from
13 the obligation of maintaining the confidentiality of all Litigation Materials designated as
14 "Confidential" or "Highly Confidential" which are received pursuant to this Protective Order, and
15 are not used at trial, or are used at trial under restriction designed to exclude from the public record
16 those portions of the Litigation Materials that were designated as "Confidential" or "Highly
17 Confidential." This provision shall not apply to any Litigation Materials that are the subject of a
18 superseding ruling of the Court as to the scope of their disclosure. The Court shall retain
19 jurisdiction to enforce and/or to modify this Protective Order.
20     23. The terms of this Protective Order shall apply to discovery directed to non-parties to
21 this Litigation, and such non-parties may specifically invoke or waive the terms and protections of
22 this Protective Order. To the extent that any discovery is served on a non-party, the party serving
23 the discovery shall provide the non-party with a copy of this Protective Order and specifically
24 mention the non-party's right to invoke or waive the terms of this Protective Order.
25     24. The parties acknowledge that, by entering into this Stipulation, the parties do not waive
26 any claims or defenses, including defenses regarding the service of plaintiffs' complaint or
27 jurisdiction.
28

```
 1  Dated: July 10, 2003                          FRED T. ISQUITH
    GUIDO SAVERI                                  Wolf, Haldenstein, Adler Freeman & Herz
 2  Saveri & Saveri, Inc.                         270 Madison Avenue
    111 Pine Street, Suite 1700                   New York, NY 10016
 3  San Francisco, CA 94111                       (212) 545-4600 (telephone)
 4  (415) 217-6810 (telephone)                    (212) 545-4653 (facsimile)
    (415) 217-6813 (facsimile)
 5
 6  By: /s/ Guido Saveri                          By: /s/ Fred T. Isquith
 7  Guido Saveri                                  Fred T. Isquith
    Plaintiff's Co-Lead Counsel                   Plaintiff's Co-Lead Counsel
 8

 9  STEVEN W. BERMAN                              JOSEPH J. TABACCO, JR.
10  Hagens Berman LLP                             Berman DeValerio Pease Tabacco Burt &
    1301 Fifth Avenue, Suite 2900                 Pucillo
11  Seattle, WA 98101                             425 California Street, Suite 2025
    (206) 623-7292 (telephone)                    San Francisco, CA 94104
12  (206) 623-0594 (facsimile)                    (415) 433-3200 (telephone)
                                                  (415) 433-6382 (facsimile)
13
14
    By:_____                    By: /s/ Joseph J. Tabacco
15  Steven W. Berman                              Joseph J. Tabacco, Jr.
    Plaintiffs' Co-Lead Counsel                   Plaintiffs' Liaison Counsel
16

17  RONALD C. REDCAY                              JEFFREY S. DAVIDSON
    Arnold & Porter                               JAN L. HANDZLIK
18  777 South Figueroa Street                     MARTIN R. BOLES
19  Los Angeles, CA 90017-2513                    CHRISTOPHER J. HECK
    (213) 243-4000 (telephone)                    Kirkland & Ellis
20  (213) 243-4199 (facsimile)                    777 South Figueroa Street
    JOEL S. SANDERS                               Los Angeles, CA 90017-2513
21  Gibson, Dunn & Crutcher LLP                   (213) 680-8400 (telephone)
22  One Montgomery Street                         (213) 680-8500 (facsimile)
    San Francisco, CA 94104
23  (415) 393-8200 (telephone)
    (415) 986-5309 (facsimile)
24
25  By: /s/ Joel Sanders                          By: /s/ Christopher Heck/MRB
26  Joel S. Sanders                               Christopher J. Heck
    Attorneys for Defendants Micron Technology,   Attorneys for Defendant
27  Inc. and Micron Semiconductor Products, Inc.  Infineon Technologies North America Corp.
28
```

| | |
|---|---|
| TERRENCE A. CALLAN<br>CECIL S.H. CHUNG<br>PAUL R. GRIFFIN<br>ALBERT J. BORO, JR.<br>PETER M. BRANSTEN<br>Pillsbury Winthrop LLP<br>50 Fremont Street<br>P.O. Box 7880<br>San Francisco, CA 94120-7880<br>(415) 983-1000 (telephone)<br>(415) 983-1200 (facsimile) | JONATHAN M. JACOBSON<br>STEPHEN A. MANSFIELD<br>ROBERT B. HUMPHREYS<br>JOHN W. BERRY<br>Akin Gump Strauss Hauer & Feld LLP<br>590 Madison Avenue<br>New York, NY 10022<br>(212) 872-1020 (telephone)<br>(212) 407-3220 (facsimile)<br>GARY L. HALLING<br>JAMES L. McGINNIS<br>Sheppard, Mullin, Richter & Hampton LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111-4106<br>(415) 434-9100 (telephone)<br>(415) 434-3947 (facsimile) |
| By: /s/ Albert J. Boro, Jr.<br>Albert J. Boro, Jr.<br>*Attorneys for Defendant*<br>*Hynix Semiconductor America, Inc.* | By: /s/ Jonathan M. Jacobson<br>Jonathan M. Jacobson<br>*Attorneys for Defendant*<br>*Samsung Semiconductor, Inc.* |
| J. MARK GIDLEY<br>GEORGE L. PAUL<br>FRANK VASQUEZ, JR.<br>White & Case<br>601 Thirteenth Street, N.W.<br>Washington, DC 20005-3807<br>(202) 626-3600 (telephone)<br>(202) 639-9355 (facsimile) | WILLIAM S. FARMER, JR.<br>Collette & Erickson LLP<br>555 California Street, 43rd Fl.<br>San Francisco, CA 94104-1791<br>(415) 788-4646 (telephone)<br>STEVEN H. MORRISSETT<br>Finnegan, Henderson, Farabow, Garrett<br>  & Dunner LLP<br>700 Hansen Way<br>Palo Alto, CA 94304<br>(650) 849-6624 (telephone) |
| By: /s/ Frank Vasquez, Jr.<br>Frank Vasquez, Jr.<br>*Attorneys for Defendant*<br>*Nanya Technology Corporation USA* | By: /s/ Steven H. Morrissett<br>Steven H. Morrissett<br>*Attorneys for Defendant*<br>*Winbond Electronics Corporation America* |

W02-SF:5JM\61373134.1/10738358v3 -14- STIPULATION AND [PROPOSED]<br>PROTECTIVE ORDERTECTIVE ORDER

EXHIBIT C
Page 37 of 40

EXHIBIT E-57

```
 1  WILLIAM M. GOODMAN
 2  K.C. MAXWELL
    Topel & Goodman
 3  832 Sansome Street, 4th Floor
 4  San Francisco, CA 94111
    (415) 421-6140 (telephone)
 5  (415) 398-5030 (facsimile)
 6
 7  By: /s/ William M. Goodman
    William M. Goodman
 8  Attorneys for Defendant
    Mosel Vitelic Corporation
 9
10  ROBERT B. PRINGLE
    WYNNE S. CARVILL
11  JONATHAN E. SWARTZ
    Thelen Reid & Priest
12  101 Second Street, Suite 1800
    San Francisco, CA 94105
13  (415) 369-7307 (telephone)
14  (415) 369-8708 (facsimile)
15
16  By: /s/ Robert B. Pringle
    Robert B. Pringle
17  Attorneys for Defendant
    Elpida Memory (USA), Inc.
18
19
20
21
22
23
24
25
26
27
28
```

# [PROPOSED] ORDER

Based on the stipulation of the parties, and for good cause shown, the foregoing is hereby SO ORDERED:

Dated: July 11, 2003

_____
Hon. Phyllis J. Hamilton
United States District Judge

# EXHIBIT A

## AGREEMENT CONCERNING MATERIAL COVERED BY AN ORDER ENTERED IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

The undersigned hereby acknowledges that he or she has read the attached STIPULATION AND [PROPOSED] PROTECTIVE ORDER entered in the United States District Court for the Northern District of California, in the litigation known as In Re Dynamic Random Access Memory (DRAM) Antitrust Litigation, MDL 1486, Master File No. M-02-1486-PJH, and understands the terms thereof and agrees to be bound by such terms. The undersigned further acknowledges and understands that a violation of the Protective Order could be punishable as a contempt of court.

Dated: _____    _____

_____
[Type or Print Name]

# DECLARATION OF WILLIAM A. PANOFF

William A. Panoff states as follows:

1. My name is William A. ("Bill") Panoff. I am over the age of eighteen and make this declaration based on my own personal knowledge.

2. I am the President and Chief Executive Officer of the PPI Group. The PPI Group is comprised of several Florida corporations including Panoff Publishing, Inc. ("Panoff Publishing"), PPI Fleet Services, Inc. ("PPI") and Port Promotions, Inc. ("Port Promotions").

3. The PPI Group's main goal is to serve as the connection between consumer, product and retail sales services in the cruise line industry. The PPI Group provides these services in three major areas.

First, the PPI Group publishes Porthole Cruise Magazine, a bi-monthly consumer cruise magazine, Porthole Insider, an annual trade magazine for cruise industry executives, and Porthole Newsletter, a bi-weekly email newsletter.

Second, the PPI Group publishes custom magazines for a number of cruise lines including Carnival Cruise Lines, Holland America Line, Radisson Seven Seas Cruises and Princess P&O Cruises. These custom magazines are directed to passengers traveling aboard each of the cruise lines and are placed in passenger staterooms. The PPI Group sells advertising space in these magazines to qualified retailers in the cruise markets serviced by the various cruise lines. In addition to in-cabin magazines, the PPI Group produces in-cabin

EXHIBIT E-61

videos, including commercials from qualified retailers in various ports of call, which are shown on the in cabin broadcast systems on each of these cruise lines.

Third, the PPI Group conducts various on board programs and promotions on the above-mentioned cruise lines. The Port Shopping Lecture Program provides cruise passengers traveling aboard these cruise lines with in-depth knowledge about each port of call, including recommended shopping destinations with participating retail merchants.

4. The PPI Group's principal competitor in the industry in Onboard Media, a Florida-based company.

5. As described above, the PPI Group's on board port lecture programs promote the goods and services of certain retail merchants with stores in Alaska. The PPI Group's on board lectures enable passengers to learn about local shopping opportunities prior to the time the cruise ships dock in various Alaska ports. Retail merchants enter into written contracts with the PPI Group providing for the promotion of their businesses during these on board lectures. These on board port lectures and promotional services are provided by the PPI Group pursuant to written merchant agreements. The PPI Group is compensated for its services by the merchants with whom it enters into these merchant agreements.

6. Over the years of its existence, PPI has developed a number of marketing techniques and relationships which have enabled it to become a leader in its industry. Internal information about the PPI Group's operations, including its clients, marketing strategies, analyses, training techniques, contracts, financial data and sales is highly

2

EXHIBIT E-62

confidential, and its disclosure to the general public or to any of the PPI Group's competitors, including Onboard Media, would be extremely detrimental.

I declare under penalty of perjury that the foregoing information is true and correct.

Executed on May 23, 2005.

_____
William A. Panoff

F:\Clients\PPI\Pleadings\BP Declaration (protective order).wpd

3

EXHIBIT E-63

## DECLARATION OF MORRIS GAD

Morris Gad, pursuant to 28 U.S.C. § 1746, states as follows:

1. I am over the age of eighteen and I make this declaration based upon my own personal knowledge.

2. I am the Co-President of Diamonds International of Alaska, Ltd. ("DIAK"). DIAK is an Alaska corporation operating in southeast Alaska with points of operation in Ketchikan, Juneau, and Skagway.

3. DIAK is engaged in the business of retail sales of fine jewelry and watches. DIAK has a significant focus upon retail sales of fine jewelry and watches to cruise ship passengers traveling the inland waters of southeast Alaska.

4. DIAK's has multiple competitors in the industry including, but not limited to, Celebrity Jewelers, the plaintiff in this case.

5. Over the years of its existence, DIAK has developed a number of marketing techniques and relationships which have enabled it to become a leader in its industry. Internal information about DIAK's operations, including its clients, marketing strategies, analyses, training techniques, financial data, sales, merchandise, and merchandise mark-up is highly confidential, and the disclosure of any of this information to the general public or to any of DIAK's competitors would be extremely detrimental to DIAK's business.

I declare under penalty of perjury that the foregoing information is true and correct. Executed on May 18, 2004.

_____
Morris Gad

EXHIBIT E-64