# VERIFICATION

STATE OF ALASKA            )
                           ) ss.
FIRST JUDICIAL DISTRICT    )

I, __VINOD BATHIJA__, the __PRESIDENT - CEO__ of Shivalay, Inc., state that I have read the above interrogatories and the responses thereto, and that the answers are true and correct to the best of my knowledge and belief.

SHIVALAY, INC.

By: __VINOD BATHIJA__
Title: __PRESIDENT-CEO__

SUBSCRIBED AND SWORN TO this __29th__ day of April, 2005, at Juneau, Alaska.

__Barb S W__
Notary in and for the State of Alaska
My Commission Expires: __12-25-2007__

[Notary seal: BARBARA S. WILSON, NOTARY PUBLIC, STATE OF ALASKA, MY COMMISSION EXPIRES DEC. 25, 2007]

*Bathija, et al. v. Panoff Publishing, Inc., et al.*; Case No. J04-0011 CV (RRB)
Plaintiff's Responses to Diamond International of Alaska Ltd.'s First Set of Interrogatories
Page 20 of 21

EXHIBIT 2
Page 20 of 21

EXHIBIT G-51

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of April, 2005, a true and correct copy of the foregoing was delivered to the party indicated below via:

William G. Ruddy, Esq.
Ruddy, Bradley & Kolkhorst
8800 Glacier Highway, Suite 223
P.O. Box 34338
Juneau, Alaska 99803
ph: (907) 789-0047
fax: (907) 789-0783
Attorneys for Defendants Panoff Publishing, Inc., PPI Fleet Services, Inc. and Port Promotions, Inc.
By: ☒ U.S. Mail
☐ Fax
☐ Court Box
☐ Federal Express

Robert C. Gilbert, Esq.
Robert C. Gilbert, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, Florida 33134
ph: (305) 529-9100
fax: (305) 529-1612
Attorneys for Defendants Panoff Publishing, Inc., PPI Fleet Services, Inc. and Port Promotions, Inc.
By: ☒ U.S. Mail
☐ Fax
☐ Court Box
☐ Federal Express

Kevin G. Clarkson, Esq.
Brena, Bell & Clarkson, P.C.
310 K Street, Suite 601
Anchorage, Alaska 99501
ph: (907) 258-2000
fax: (907) 258-2001
Attorneys for Defendants Diamonds International of Alaska, Ltd.
By: ☒ U.S. Mail
☐ Fax
☐ Court Box
☐ Federal Express

Peter M. Hockman, Esq.
550 Biltmore Way, Suite 780
Coral Gables, Florida 33134-5779
ph: (305) 447-9129
fax: (305) 443-0279
Attorneys for Defendants Diamonds International of Alaska, Ltd.
By: ☒ U.S. Mail
☐ Fax
☐ Court Box
☐ Federal Express

By: /s/ Amber Niebuhr
Amber Niebuhr

*Bathija, et al. v. Panoff Publishing, Inc., et al.*; Case No. J04-0011 CV (RRB)
Plaintiff's Responses to Diamond International of Alaska Ltd.'s First Set of Interrogatories
Page 21 of 21

EXHIBIT 2
Page 21 of 21

EXHIBIT G-52

# BRENA, BELL & CLARKSON, P.C.

ROBIN O. BRENA, OWNER
JESSE C. BELL, OF COUNSEL
KEVIN G. CLARKSON, OF COUNSEL
DAVID W. WENSEL, OF COUNSEL
ANTHONY S. GUERRIERO, OF COUNSEL
PAULA T. VRANA, OF COUNSEL

ATTORNEYS AT LAW

310 K STREET, SUITE 601
ANCHORAGE, AK 99501
TELEPHONE: (907) 258-2000
FACSIMILE: (907) 258-2001
WEB SITE: BRENALAW.COM
KCLARKSON@BRENALAW.COM

May 16, 2005

**By Fax No. (907) 789-1913**
Z. Kent Sullivan, Esq.
Baxter Bruce & Sullivan, P.C.
P.O. Box 32819
Juneau, AK 99803

Re:   Bathija v. Panoff, et al., Case No. J04-011 Civil (RRB)
      Our File No. 867-005

Dear Kent:

We have now reviewed in detail the Plaintiffs' Responses to Diamonds International of Alaska, Ltd.'s ("DIAK's") First Set of Interrogatories. The Responses are both uninformative and legally inadequate. We will address the interrogatory answers that we believe are inadequate and that require supplemental answers below, in turn, but as a general matter we will first point out that it is widely recognized by federal courts that a proper answer to a "contention interrogatory" is a "narrative answer" that states the specific factual bases for the principle allegations of the complaint and not a mere circular reference back to the allegations of the complaint. Under no circumstances did DIAK's "contention interrogatories" ask for a mere regurgitation of the allegations of the complaint, and no federal court would view Celebrity's answers as being either adequate or in compliance with Fed. R. Civ. P. 33. Civil Rule 33(b)(1) expressly requires that "[e]ach interrogatory shall be answered separately and fully." A contention interrogatory requires that the specific facts supporting the broad and general allegations of a complaint be specifically and fully stated in the answer to the interrogatory.

The purpose of DIAK's contention interrogatories was to enable it to determine the bases for Celebrity's principle allegations so that DIAK might prepare appropriate motions and defenses and determine what further discovery or investigation may be necessary. In cases such as this, where critical information is in Celebrity's sole possession, and only Celebrity knows the specific facts which support its broad and generally stated allegations, it is entirely appropriate for DIAK to ask Celebrity for the specific factual bases of its broad and general allegations.

Furthermore, DIAK's interrogatories asked Celebrity to identify individuals who have knowledge of the specific facts supporting the identified allegations. It is entirely unreasonable and completely non-responsive for Celebrity to simply point DIAK to Celebrity's initial disclosures in response to these interrogatories. Celebrity's initial disclosures do not identify which individuals have knowledge of what allegations or what specific facts Celebrity claims support the allegations – the initial disclosures do not state the specific factual bases for the broad and generally stated

EXHIBIT 3
Page 1 of 7

EXHIBIT G-53

Z. Kent Sullivan, Esq.
May 16, 2005
Page 2

allegations of the complaint. The plain point of the interrogatories is to identify which individuals DIAK should depose regarding what allegations.

## INADEQUATE INTERROGATORY ANSWERS

**Interrogatory No. 6:** Paragraph 33 of the complaint makes sweeping allegations to the effect that: 1) "the PPI Group has not upheld its end of the bargain"; 2) the PPI Group has not marketed Celebrity to cruise ship passengers in a fair or good faith manner; and 3) the PPI Group has engaged in an active campaign of knowingly and intentionally discouraging passenger business with Celebrity. Because Celebrity has alleged an interference with contract claim against DIAK, we asked Celebrity to "describe in detail the facts upon which you rely for the allegations", and to identify every person with knowledge of such facts, and to list documents relating to those facts.

Celebrity's answer that "[t]he allegations in paragraph 33 of the complaint speak for themselves" is completely inadequate and non-responsive. DIAK did not ask what the allegations of the complaint are because DIAK has already read the complaint. Celebrity's reference to later paragraphs in the complaint does not rectify the inadequacy and non-responsiveness of the answer because these paragraphs are also general and broad. The obvious point of the interrogatory is to require Celebrity to state the specific facts (who did or said what at what date(s) and to whom) that establish that PPI discouraged passenger business with Celebrity. Nothing in the complaint states anything regarding when, where, or how passengers were actually dissuaded (or even attempted to be dissuaded) from doing business with Celebrity, or encouraged to shop elsewhere. The allegations in paragraphs 34-37 relate only to communications about possible future conduct, not actual past conduct that had been carried out. Celebrity's answer referencing its initial disclosures is completely inadequate because the disclosures do not identify who it is that might have knowledge of any actual interaction that PPI may have had with passengers of the type generally described in the complaint – the interrogatory calls for who, when, where and what was done or said. If Celebrity has no specific factual basis for its allegations at this time then Celebrity must state so plainly.

With respect to documents, the interrogatory did not ask Celebrity to simply cut and paste the bates numbers of the documents Celebrity provided with its initial disclosures, but instead asked Celebrity to identify documents (perhaps disclosed, perhaps not) that relate to who, when, where, and what amounted to "discouraged passenger business" for Celebrity (and similar responses were called for regarding the other allegations). The point of the interrogatory is to require Celebrity to identify documents relating to the specific allegations addressed.

**Interrogatory No. 7:** Paragraphs 34-35 make sweeping allegations regarding PPI's and DIAK's alleged "secretive, intentional and knowing campaign" to "divert business from" Celebrity to DIAK. The paragraphs also make sweeping allegations regarding DIAK's and PPI's alleged spreading of false information regarding Celebrity. DIAK asked Celebrity to "describe in detail the

EXHIBIT 3
Page 2 of 7

EXHIBIT G-54

Z. Kent Sullivan, Esq.
May 16, 2005
Page 3

facts upon which you rely for the allegations," specifically the allegations to the effect that DIAK participated in, had knowledge of, and/or authorized the referenced "campaign" and/or e-mails. DIAK also asked Celebrity to identify every person with knowledge of such facts and to list documents relating to those facts.

Celebrity's answer that "[t]he allegations contained in paragraphs 34-35 of the complaint speak for themselves" is completely inadequate and non-responsive. Again, DIAK did not ask for a regurgitation of the allegations of the complaint. Celebrity's reference to later paragraphs in the complaint does not rectify the inadequacy and non-responsiveness of the answer. The obvious point of the interrogatory is to require Celebrity to state the specific facts (who did or said what at what date(s) and to whom) that establish that DIAK participated in, knew about, or authorized this "campaign" or "slander." Nothing in the complaint states anything about the when, where, who, or what details of DIAK's alleged involvement, knowledge of, or participation in the alleged campaign or slander. In fact, there is nothing in the complaint about any actual carrying out of the alleged campaign or slander — meaning interaction or communication with potential customers. Moreover, there are no details in the complaint regarding who at DIAK might have agreed with who at PPI to carry out the alleged campaign and slander — not to mention when, where, and how the alleged agreement was made or came to fruition.

Again, Celebrity's answers referencing its initial disclosures are inadequate because the initial disclosures do not identify who it is that might have knowledge of any actual interaction or communication with passengers of the type generally described in the complaint. The interrogatory calls for who, when, where and what was done or said. If Celebrity has no specific factual basis for its allegations at this time then Celebrity must state so plainly.

Once again, the interrogatory did not ask Celebrity to simply cut and paste the bates numbers of the documents it provided with its initial disclosures, but instead asked Celebrity to identify documents (perhaps disclosed, perhaps not) that relate to the who, when, where, and what of the alleged "campaign" or "slander."

Interrogatory No. 8: Paragraphs 36, 54, 62, 69, and 80 make sweeping allegations regarding PPI's and DIAK's alleged "coordinated conspiracy" or "conspiracy" to "direct business away from Celebrity." DIAK asked Celebrity to "describe in detail the facts upon which you rely for the allegations." Celebrity's answer that "[t]he allegations . . . speak for themselves" is completely inadequate and non-responsive. Again, DIAK did not ask what the allegations of the complaint are because DIAK has already read the complaint.

The interrogatory plainly asked for facts regarding who it is that formed this alleged conspiracy, when they did it, where they did it, how they did it, what they said and agreed to, and what they might allegedly have done to actually carry out the conspiracy. None of this information

EXHIBIT 3
Page 3 of 7

EXHIBIT G-55

Z. Kent Sullivan, Esq.
May 16, 2005
Page 4

is provided in the allegations of the complaint. Federal courts have held that a party is not entitled to answer a contention interrogatory such as this by simply referring to deposition transcripts or "all affidavits filed thus far." Celebrity is required to answer the interrogatory "separately and fully" [Fed. R. Civ. P. 33(b)]. It is not DIAK's duty to try to guess which parts of which affidavits Celebrity believes present the factual basis for the allegation that a conspiracy was formed and executed.

Again, Celebrity does not identify anybody with knowledge of facts related to the formation and carrying out of this conspiracy, and no documents are identified which relate to this specific topic.

**Interrogatory No. 9:** Paragraph 38 of the complaint alleges that during 2002-2003 Celebrity observed a "marked decline in average per person sales from passengers associated with the PPI Group affiliated cruise lines." The paragraph further alleges that in 2003 Celebrity observed "significantly lower per passenger sales between PPI Group affiliated cruise ship passengers and the per passenger sales realized by the PPI Group's main competitor." The interrogatory asked for the factual basis of this allegation. Celebrity's answer that "[t]he allegations . . . speak for themselves" is completely inadequate and non-responsive.

Neither the complaint nor the interrogatory answer state the numbers of sales, the value of the individual sales, or even the average value of the individual sales. No statistics are provided that enable anyone to identify which sales comparisons Celebrity might be making with respect to the allegation. Again, Celebrity does not identify anybody with knowledge of facts related to the formation and carrying out of this conspiracy, and no documents are identified which relate to this specific topic.

**Interrogatory No. 10:** Paragraph 39 of the complaint alleges that Celebrity experienced "harm to . . . business reputation among the businesses of the community, the cruise ship industry" and "the passengers and cruise lines." The interrogatory asked for the factual basis of the allegations. Celebrity's answer that "[t]he allegations . . . speak for themselves" is completely inadequate and non-responsive.

The point of this contention interrogatory was to determine such things as: 1) what was Celebrity's reputation before this alleged "conspiracy" and "slander", and 2) with whom did this reputation prevail? Who did what, or who said what, that impacted this reputation? To whom was this action directed, or to whom were these words directed? Who is it in the business community that now thinks less of Celebrity? And how? And why? And how has this impacted Celebrity's business? Which cruise lines now think less of Celebrity than before? Who can attest to any of these facts? All of this information, and more, is called for by this interrogatory and yet absolutely nothing was provided. If the reason that celebrity cannot state a factual basis for these broad and

EXHIBIT 3
Page 4 of 7

EXHIBIT G-56

Z. Kent Sullivan, Esq.
May 16, 2005
Page 5

general allegations is that Celebrity has no factual basis for the allegations at this time, then Celebrity should state so plainly. Once again, Celebrity has not identified any individuals with specific knowledge of the allegations, or any documents which relate to the allegations.

**Interrogatory No. 11:** Paragraphs 64-78 of the complaint allege RICO violations by PPI and DIAK. This interrogatory called upon Celebrity to describe in detail the "individuals", the "enterprises", and "associations in fact" that Celebrity alleges existed and were somehow part of, involved in, utilized regarding, and/or whose affairs were conducted in the alleged racketeering scheme. Celebrity's answer that the complaint speaks for itself says nothing because the complaint says nothing about any of these matters. Celebrity's complaint simply states a hodgepodge of allegations incorporating all of the above concepts without any factual specification.

The interrogatory called upon Celebrity to answer: Who are the individuals who conducted the racketeering scheme? We note in Celebrity's disclosures that Celebrity laughably claims that DIAK has connections to organized crime. If Celebrity thinks that this is something more than a scandalous allegation, then Celebrity must answer this interrogatory with specific facts regarding which organized crime faction or family or "whatever" Celebrity might be talking about, and which individuals Celebrity believes are involved in this organized crime.

What are the enterprises? If there was an association in fact, who was a part of this association, when was it formed, how was it formed, and what specifically did it do? What enterprise is Celebrity alleging? Is there one enterprise? More than one? Is it one of the PPI Group entities? Is it DIAK? Something else? These are but a few of the pieces of factual information that a proper response to the contention interrogatory should have provided, and which the complaint does not provide. The defendants are not required to guess at the factual basis for Celebrity's claims, particularly RICO claims premised upon allegations of fraud that are subject to Civil Rule 9(b). We expect that Celebrity knows the factual basis for the claims that it has filed subject to Fed. R. Civ. P. 11.

**Interrogatory Nos. 12, 14, 15:** Interrogatory No. 12 asked for an identification of each and every predicate offense of racketeering activity that Celebrity alleges occurred. As you should know, each separate individual violation of the predicate crimes listed in RICO constitute a separate predicate offense of racketeering. Thus, this interrogatory called for Celebrity to identify every telephone call, every e-mail, every facsimile, every letter, etc., that it believes establishes a separate predicate offense of racketeering. In response, Celebrity states simply and inadequately that the complaint speaks for itself.

Interrogatories 14 and 15 ask for identification of each use of the mails (every letter or other item mailed), and every use of the interstate telephone wires (every telephone call or e-mail) that

EXHIBIT 3
Page 5 of 7

EXHIBIT G-57

Z. Kent Sullivan, Esq.
May 16, 2005
Page 6

Celebrity alleges as part of the alleged racketeering scheme. None of this information is provided in either the interrogatory answer or the complaint.

If Celebrity has no factual basis for alleging RICO predicate offenses other than the e-mails listed in its complaint, then Celebrity should state so plainly.

**Interrogatory No. 13**: This interrogatory asked Celebrity to identify the funds, by amounts and sources, that Celebrity alleges DIAK acquired through the alleged pattern of racketeering activity. Celebrity's answer, again simply referencing the complaint, is inadequate and non-responsive. It is also insufficient for Celebrity to answer generally to the effect that passenger business went from Celebrity to DIAK. Which, or even how many customers were moved from Celebrity to DIAK (who are they or at least how many are there)? How can you know that these customers moved because of a pattern of racketeering as opposed to just consumer choices? What did they buy from DIAK? What did they pay? These are but a few of the factual pieces of information that this interrogatory called for, and which Celebrity did not provide.

If Celebrity presently has no factual basis for claiming that any specific customer moved from Celebrity to DIAK and made a purchase then Celebrity should state so plainly.

**Interrogatory No. 16**: Paragraphs 80-88 of the complaint make broad and sweeping allegations to the effect that DIAK and PPI made "various written and oral statements" to "cruise ship passengers" "regarding Celebrity's merchandise and sales efforts." The paragraphs also broadly and generally allege that "all of the statements were in fact relied upon." Finally, the paragraphs broadly and generally allege that "[t]he relying parties were ignorant of the falsity of the representations." DIAK's contention interrogatory asked Celebrity to state, regarding each alleged misrepresentation or fraud that Celebrity claims DIAK is responsible for: 1) the date of the statement, 2) the content of statement, 3) the maker of the statement, and 4) the hearer or recipient of the statement. DIAK also asked for the specific facts that Celebrity claims establish DIAK's direct and/or indirect involvement in and/or responsibility for each misrepresentation or fraud.

Celebrity's answer referencing the complaint is wholly inadequate. Celebrity has not stated any facts that identify the who, what, when, or where of any alleged misrepresentations or frauds communicated to "cruise ship passengers." Who made what statements? What cruise ship passengers received the statements? How did these cruise ship passengers rely on these unidentified statements? What facts does Celebrity have to establish the cruise ship passengers' "ignorance" of any matters, let alone Celebrity's business practices. Furthermore, what facts establish that DIAK was aware of, authorized, and/or participated in any of these alleged events? Once again, individuals with knowledge must be identified, as well as documents supporting the allegations (Celebrity has alleged written misrepresentations to cruise ship passengers, therefore Celebrity must identify the documents that it believes constitute the misrepresentations).

EXHIBIT 3
Page 6 of 7

EXHIBIT G-58

Z. Kent Sullivan, Esq.
May 16, 2005
Page 7

**Interrogatory No. 19**: Paragraphs 52-55 and 60-63 of the complaint generally and broadly allege antitrust claims. A competitive injury and/or an injury to competition is an essential element of an antitrust claim. DIAK's contention interrogatory, therefore, asked Celebrity to state the factual basis for any claim it might be making that there was a competitive injury and/or an injury to competition as a result of whatever it is that Celebrity is claiming the defendants did in this case. The complaint states absolutely nothing about a competitive injury and/or an injury to competition. How exactly was competition in the relevant market harmed? If Celebrity has no facts to support this essential element of an antitrust claim then Celebrity must state so plainly.

**Interrogatory No. 20**: Paragraphs 56-59 of the complaint generally and broadly allege that DIAK committed unfair trade practices. DIAK's contention interrogatory asked Celebrity to identify what acts of unfair trade practice DIAK engaged in so as to form the basis for Celebrity's claim. The answer to this interrogatory states absolutely nothing about any unfair trade practices DIAK engaged in (who, what, when, or where). The e-mails attached to the complaint do not establish any unfair trade practices because they relate to possible future events, not past acts. Celebrity claims that unfair trade practices were actually committed in interaction with cruise ship passengers, therefore, Celebrity must state the facts that establish such unfair trade practices actually occurred.

This letter is not intended to be exhaustive in addressing Celebrity's wholly inadequate discovery responses. There are other discovery inadequacies that we will address in short order. We reserve the right to address further deficiencies in Celebrity's discovery responses in subsequent correspondence. We will look to Celebrity to correct its inadequate discovery responses as addressed above within ten (10) days of the date of this letter. Absent Celebrity's provision of adequate discovery responses, we will file a motion to compel.

Thank you for your consideration.

Very truly yours,

Kevin G. Clarkson, Esq.

KGC/eaf

c:   Robert Gilbert, Esq. - by fax
     Peter Hockman, Esq. - by fax
     William Ruddy, Esq. - by fax

EXHIBIT 3
Page 7 of 7

EXHIBIT G-59

May 25, 2005

**SENT VIA FIRST CLASS MAIL &
FACSIMILE TRANSMISSION: (907) 258-2001**

Kevin G. Clarkson, Esq.
Brena, Bell & Clarkson, P.C.
310 K Street, Suite 601
Anchorage, Alaska 99501

Re: *Celebrity Jewelers & Gifts v. Panoff Publishing, Inc., et al.;* Discovery Responses
Our File No. 7500-001

Dear Kevin:

  I am in receipt of your letter dated May 16, 2005. In your letter, Diamond International of Alaska Ltd. ("DIAK") takes issue with the sufficiency of Shivalay Inc.'s ("Celebrity") responses to DIAK's first set of interrogatories. *See generally, Letter from Kevin G. Clarkson, Esq., to Z. Kent Sullivan, Esq.,* dated May 16, 2005. Among other things, it is argued that Celebrity's responses to DIAK's Interrogatories No.s 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19 and 20 are inadequate. *Id.* It is asserted that such interrogatories are proper "contention interrogatories" and that Celebrity is unable to answer such interrogatories by making reference to the specific allegations contained in its complaint. *Id.* Celebrity respectfully disagrees.

  Here, the answers provided by Celebrity are fully responsive to DIAK's interrogatory requests. *See generally, Plaintiff's Responses to Diamonds International of Alaska Ltd.'s First Set of Interrogatories,* dated April 29, 2005, and attached hereto as Exhibit "1." Contrary to what has been claimed, the present complaint was very carefully and specifically drafted to contain the precise factual information upon which Celebrity's claims are based. Accordingly, DIAK's contention interrogatories, which simply track the already factually specific allegations of the complaint, are improper. Also, as will be set forth below, while DIAK may ultimately be entitled to a more detailed response to the above-referenced interrogatories at a later date, at this present time such interrogatories are premature.

EXHIBIT 4
Page 1 of 10

EXHIBIT G-60

Kevin G. Clarkson, Esq.
May 25, 2005
Page 2

### I. CELEBRITY'S ANSWERS ARE FULLY RESPONSIVE TO DIAK'S INTERROGATORIES.

In questioning Celebrity's responses to its interrogatories, DIAK has characterized the present complaint as containing "broad and generally stated allegations." *Letter from Kevin G. Clarkson, Esq., to Z. Kent Sullivan, Esq.*, pp. 1-2. DIAK has claimed an entitlement to have all facts supporting the broad and general allegations of the complaint specifically and fully stated in the answers to its interrogatories. *Id.* at p. 1. The premise upon which this demand is based, is that allegations in Celebrity's complaint are 'broad and general.' *Id.* However, nothing could be further from the truth.

Typically, complaints are drafted in such a way so as to satisfy the minimum standards necessary for 'notice pleading.' As should be obvious from even the most cursory review of the present complaint, minimalist notice pleading is not what Celebrity had in mind when this complaint was drafted. *See generally, Plaintiffs' First Amended Complaint and Demand for Jury Trial*, dated April 29, 2005. Instead, the present complaint was carefully drafted to contain a full and detailed recitation of the specific facts upon which Celebrity's claims are based. *Id.* Among other things, the present complaint contains over 31 pages and 102 paragraphs of factual and legal allegations. The complaint contains over 9 pages and 23 paragraphs alone of very detailed and specific factual allegations. *Id.* at pp. 7-16 & ¶¶ 27-40. It is these allegations upon which all of Celebrity's subsequent legal counts are based. The complaint also contains 8 exhibits detailing the contractual relations at issue as well as e-mails factually documenting the misconduct of Defendants. *See generally, id.*

Consequently, based upon the present complaint, DIAK can hardly claim that Celebrity's allegations are overly 'broad and general.' Further, it would also be inappropriate to require Celebrity to regurgitate the very same specific factual allegations contained in the complaint in order to pacify DIAK with regard to its interrogatory requests. Instead, in its responses, Celebrity chose to direct DIAK to specific portions of the already factually specific complaint. *See generally, Plaintiff's Responses to Diamonds International of Alaska Ltd.'s First Set of Interrogatories.*

Virtually every one of Celebrity's interrogatory answers direct DIAK to different portions of the complaint and/or other documentation previously produced depending upon the varying information sought in each interrogatory. *Id.* For instance, the answers to Interrogatory No.s 6, 7 and 8 specifically direct DIAK to paragraphs 34-37 of the complaint. *Id.* at pp. 6-9. The answer to Interrogatory No. 9 specifically directs DIAK to individual letters previously produced by and between Celebrity's attorneys, Robert Gilbert, and Bill Panoff. *Id.* at p. 9. The answer to Interrogatory No. 10 specifically

EXHIBIT 4
Page 2 of 10

EXHIBIT G-61

Kevin G. Clarkson, Esq.
May 25, 2005
Page 3

directs DIAK to paragraphs 37-38 of the complaint. *Id.* at p. 10. The answers to Interrogatory No.s 11 and 12 specifically direct DIAK to paragraphs 34-37 and 64-78 of the complaint. *Id.* at pp. 11-12. The answer to Interrogatory No. 13 specifically directs DIAK to paragraphs 31, 32, 36 and 38 of the complaint. *Id.* at p. 13.

Here, it is also noteworthy that while Celebrity has produced nearly 1300 documents to date in this case, thus far Defendants have failed to produce a single one. Further, discovery is still in its infancy. There has not been a single deposition that has yet occurred. In fact, it is anticipated that there will be significant debate regarding a protective order that will need to be resolved before any substantial discovery can even occur. Finally, as DIAK is well aware, the information requested in its contention interrogatories is information that, for the most part, is already in the hands of Defendants. While undoubtedly this information will surface during the course of discovery, it is premature at this stage to expect Celebrity to produce any such information beyond what it contained in the factually specific and detailed complaint.

Celebrity does not deny that, at this point, its case is based almost entirely upon the factual allegations contained in the complaint and the exhibits thereto (with the two notable exceptions being the affidavits of Sharman and Kirkeeng as well as the correspondence by and between Celebrity's counsel, Robert Gilbert, and Bill Panoff). Further, as you are well aware, the complaint has already withstood two separate motions to dismiss. Consequently, DIAK will be hard pressed to argue that the factual allegations contained in the complaint and its exhibits are legally insufficient to proceed with this case. Finally, Celebrity is confident that once discovery has been allowed to occur, volumes of evidence will surface collaborating the detailed factual allegations already contained in the complaint. As set forth below, once that occurs, it will likely be appropriate for Celebrity to supplement the interrogatory answers at issue.

DIAK has also taken issue with Celebrity's identification of persons with knowledge of the facts contained in its contention interrogatories. *See generally, Letter from Kevin G. Clarkson, Esq., to Z. Kent Sullivan, Esq.* As a distinct sub-part of each interrogatory posed, DIAK had requested that Celebrity "identify all persons possessing knowledge of those facts." *See generally, Plaintiff's Responses to Diamonds International of Alaska Ltd.'s First Set of Interrogatories.* Unfortunately, all persons with knowledge is a very broad category. As drafted and worded, an appropriate response would include not only the persons with the best or the most direct and first-hand knowledge, but also, all persons with any knowledge whatsoever, including those persons who may have acquired knowledge indirectly, after-the-fact, etc.

EXHIBIT 4
Page 3 of 10

EXHIBIT G-62

Kevin G. Clarkson, Esq.
May 25, 2005
Page 4

By way of example, in DIAK's Interrogatory No. 6, DIAK asks Celebrity to identify all persons having knowledge of "an active campaign to knowingly discourage passenger business with Celebrity." *Id.* at p. 6. In answering this and other similar subparts to DIAK's interrogatories, Celebrity stated that all persons with knowledge of the allegations in each interrogatory had been previously identified in its initial and supplemental disclosures. *See generally, id.* This is because, to date, each and every person previously identified by Celebrity likely has some form of knowledge regarding the active campaign by and between DIAK and PPI to discourage business away from PPI's customers like Celebrity and to direct business to other 'preferred' customers like DIAK. Certainly, it is understandable how Celebrity, PPI, DIAK and their agents and employees would all possess some form of knowledge, to varying degrees, regarding such facts. For the most part, that is what the list of individuals previously identified by Celebrity contains, i.e., agents, employees, and principals of Celebrity, PPI and DIAK. *Id.* Additionally, the list also contains several persons and/or businesses who have suffered treatment similar to that of Celebrity. *Id.* Consequently, such persons and business may also possess such knowledge based upon their similar treatment.

DIAK has also asked Celebrity to identify persons with knowledge of damages, etc. *Id.* at pp. 9-10. Again, it is easy to understand how the principals, agents and employees of Celebrity, PPI and DIAK may all possess, to varying degrees, some form of knowledge regarding the potential damage suffered by Celebrity and the manner in which Celebrity's business has been harmed. Further, the other individuals and entities identified by Celebrity likely have knowledge regarding the damages and lost business opportunities experienced by Celebrity based upon their similar treatment by PPI and DIAK.

Consequently, based upon the broad manner in which DIAK requested Celebrity to identify "all persons with knowledge" of the facts referenced in each interrogatory, Celebrity had no choice but to answer the interrogatory requests by reference to all persons previously identified (all persons previously identified are likely to have some knowledge regarding each of the enumerated interrogatories). *See generally, id.* As far as which persons may have the most knowledge or the most relevant first-hand knowledge, at the time such individuals were originally identified, Celebrity articulated the basis for each person or entity's knowledge. *See generally, Plaintiff's Initial Disclosures,* dated March 29, 2005 *and Plaintiff's First Supplemental Disclosures,* dated April 28, 2005.

Finally, DIAK also takes issue with Celebrity simply referencing persons identified in previous disclosures instead of supplying a separate list of individuals in response to DIAK's first discovery requests. *Letter from Kevin G. Clarkson, Esq., to Z.*

EXHIBIT 4
Page 4 of 10

EXHIBIT G-63

Kevin G. Clarkson, Esq.
May 25, 2005
Page 5

*Kent Sullivan, Esq.*, pp. 1-2. In response to this criticism, set forth below are all persons who may possess some relevant knowledge regarding the information contained in Interrogatories No.s 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19 and 20:

Mohan Bathija, c/o Z. Kent Sullivan, Esq., Baxter Bruce & Sullivan P.C., P.O. Box 32819, Juneau, Alaska 99803, (907) 789-3166

Vinod Bathija, c/o Z. Kent Sullivan, Esq., Baxter Bruce & Sullivan P.C., P.O. Box 32819, Juneau, Alaska 99803, (907) 789-3166

Rajesh Bathija, c/o Z. Kent Sullivan, Esq., Baxter Bruce & Sullivan P.C., P.O. Box 32819, Juneau, Alaska 99803, (907) 789-3166

Goodmark Jewelers, 211 Broadway, Skagway, Alaska 99840, (907) 983-3730

Randy Sharman, #35 Woodford Crescent S.W., Calgary, Alberta T2W4C6, (403) 585-5197

Gayle Reed, Address Unknown, (954) 966-6283

Eddy Murphy, Address Unknown, (907) 789-5038

Melanie Case, Address Unknown, (519) 317-8945

Dan Mason, Address Unknown, (305) 798-8360

Bruno Dannenberg, Address Unknown, (954) 288-4186

Michael Desadeleer, Address Unknown, (604) 929-2859

Adrian Staton, Address Unknown, (843) 200-4302

Margo Masse, Address Unknown, (954) 401-7015

Shari Kirkeeng, Address Unknown, (754) 204-7204

Ivan Kevit, Address Unknown, (305) 790-6880

Jim Leary, Address Unknown, (509) 771-6777

EXHIBIT 4
Page 5 of 10

EXHIBIT G-64

Kevin G. Clarkson, Esq.
May 25, 2005
Page 6

Jake Soto, Address Unknown, (954) 907-7729

Bill Jordan, Address Unknown, (305) 807-3488

Chris Velilla, Address Unknown, (305) 308-3643

Rob Locke, Address Unknown, (954) 629-8554

Julio Rodriguez, Address Unknown, (305) 788-3101

Joe McGrath, Address Unknown, Phone Number Unknown

Rick Domanski, Address Unknown, (786) 543-6195

Bill Panoff, President & Chief Executive Officer, The PPI Group, 4517 NW 31st Avenue, Fort Lauderdale, Florida 33309-3403, (954) 377-7777

Albert Gad, President, Diamonds International of Alaska, Ltd, 592 5th Avenue, New York, New York 10036, (212) 593-3201

Morris Gad, Vice-President, Diamonds International of Alaska, Ltd, 592 5th Avenue, New York, New York 10036, Phone Number Unknown

Donna Gad, Secretary/Treasurer, Diamonds International of Alaska, Ltd, 592 5th Avenue, New York, New York 10036, Phone Number Unknown

P.L. Bijlani, President Omni's, Inc., St. Thomas, United States Virgin Islands, Phone Number Unknown

Melissa Schenk, Address Unknown, Phone Number Unknown

Cesar Valencia, Ecotraveler News, 11767 South Dixie Highway #409, Pinecrest, Florida 33156-4438, Phone Number Unknown

Anand Dadlani, Jewelry Marketing Company, 1200 6th Avenue, 3rd Floor, New York, New York, (212) 398-6401

Prerana Bathija, c/o Z. Kent Sullivan, Esq., Baxter Bruce & Sullivan P.C., P.O. Box 32819, Juneau, Alaska 99803, (907) 789-3166

EXHIBIT 4
Page 6 of 10

EXHIBIT G-65

Kevin G. Clarkson, Esq.
May 25, 2005
Page 7

Poonam Bathija, c/o Z. Kent Sullivan, Esq., Baxter Bruce & Sullivan P.C., P.O. Box 32819, Juneau, Alaska 99803, (907) 789-3166

Rani Bathija, c/o Z. Kent Sullivan, Esq., Baxter Bruce & Sullivan P.C., P.O. Box 32819, Juneau, Alaska 99803, (907) 789-3166

Romesh Dhatt, c/o Z. Kent Sullivan, Esq., Baxter Bruce & Sullivan P.C., P.O. Box 32819, Juneau, Alaska 99803, (907) 789-3166

Kamal Chhabria, Precious Kollections, 4th & Broadway, Skagway, Alaska 99840, (907) 983-3104

Based upon the foregoing and including the information contained above, Celebrity submits that its answers are fully responsive to DIAK's interrogatories.

## II. DIAK'S CONTENTION INTERROGATORIES ARE INAPPROPRIATE AT THIS TIME.

In your letter of May 16, 2005, DIAK characterizes the interrogatories it posed to Celebrity as "contention interrogatories." *Letter from Kevin G. Clarkson, Esq., to Z. Kent Sullivan, Esq.*, p. 1. DIAK further suggests that it was improper for Celebrity to answer such contention interrogatories by reference to the factual allegations of the complaint. *Id.* However, as will be set forth below, DIAK's contention interrogatories are entirely inappropriate at this stage of litigation and Celebrity's responses were legally justified.

Contention interrogatories "ask a party: to state what it contends, ... [or] to state all the facts upon which it bases a contention." *B. Braun Medical Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D.Pa. 1994); *see In re Convergent Technologies*, 108 F.R.D. 328, 332 (N.D.Cal. 1985). As the federal courts have frequently noted, "interests of judicial economy and efficiency for litigants dictate that 'contention interrogatories are more appropriate after a substantial amount of discovery has been completed.'" *Fisher and Porter Company v. Tolson*, 143 F.R.D. 93, 95 (E.D.Penn. 1992)(quoting *Nestle Foods Corp. v. Aetna Casualty and Surety Co.*, 135 F.R.D. 101, 110-111 (D.N.J. 1990); *In re Convergent Technologies*, 108 F.R.D. at 338).

"A party filing contention interrogatories early in the pretrial period, before substantial documentary or testimonial discovery has been completed, has the burden of justification." *Fisher and Porter Company*, 143 F.R.D. at 96. The proponent must state "specific, plausible grounds for believing that securing early answers to its contention

EXHIBIT 4
Page 7 of 10

EXHIBIT G-66

Kevin G. Clarkson, Esq.
May 25, 2005
Page 8

questions will materially advance the goals of the Federal Rules of Civil Procedure." *Id.*(quoting *In re Convergent Technologies*, 108 F.R.D. at 341).

The propriety of early contention interrogatories is frequently judged by a comparison of the interrogatories themselves with the information contained in the complaint. *In re Convergent Technologies*, 108 F.R.D. at 336-337. As noted in the often cited *Convergent Technologies* decision, "[i]f a complaint presents a relatively detailed specification of the real world events giving rise to it, and proceeds on relatively well established legal theories, an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues would not be especially persuasive." *Id. In re Convergent Technologies*, also provides guidance with respect to the wording of the interrogatories themselves.

> On the other hand, there is substantial reason to believe that the *early knee jerk filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse.* Such comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel. Moreover, at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail.

*Id.* at pp. 337-338 (emphasis added).

Here, a consideration of all of the above-referenced factors leads to the conclusion that DIAK's contention interrogatories are inappropriate and/or premature. First, the present complaint is very detailed and specific and Defendants have control or access over much of the evidence of their alleged misconduct. As such, DIAK's contention interrogatories demand even greater scrutiny. Second, DIAK's contention interrogatories systematically track all allegations of the complaint and at this stage in the litigation such interrogatories would likely be deemed a serious form of discovery abuse. Third, this case is in it infancy. While contention interrogatories might be appropriate once more substantial discovery has occurred, they are undeniably inappropriate at this stage in the litigation.

EXHIBIT 4
Page 8 of 10

EXHIBIT G-67

Kevin G. Clarkson, Esq.
May 25, 2005
Page 9

As articulated *supra*, this is not an instance where Defendants were forced into litigation based upon a broadly worded and generally pled complaint. Instead, this complaint contains a very detailed recitation of the factual and legal basis for Celebrity's claims. *See generally, Plaintiffs' First Amended Complaint and Demand for Jury Trial.* As has been indicated, among other things, the complaint contains over 9 pages and 23 paragraphs of detailed and specific factual allegations. *Id.* at pp. 7-16 & ¶¶ 27-40. Further, this complaint has already withstood two separate motions to dismiss. Accordingly, the present complaint cannot be characterized as facially infirm. *In re Convergent Technologies*, 108 F.R.D. at 336-337(if a complaint is relatively factually specific and detailed, early use of contention interrogatories will likely be deemed inappropriate); *Fisher and Porter Company*, 143 F.R.D. at 96("[b]ecause the present complaint is not facially infirm and defendants appear to have control over or adequate access to much of the evidence of their alleged misconduct, the evaluation of their proffered justification demands special vigilance."). Finally, it is obvious from a plain reading of the complaint and DIAK's interrogatories that the vast majority of the factual evidence solicited by DIAK is in the hands of Defendants, not Celebrity. Consequently, very close scrutiny would be given by our Court of DIAK's contention interrogatories.

Another factor to consider is the form of the contention interrogatories themselves. Here, each and every one of DIAK's contention interrogatories systematically tracks the language of Celebrity's complaint. *See generally, Plaintiff's Responses to Diamonds International of Alaska Ltd.'s First Set of Interrogatories*. As noted in *In re Convergent Technologies*, at pp. 337-338, propounding such interrogatories at this stage in the litigation will not only be considered inappropriate, but it will likely be considered a "serious form of discovery abuse."

Finally, Celebrity does not mean to suggest that DIAK's contention interrogatories will remain inappropriate throughout this litigation. Instead, as set forth above, it is the timing of these interrogatories that is particularly problematic. *Fisher and Porter Company*, 143 F.R.D. at 96(contention interrogatories are premature where they are filed early in pretrial period before substantial documentary or testimonial discovery has been completed). As DIAK is aware, we are at the very initial stages of this litigation. Discovery is not scheduled to be completed until at least March 3, 2006. *Scheduling and Planning Order*, dated February 3, 2005, p. 3. No depositions have occurred or even been scheduled. Despite the fact that to date, Celebrity has produced and provided Defendants nearly 1300 documents relevant to this case, Defendants have yet to produce a single one. As such, while DIAK's contention interrogatories may be deemed proper later in this litigation, after substantial discovery has occurred, there is little question as to their present impropriety.

EXHIBIT 4
Page 9 of 10

EXHIBIT G-68

Kevin G. Clarkson, Esq.
May 25, 2005
Page 10

    Based upon the foregoing, Celebrity asserts that its present responses to DIAK's interrogatories are entirely appropriate and legally justified. Should DIAK desire, Celebrity would be happy to agree to provide supplemental responses to DIAK's contention interrogatories by a date certain and after substantial discovery has been completed. If you wish to discuss this matter further, please let me know.

Sincerely,

BAXTER BRUCE & SULLIVAN P.C.

*Z. Kent Sullivan*

ZKS/an
c: Mohan, Vinod & Rajesh Bathija

EXHIBIT 4
Page 10 of 10

EXHIBIT G-69