# **EXHIBIT A**

1.  The formation of Shivalay, Inc., d/b/a Celebrity Jewelers (hereafter "Celebrity"), its corporate business structure, its ownership, its business strategy, its business plan, and its product lines during the period beginning January 2000 through April 2004 (hereafter "Relevant Period").

2.  Celebrity's operations, inventory, sales, costs, salaries, expenses, profits and losses during the Relevant Period.

3.  Celebrity's marketing, advertising and promotions during the Relevant Period.

4.  Celebrity's purchase of merchandise/inventory and various product lines during the Relevant Period.

5.  Celebrity's payment of federal, state, and local taxes during the Relevant Period.

6.  The origins of the business relationship between Celebrity and Panoff Publishing Inc., PPI Fleet Services, Inc. and Port Promotions, Inc. (hereafter collectively "PPI").

7.  All information exchanged and communications made between Celebrity and PPI during the Relevant Period concerning PPI's promotion of Celebrity's products.

8.  Celebrity's negotiations, meetings, communications (verbal, written and/or electronic) with PPI employees or independent contractors relating to each of the following agreements with PPI during the Relevant Period:

    (a)  Merchant Agreement pertaining to Carnival Cruise Lines, dated June 13, 2000;

    (b)  Merchant Agreement pertaining to Carnival Cruise Lines, dated March 29, 2001;

    (c)  Merchant Agreement pertaining to Carnival Cruise Lines, dated April 1, 2002;

    (d)  Merchant Agreement pertaining to Carnival Cruise Lines, dated September 7, 2002;

    (e)  Merchant Contract pertaining to Holland America Line, dated September 7, 2002;

    (f)  Merchant Agreement pertaining to Radisson Seven Seas Cruises, dated September 7, 2002;

    (g)  Merchant Agreement pertaining to Princess Cruise Lines, dated September 15, 2003;

    (h)  Merchant Agreement pertaining to Carnival Cruise Lines, dated September 15, 2003;

  (i)  In-cabin Video Contract pertaining to Carnival Cruise Lines, dated April 4, 2003;

  (j)  In-cabin Video Contract pertaining to Holland America Line, dated April 4, 2003;

  (k)  In-cabin Video Contract pertaining to Princess Cruise Lines, dated April 4, 2003;

  (l)  In-cabin Video Contract pertaining to Radisson Seven Seas Cruises, dated April 4, 2003;

  (m)  Advertising Agreement pertaining to Princess Cruise Lines, dated April 4, 2003;

  (n)  Advertising Agreement pertaining to Carnival Cruise Lines, dated April 4, 2003;

  (o)  Advertising Agreement pertaining to Holland America Cruise Lines, dated April 4, 2003; and

  (p)  Advertising Agreement pertaining to Radisson Seven Seas Cruises, dated April 4, 2003.

9. All fees and commissions paid by Celebrity to PPI pursuant to the above-mentioned agreements during the Relevant Period.

10. The promotion of Celebrity's products on cruise lines not represented by PPI during the Relevant Period.

11. Any and all agreements entered into by Celebrity during the Relevant Period concerning the promotion of its goods and products on cruise lines not represented by PPI.

12. Celebrity's sales to cruise passengers not affiliated with PPI-affiliated cruise lines during the Relevant Period.

13. Celebrity's knowledge of the "Jeff Sweet" website.

14. All retail stores in Juneau, Alaska with which Celebrity competes for sale of its merchandise.

15. All retail stores in Southeast Alaska with which Celebrity competes for sales of its merchandise.

16. All communications (verbal, written and/or electronic) during the period July 2003 through the present date between Celebrity and any current and/or former PPI port lecturers and employees regarding the facts alleged in Celebrity's Complaint.

17. All facts supporting Celebrity's contention, as alleged in paragraph 24 of the Complaint, that PPI and DIAK acted "as an agent of each other with the full permission and knowledge of the other . . . authorized and/or ratifying] all acts of each other."

18. All facts supporting Celebrity's contention, as alleged in paragraphs 33-37 of the Complaint, that PPI and/or DIAK participated in "an active campaign of knowingly and intentionally discouraging passenger business with Celebrity."

19. All facts supporting the allegations in paragraphs 36, 45, 49, 54, 62, 69 and 80 of the Complaint relating to a "coordinated conspiracy to specifically direct business away from Celebrity" between PPI, Diamonds International of Alaska (hereafter "DIAK") and the cruise lines affiliated with PPI.

20. All facts supporting Celebrity's contention, as alleged in paragraph 38 of the Complaint, that it experienced "a marked decline in average per-person sales from passengers associated with PPI Group affiliated cruise lines."

21. All facts supporting Celebrity's claim, as alleged in paragraphs 39, 46, 51, 55, 59, 63, 78, 83, 88, 94, 98 and 102 of the Complaint, that its "business reputation among the business community, the cruise ship industry, and particularly the passengers and cruise lines" has been harmed by PPI's and/or DIAK's actions.

22. All facts supporting Celebrity's contention, as alleged in paragraphs 41-46 of the Complaint, that PPI breached the agreement(s).

23. All facts supporting Celebrity's contention, as alleged in paragraphs 41-56 of the Complaint, that PPI breached the parties' contractual agreements.

24. All facts supporting Celebrity's contention, as alleged in paragraphs 45, 49, 54, 58, 62, 80-81, 85-87 of the Complaint, that PPI and/or DIAK "spread gross mischaracterizations and falsehood regarding Celebrity's merchandise and sales efforts."

25. All facts supporting Celebrity's contention, as alleged in paragraphs 45 and 59 of the Complaint, that PH failed to "faithfully market, advertise and promote Celebrity's goods and merchandise."

26. All facts supporting Celebrity's claim, as alleged in paragraphs 49-51 of the Complaint, that PPI acted "unreasonably and in bad faith" with reckless disregard for Celebrity's rights.

27. All facts supporting Celebrity's contention, as alleged in paragraphs 54 and 62 of the Complaint, that PPI and/or DIAK intended to "restrain trade and/or competition."

28. All facts supporting Celebrity's contention, as alleged in paragraphs 58-59 of the Complaint, that PPI and/or DIAK "deliberately and willfully disseminat[ed], directly to Celebrity's potential customers, false statements regarding Celebrity's merchandise and sales efforts."

29. All facts supporting Celebrity's contention, as alleged in paragraphs 64-78 of the Complaint, concerning the "individuals," "enterprises," and "associations in fact" who existed to conduct a racketeering scheme.

30. All facts supporting Celebrity's contention, as alleged in paragraph 68 of the Complaint, that PPI and/or DIAK made "false statements, through fraud and other illegal conduct" to obtain monies from Celebrity.

31. All facts supporting Celebrity's contention, as alleged in paragraph 70 of the Complaint, that PPI and/or DIAK has "acquired funds through a pattern of racketeering activity which they have used to invest in and operate the enterprise in violation of 18 U.S.C. § 1962(a)."

32. All facts supporting Celebrity's contention, as alleged in paragraphs 75 and 77 of the Complaint, that PPI and/or DIAK used the mail to make "false statements, perpetrate fraud and other illegal conduct" to constitute indictable mail fraud.

33. All facts supporting Celebrity's contention, as alleged in paragraphs 76 and 77 of the Complaint, that PPI and/or DIAK used the interstate telephone system to make "false statements, perpetrate fraud and other illegal conduct" to constitute indictable interstate telephone fraud.

34. All facts supporting Celebrity's contention, as alleged in. paragraphs 84-88 of the Complaint, concerning the alleged false statements made by PPI and/or DIAK, the identity of the parties relying on these statements, and other facts concerning the alleged fraudulent conduct.

35. All facts supporting Celebrity's contention, as alleged in paragraphs 80-83 and 84-88 of the Complaint, concerning the date, content, maker and person hearing each and every misrepresentation allegedly made by PPI and/or DIAK.

36. All facts supporting Celebrity's contention, as alleged in paragraphs 89-94 of the Complaint, that PPI employees, port lecturers or independent contractors made defamatory statements "orally to thousands of cruise ship passengers visiting the Juneau area . . . in a reckless disregard for the rights of Celebrity."

37. All facts supporting Celebrity's contention, as alleged in paragraphs 95-98 of the Complaint, that DIAK engaged in acts which interfered with the contracts between Celebrity and PPI.

38. All facts supporting Celebrity's contention, as alleged in paragraphs 99-102 of the Complaint, relating to each false statement allegedly made by a PPI employee or independent contractor/port lecturer which interfered with Celebrity's "legitimate prospective business relationship with the numerous cruise ship passengers arriving in the Juneau market."

39. All facts supporting Celebrity's contention, as alleged in its Initial Disclosures, that Goodmark Jewelers "has been the victim of the same illegal scheme by [PPI] to direct cruise ship passengers away from its business."

40. All facts supporting Celebrity's claim for damages in this action, including the amount and components of damages, their method of calculation and the identity of all persons with knowledge concerning such damages.