William G. Ruddy
Ruddy, Bradley & Kolkhorst
PO Box 34338
Juneau, AK 99803
Tel:    (907) 789-0047
Fax:    (907) 789-0783

Robert C. Gilbert
Robert C. Gilbert, P.A.
7301 SW 57 Court, Suite 515
South Miami, FL 33143
Tel:    (305) 529-9100
Fax:    (305) 529-1612

Attorneys for Defendants Panoff Publishing, Inc., PPI Fleet Services, Inc.
and Port Promotions, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MOHAN BATHIJA, VINOD BATHIJA, ) <br> RAJESH BATHIJA and SHIVALAY, INC., ) <br> an Alaskan corporation,                ) <br>                                                          ) <br>         Plaintiffs,                              ) <br>                                                          ) <br> vs.                                                    ) <br>                                                          ) <br> PANOFF PUBLISHING, INC., a Florida ) <br> corporation, PPI FLEET SERVICES, INC., ) <br> a Florida corporation, PORT ) <br> PROMOTIONS, INC., a Florida ) <br> corporation, DIAMONDS ) <br> INTERNATIONAL OF ALASKA, LTD., ) <br> an Alaskan corporation, DIAMONDS ) <br> INTERNATIONAL, L.L.C., a limited ) <br> liability company, and DOES 1-10,    ) <br>                                                          ) <br>         Defendants.                           ) <br> _____ ) | Case No. J04-0011 CV (RRB) <br><br> **PPI'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

Defendants Panoff Publishing, Inc. ("Panoff Publishing"), PPI Fleet Services, Inc. ("PPI Fleet"), and Port Promotions, Inc. ("Port Promotions") (collectively "PPI"), through undersigned counsel, file this response in opposition to plaintiff Shivalay, Inc.'s ("Celebrity") Motion to Compel Discovery (the "Motion").

## INTRODUCTION

In a fashion that has become typical of its litigation style in this case, Celebrity's Motion seeks to manufacture a discovery dispute where none need exist.[1]  PPI is confident this Court will conclude PPI fulfilled its discovery obligations and should not be compelled to produce unredacted documents relating to sales revenue and other financial information of various non-parties which is not relevant to the disputed issues in this action nor reasonably calculated to lead to the discovery of admissible evidence.

The gravamen of this lawsuit involves claims that PPI failed to properly promote Celebrity's Juneau jewelry and gift store to cruise passengers and, instead, gave inappropriate preferential treatment to another PPI client, co-defendant Diamonds International of Alaska ("DIAK"), which also operates a jewelry store in Juneau catering to cruise passengers.  In the course of discovery, Celebrity served successive requests for production seeking, *inter alia* (1) all documents "detailing commissions and fees received from PPI from each jewelry retailer under contract with PPI in the State of Alaska during the period 2000 through present ..." (Celebrity's Second Request for Production # 20); (2)  all documents "referencing fees and commissions paid by DI/DIAK to PPI from January 2000 to the present including amounts, date paid, and characterization of payment ..."

---

[1]Although the good faith certificate accompanying Celebrity's Motion accurately reflects the parties conferred in good faith, PPI does not agree the Motion is necessary and noted its position on the certificate executed by its counsel.

(Celebrity's First Request for Production, # 17); and (3) all documents "reflecting the ship names, number of passengers and ports of call for <u>all</u> ships associated with PPI during each year of the period from January 2000 through the present ..." (Celebrity's Second Request for Production, # 19).

In response, PPI produced over 2,000 pages of documents notwithstanding its objections that much of the requested documentation (i) falls outside the time period giving rise to the claims at issue in this case, (ii) is not relevant to the issues framed by the pleadings, and (iii) is not reasonably calculated to lead to the discovery of admissible evidence.[2] In the course of producing these documents, in limited instances PPI redacted certain names and figures because approximately 200 pages contain highly sensitive financial information involving PPI's business relationships with various <u>non-parties</u> including other merchants <u>in Alaska, Mexico and the Caribbean</u>, various cruise lines, and DIAK's corporate parent which operates approximately 100 jewelry stores <u>outside of Alaska</u>. *In no instance did PPI redact any references or figures relating to Celebrity!* Moreover, the names and figures redacted do not relate to nor remotely bear on the disputed issues in this action.[3] Dissatisfied with PPI's production, Celebrity filed the Motion arguing these limited redactions "thwart Celebrity's ability to conduct meaningful fact investigation." Celebrity argues the redactions were unwarranted and improper in light of the existing protective order entered by the Court.

---

[2] PPI also provided extensive responses to Celebrity's interrogatories.

[3] Celebrity's Motion claims the number of redacted documents to be 228 pages. This figure is misleading because, in most instances, the redacted material represents only a portion of the page. Moreover, since originally producing the redacted documents, PPI voluntarily provided Celebrity with some of the redacted information in an effort to assuage its curiosity and avoid bringing this matter before the Court. In this respect, the old adage that "no good deed goes unpunished" certainly applies.

Contrary to Celebrity's arguments, there is no sound reason to compel PPI to produce unredacted copies of these documents. The existing protective order does not permit Celebrity to conduct unfettered discovery nor vitiate PPI's right to object to the production of discovery materials which are not relevant to the disputed issues nor reasonably calculated to lead to the discovery of admissible evidence. If such were true, the parties would actually be disadvantaged by the protective order rather than protected by it. Moreover, the redacted information has absolutely no relevance to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Thus, while PPI recognizes the rules of discovery are construed to optimize the search for the truth, not even the most liberal construction entitles Celebrity to highly sensitive information involving third parties which is neither remotely relevant to this case nor reasonably calculated to lead to the discovery of admissible evidence.[4] Accordingly, Celebrity's Motion should be denied.

**I.    THE EXISTING PROTECTIVE ORDER WHICH ALLOWS THE PARTIES TO DESIGNATE CONFIDENTIAL INFORMATION DOES NOT OBVIATE PPI'S RIGHT TO OBJECT TO THE PRODUCTION OF INFORMATION WHICH IS NOT RELEVANT NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

When discovery commenced in this case, PPI and DIAK engaged in discussions with Celebrity in an effort to reach agreement on a confidentiality stipulation to protect the proprietary interests and confidential business information of all parties. As this Court may recall, Celebrity refused to agree to such an agreement, forcing Defendants to file a motion seeking entry of a protective order. This Court entered an Order Granting Motion for Entry of Protective Order on July 7, 2005 (the "Protective Order"), which adopted Defendants' proposed confidentiality

---

[4] PPI is prepared to submit all of the redacted documents to the Court for an *in camera* inspection with an explanation of the redacted material.

agreement in its entirety. This confidentiality agreement and the Protective Order function as a protective cloak over all parties' designated proprietary information.

Contrary to Celebrity's position, the layer of protection created by the Protective Order does not entitle Celebrity to unfettered access to all proprietary information of PPI and/or DIAK if such information is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. A protective order which orders the parties to maintain the confidentiality of discovery materials does not create an unrestricted limit on the scope of discovery; it merely protects the relevant or reasonably calculated discovery materials from unnecessary or improper disclosure to those outside of the litigation arena. *See Sega Enterprises v. Accolade, Inc.*, 977 F. 2d 1510, 1532 (9th Cir. 1992) (A protective order's "purpose ... is to prevent harm by limiting disclosure of <u>relevant</u> and <u>necessary</u> information."). Hence, the Protective Order entered by this Court does not entitle Celebrity to engage in an unrestrained fishing expedition by casting its proverbial discovery net over the entire ocean. The lack of relevance of information sought by Celebrity in its discovery remains a valid objection notwithstanding the existence of a confidentiality order. *See Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F. 3d 619, 622-23 (9th Cir. 1999). Thus, PPI's redaction of irrelevant, private information is appropriate even where the Protective Order exists to protect the exchange of otherwise relevant information between the parties. *See, Keith H. v. Long Beach Unified School District,* 228 F.R.D. 652 (C.D. Ca. 2005) (redaction of identifying information permitted in addition to existence of protective order).

II. **THE REDACTED INFORMATION IS NOT RELEVANT TO THE PENDING DISPUTE NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

PPI redacted two distinct categories of information from the documents produced to Celebrity. The first category of redactions consists of financial data concerning PPI's relationship with various non-parties, including other PPI merchant-clients operating businesses in Alaska, Mexico and the Caribbean, as well as the cruise lines on whose ships PPI conducts its business. The redacted information is not relevant to the claims raised in this case. The production of these documents in unredacted form will result in the disclosure of sales figures and other financial data involving dozens of non-parties to this litigation, information these non-parties did not contemplate would be disclosed when they provided it to PPI in furtherance of their respective business relationships.

This case involves a dispute between Celebrity, on the one hand, and PPI and DIAK, on the other. Celebrity alleges PPI breached its written contracts with Celebrity and committed tortious acts, alone and in concert with DIAK, in an effort to unfairly promote DIAK at Celebrity's expense. Celebrity does not allege PPI's business dealings with any merchants other than DIAK was improper or adversely affected Celebrity's sales revenues. Nevertheless, Celebrity seeks to compel PPI to divulge sales revenues and other financial data concerning other merchant clients who contracted with PPI to promote their businesses in Alaska, Mexico and the Caribbean. Some of these businesses do not even sell jewelry, yet Celebrity persists in seeking to compel the disclosure of their sales figures!

Granting Celebrity's Motion will result in the production of documents revealing sales revenues of and commissions paid by assorted PPI clients including, *inter alia*, Del Sol, an Alaska

merchant which sells t-shirts and other novelties; David Green Furriers, a Ketchikan merchant which sells food related items; and Brenner's Fine Clothing & Gifts, a Sitka merchant which sells clothing. See Motion, Exhibit 4, pp. 13-15. The same is equally applicable to the sales revenues and commissions paid by PPI's other Alaska merchants who primarily sell jewelry or a hybrid of jewelry and gifts, including Columbian Emeralds, Little Switzerland and Perfect Time (all in Juneau), Bernard K. Passman, Royal Jewelers, A Touch of Gold and Caribbean Gems (all in Ketchikan) and Bernard K. Passman, Goodmark Jewelers, Little Switzerland and Royal Jewelers (all in Skagway). See Motion, Exhibit 4, pp. 11-19. These Southeast Alaska merchants compete with Celebrity for the very same cruise passenger business. Disclosure of their sales revenues and related information would be grossly unfair and inappropriate. Since Celebrity's claims do not allege preferential treatment by PPI in its promotional efforts on behalf of any merchants other than DIAK, the sales revenues and commissions paid by other Alaska jewelers is no more relevant than the revenues and commissions of the t-shirt shops.

PPI did <u>not</u> redact any sales figures for DIAK stores in Alaska. See Motion, Exhibit 4, pp. 11-19. In addition, in an effort to provide Celebrity with an overall picture of PPI's promotion of Alaska merchants, PPI did <u>not</u> redact total sales figures for each Alaska cruise port. See Motion, Exhibit 4, pp. 11-19. By providing this information, Celebrity can easily compare its sales revenues with those generated by DIAK stores in Alaska, and can further ascertain its and DIAK's respective market positions without comprising the privacy of the financial information provided by other Alaska merchants. Allowing Celebrity to use the discovery process to ascertain sales figures of scores of other Alaska merchants, some of whom are Celebrity's true competitors and others who are not even engaged in the same line of business, truly distorts the purpose of discovery.

The second category of redacted information involves certain documents relating to the business relationship between PPI and Diamonds International of Florida, Inc. ("Diamonds International"), a <u>non-party</u> to this action. Diamonds International is DIAK's corporate parent. Through various subsidiaries (other than DIAK), Diamonds International owns and operates approximately 100 retail jewelry stores <u>throughout the Caribbean and Mexico</u>, in addition to six stores in Alaska operated through DIAK. The redaction of certain figures in the documents produced by PPI concerning its overall relationship with Diamonds International is entirely appropriate because the information contained therein exceeds the widest frontiers of discovery.[5]

PPI promotes DIAK under a master contract with Diamonds International. Accordingly, in producing documents in response to Celebrity's document request, PPI provided copies of all master agreements with Diamonds International and all other documents concerning the negotiation of such agreements, but redacted financial information contained in those master contracts relating to Diamonds International's operations outside of Alaska. See Motion, Exhibit 3, pp. 1-17. The redacted data predominantly relates to PPI's promotion of Diamonds International stores in Mexico and the Caribbean, where Celebrity does not even operate any jewelry stores. Thus, while the existence of the master contract between PPI and Diamonds International *may* be relevant to Celebrity's claims in this case, details in the master contract and other documents concerning sales revenue and commissions paid by Diamonds International stores in Mexico and the Caribbean is entirely irrelevant to the disputed issues in the case and is not reasonably calculated to lead to the

---

[5] Exhibit 3 to Celebrity's Motion consists of 17 pages of documents relating to the master contract between PPI and Diamonds International. During the recent deposition of William Panoff, PPI's president, PPI's counsel provided Celebrity's counsel with <u>all</u> of the information previously redacted on pages 1-2 of Exhibit 3, as well as all information on pages 3-6 of Exhibit 3 relating to PPI's and/or DIAK's Alaska operations.

discovery of admissible evidence. See, e.g. Motion, Exhibit 3, p. 5. In other words, all references in these master contracts to matters involving the PPI/Diamonds International business relationship <u>outside of Alaska</u> have no bearing on the facts of this case. Therefore, Celebrity's request that PPI provide unredacted documents revealing such information should be denied.

Celebrity mischaracterizes the redacted portions of the PPI/Diamonds International documents as "substantial." In reality, the redactions are insignificant and relate to issues which are irrelevant to this case. For example, the revenues and commissions generated by Diamonds International stores <u>outside of Alaska</u>, in places such as Cozumel, Key West and Nassau, are irrelevant. Thus, those portions of the agreements reflecting revenues generated and commissions paid by Diamonds International for its stores outside of Alaska were redacted. See, e.g., Motion, Exhibit 3, pp. 5-6 and Exhibit 4, pp. 1-10. Other redacted items include the fees Diamonds International paid PPI for print and video advertising on ships other than Alaska cruises. See, e.g., Motion, Exhibit 3, pp. 3-4, 6. Port promotion fees for other Diamonds International stores in the Caribbean such as Kiss My Cactus, Havana Club and Carpets International were also redacted. See, e.g., Motion, Exhibit 3, pp. 8, 10. This information has absolutely no relevance in this case. Therefore, no logical reason exists to require PPI to divulge unnecessary financial information. Therefore, PPI's limited redactions of these documents are legitimate.

Celebrity misleadingly claims PPI redacted "the amounts paid by DIAK for PPI's services, including performance of the alleged wrongdoing." Celebrity is incorrect. Documents produced by PPI show DIAK's sales in each Alaska port, as well as the commissions paid by DIAK for all Alaska

sales.[6] The redacted portions of those documents consist of Diamonds International sales figures/commissions for locations <u>outside of Alaska</u> during similar time periods. PPI supplied Celebrity with sufficient data to ascertain the revenues generated by all of DIAK's Alaska stores and the corresponding commissions. PPI provided this sales information for the year in which the alleged wrongdoing occurred, as well as for the preceding two years and the year that followed. Based on the overwhelming amount of information provided, and the complete lack of relevance of information regarding the business relationship between PPI and Diamonds International outside of Alaska, Celebrity's attempt to compel PPI to produce the redacted information is unfounded, and the Motion should be denied.[7]

DATED this 9th day of May, 2006.

ROBERT C. GILBERT, P.A.
7301 SW 57 Court
Suite 515
South Miami, FL 33143
Tel:    (305) 529-9100
Fax:    (305) 529-1612
Email: rgilblaw@aol.com

By: s/ Robert C. Gilbert

RUDDY, BRADLEY & KOLKHORST
P.O. Box 34338
Juneau, AK 99803
Tel:    (907) 789-0047
Fax:    (907) 789-0783
Email: wgr@alaska.net

Attorneys for the PPI Group

---

[6] The specific documents bear bate-stamp numbers PPI 222-314, but were conveniently <u>not</u> included by Celebrity as exhibits to its Motion.

[7] As previously indicated, PPI is prepared to submit non-redacted versions of all these documents to the Court for an *in camera* inspection, along with an explanation of such documents, so the Court can satisfy itself that the redacted portions of such documents are neither relevant to the issues nor reasonably calculated to lead to the discovery of admissible evidence in this case.

## Certificate of Service

I hereby certify that on May 9, 2006, a true and correct copy of the foregoing was served electronically on:

Z. Kent Sullivan, Esq.
Daniel G. Bruce, Esq.
Baxter Bruce & Sullivan, P.C.
9309 Glacier Highway, Suite A-201
PO Box 32819
Juneau, AK 99801
Tel:  (907) 789-3166
Fax:  (907) 789-1913

Kevin G. Clarkson, Esq.
Brena, Bell & Clarkson, P.C.
310 K Street, Suite 601
Anchorage, AK 99501
Tel:  (907) 258-2000
Fax:  (907) 258-2001

Peter M. Hockman, Esq.
550 Biltmore Way, Suite 780
Coral Gables, FL 33134
Tel:  (305) 447-9129
Fax:  (305) 246-3939

s/ Robert C. Gilbert

F:\Clients\PPI\Pleadings\Opp M-Compel-1.wpd